UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| THE GEILER COMPANY, | : | |
| Plaintiff, | : | No. 4:22-mc-00001-TWP-DML |
| v. | : | |
| INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL, AND TRANSPORTATION WORKS, LOCAL UNION NO. 24. | : | |
| Defendant. | : | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO VACATE AND RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO CONFIRM ARBITRATION AWARD**

Plaintiff, The Geiler Company ("Geiler"), by counsel, respectfully submits the following *Reply in Support of Motion to Vacate Arbitration Award* and its *Response in Opposition to Defendant's Motion to Confirm Arbitration Award*, to Defendant, International Association of Sheet Metal, Air, Rail, and Transportation Works, Local Union No. 24's (the "Union") Response in Opposition to Motion to Vacate Award, pursuant to this Court's March 14, 2022 Order.

## I. INTRODUCTION

In its Response in Opposition, the Union provides an incomplete picture of the standard of review, misconstrues the positions of Geiler, misrepresents the Local Joint Adjustment Board's (the "Board") award, and presents this Court with reasons to vacate the award rather than confirm.

The Union's position and arguments only reinforce Geiler's contention the Board's award, grossly misinterprets the Agreement, requires Geiler to violate the law, pay a fine unsupported in the evidence submitted, and essentially neuters Geiler's ability to effectively bargain on its own behalf. Simply, the Board failed to confine itself to interpretation of the contract and

1

inappropriately awarded fines outside of the authority granted in the Agreement. As is seen in the Union's haphazard and self-detrimental arguments, there is no basis in law for affirming the Board's Award. This is exactly the type of award upon which judicial review of arbitration awards is allowed and the Court should vacate it.

## II.     ARGUMENT

**A.    The Union Fails to Adequately Oppose Geiler's Statement of Law in Support of the Court's Obligation to Vacate this Award.**

Nowhere in its nearly two-pages of legal standard does the Union provide opposition to the two tenets upon which Geiler contends this Court can, and must, vacate the Board's award. The Union does not cite to case law in opposition to the proposition this Court must vacate an award which is in "manifest disregard of the law." See, e.g., *Wilko v. Swan*, 346 U.S. 427, 436-37 (1953) (overruled on other grounds in *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477 (1989) (noting "manifest disregard of the law" as a judicial basis, independent of the Federal Arbitration Act, to overturn an arbitration award); *Koveleskie v. SBC Cap. Markets, Inc.*, 167 F.3d 361, 366 (7th Cir. 1999) (same). Similarly, the Union does not cite case law in its response contravening Geiler's correct articulation of this Court's obligation to vacate an award where the arbitrator's award does not draw "its essence from the agreement" or when the arbitrator "exceeded the powers delegated to him by the parties." *United States Soccer Fed'n, Inc. v. United States Nat'l Soccer Team Players Ass'n*, 838 F.3d 826, 832 (7th Cir. 2016); *Young Radiator Co. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W., & its Loc. Union No. 37*, 734 F.2d 321, 324 (7th Cir. 1984).

Accordingly, regardless of the Union's position on the "narrow" nature of this Court's review of an arbitration award, Geiler has stated valid and appropriate reasons supporting this Court's ability to vacate the Award.

**B.      Geiler Can Raise the Issues of Indiana's Right-to-Work Statute, the Union-Security Clause, and Timing.**

      **i.      Geiler did not Waive Any Arguments**

At numerous times throughout its response, the Union insinuates Geiler did not assert certain arguments at the arbitration. It wishes for this Court to deem such arguments as waived pursuant to *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993). Specifically, the Union asserts that Geiler should be estopped from arguing that the Award is void because it attempts to enforce an Agreement containing an unlawful requirement that subcontractors agree to an unlawful union-security clause. However, *Nat'l Wrecking Co.,* 990 F.2d at 960 (7th Cir. 1993) does not support a finding that Geiler waived this argument.

Put simply, Geiler did assert that Article II of the Agreement was unlawful because of Indiana's status as a right-to-work state. Thus, contrary to the Union's assertions otherwise, this argument was put forth at the hearing. Reid Geiler attended the hearing in front of the Board concerning the Union's grievance. [Ex. G – Declaration of Reid Geiler at ¶ 3].[1] During the hearing, Mr. Geiler put forward argument concerning Indiana's Right-to-Work statute. *Id.* at ¶ 4. Specifically, Mr. Geiler provided evidence to the Board that the project was governed under Indiana's Right-to-Work statute, and he was not in violation of the Article II, Section 1 of the Agreement. *Id.* The issue regarding notion Article II, Section 1 of the Agreement was therefore argued at the hearing.

Further, even if Geiler had not asserted it, this argument cannot be waived as enforcement of Article II, Section 1 of the Agreement is void as a matter of law. Waiver is a rule of prudence and is "not jurisdictional." *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 Fed. Appx. 415 (6th Cir.

---

[1] The Declaration of Mr. Geiler is submitted to directly rebut the Union's false assertion he did not put forward argument concerning Indiana's Right-to-Work statute.

2008)(quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 159 (2d. Cir. 2003) (citation and quotation marks omitted)). This Court has the discretion to determine whether Article II, Section 1 of the Agreement is void, as it is a pure question of law. There are no facts in dispute regarding this issue. At its core, this determination is squarely within the Court's purview, either the clause is void under Indiana law, or it is not. The Court sits in a better position to make this determination than the Board, which is not clearly versed in Indiana's law. In addition, failure to take up the issue will result in a miscarriage of justice. If this Court fails to make this determination, Geiler is stuck between the proverbial "rock and a hard place". The Award as written would require Geiler to adhere to Article II, Section 1 and face a fine under Indiana law, or follow Indiana law, but face a fine under the Award. The determination of this issue is one of paramount importance.

Finally, waiver is inappropriate because whether an award is premised on a possible interpretation of the collective bargaining agreement is precisely a ground upon which this Court must review it. *Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.*, 935 F.2d 1501, 1505–06 (7th Cir. 1991). A party is unable to determine whether an arbitrator's award "draws it essence from the collective bargaining agreement" or is in "manifest disregard of the law," thus, requiring a court to review the award itself. Until the Board issued the Award at the heart of this dispute, there was no reason for Geiler to believe the Board would fail to properly interpret the Agreement, disregard Indiana law, and issue its own brand of justice. This requires judicial review and was impliedly not waived, nor could it have been, by Geiler.

C. **Per the Union's Own Arguments, The Board Exceeded Its Authority**

Even if the Union's arguments concerning Geiler's stated reasons to vacate the award are true, such arguments support Geiler's positions.

### i. Indiana Law Applies

The Union questions the applicability of Indiana law to this dispute. However, the case the Union cites in support of this contention, *Oil, Chemical and Atomic Workers v. Mobil Oil Corp.*, 426 U.S. 407, 417-18 (1976), supports the application of Indiana law.

In the dropped footnote, the Union goes through several facts, i.e. where the grievance was filed, where the Union is based, the place of the arbitration award, and the citizenship of Geiler itself to bolster its position. However, *Mobil Oil Corp* specifically states, "the place of hiring and the other factors…the employees' place of residence, the locale of personnel records, the place at which payroll checks are written, etc. - are not nearly as central…as the employees' job situs." *Id.* at 418. Thus, the place where the work is performed "is the very raison d'etre of the relationship." *Id.*

This serves two important functions. One, the use of a job situs test will minimize the possibility of patently anomalous extraterritorial applications of any given State's right-to-work laws. *Id*. at 418-419. Two, a job situs test will ensure that the laws of a State with a continuing and current relationship with the employees in question will govern. *Id.* at 419. Conversely, there is a significant downside to the Union's proposed contact test. The U.S. Supreme Court has stated that bargaining parties would be left in a state of "considerable uncertainty if they were forced to identify and evaluate all the relevant contacts of a jurisdiction in order to determine the potential validity of a proposed union-security provision." *Id.* It is clear, the U.S. Supreme Court in *Mobil Oil* intended for the place of the work's performance to dictate which State's law applies.

There is little doubt the work of which the Union grieved was conducted within the State of Indiana. The grievance itself states the project, site, or shop involved is "Sunman Dearborn Schools East Central High School / Sunman Dearborn Middle School." [ECF 2-2]. An October

28, 2020 email from a Union representative, Jeff Mueller, also confirms the work of which the Union complains was to be performed for the Sunman Dearborn Schools project. [ECF 2-3 at p. 9]. Even in its case presentation to the Board, the Union provided the work of which they grieved concerned the "Sunman Dearborn Community School Remodel." [ECF 2-3 at p. 22]. Sunman Dearborn Schools, East Central High School, and Sunman Dearborn Middle School are all located in the State of Indiana. *See*, https://www.sunmandearborn.k12.in.us/information/about-us.[2]

As such, per the Union's own cited case law, Indiana law is indeed applicable to this dispute as the work grieved on which the underlying grievance is based was performed in Indiana.

    **ii.**    **The Agreement Is Unenforceable or Void in Indiana**

As outlined in Geiler's Motion, Article II of the Agreement requires Geiler and its subcontractors to "agree in writing to comply with the conditions of employment contained herein including, without limitation, those relating to Union Security…." Ex. A, Article II and V, to Plf. Mot. Article II does not provide an exemption to this requirement for Right-to-Work states. Nor does it state that Article II is inapplicable if if enforcement of the Agreement or of the Union Security clause would be in violation of law. For this reason, as outlined in more detail in Geiler's Motion, the entire Agreement is void and unenforceable. Plf. Mot. pp 7-9. Further, the Union's grievance was entirely based on its belief that Geiler violated Article II of the Agreement because it utilized a "non-union" subcontractor. See, Ex. C and D to Plf. Mot. Thus, the entire issue here is whether Geiler and its subcontractors could be forced to abide by an Agreement, in Indiana, that included a union security clause mandating that all individuals performing specified work become union members. Clearly the answer is "no". Because the Agreement requires covered individuals

---

[2] Geiler respectfully requests the Court take judicial notice of this fact. The location of all Sunman Dearborn Schools within the State of Indiana is both a fact which is "generally known within the trial court's territorial jurisdiction" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This Court may take judicial notice at "any stage of the proceeding." Fed. R. Evid. 201(d).

to become union members, it is void under Indiana law and the Award cannot be enforced and must be vacated.

In response to Geiler's Motion, the Union admits that Article V should be stricken from the Agreement because it violates Indiana law, but then argues that the remainder of the Agreement, including Article II, should be enforced. The Union misses the point. The Union's entire argument has been that Geiler violated Article II by using a "non-union" subcontractor. If the Union Security clause found in Article V is stricken, there cannot logically be a violation of Article II.

Further, Article II does not contain language that keeps it intact if Article V is deemed unlawful. As stated in Geiler's Memorandum in Support, Article II and Article V are material clauses which cannot be stricken. Article II, Section 1 is a central and material term of the Agreement and, as written, it is void in the State of Indiana. Any attempt to rewrite the Agreement to simply exclude Article V and Article II, Section 1 to render it enforceable is tantamount to modifying or amending the Agreement, which is not permissible and is grounds in and of itself to vacate the award. *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). However, doing so would completely eliminate the section of the Agreement that Geiler was alleged to have violated! So, if the Court determines that the Agreement could be rewritten to exclude Article V and Article II, Section 1, then Geiler could not have violated a provision that has been stricken from the Agreement and the Award should be vacated.

Finally, even if Articles II and V are stricken, the Agreement is still void under Indiana's Right-To-Work law because it still provides that all individuals performing work covered by the Agreement become union members (Ex. A (Art. I and III) and Ex. C (p. 16 and 17) to Plf. Motion. The law in Indiana is clear, any agreement which requires an individual to become a member of a

union, pay dues, fees, assessments or other amounts to a union or third-party is "unlawful and void" Indiana Code § 22-6-6-8 (prohibiting union security as a condition of employment); Indiana Code § 22-6-6-9 ("A contract, agreement, understanding, or practice, written or oral, express or implied, between: (1) a labor organization; (2) an employer; that violates section 8 of this chapter is unlawful and void."). Thus, again, as outlined in Geiler's Motion, because the Agreement requires that any individual covered by the Agreement or otherwise performing work covered by the Agreement, become a union member, the entire agreement is void in Indiana. See, Mot. p. 7-9.

      iii.      **Indiana Law is Not Preempted**

The Union spends an inordinate amount of time arguing Indiana's right-to-work law is preempted under federal law, as federal law allows for parties to enter agreements which permit union security agreements. Put bluntly, this is an incomplete statement of law.

It is true § 8(a)(3) permits union-security agreements and gives "employers and unions who feel that [union-security] agreements promoted stability by eliminating 'free riders' the right to continue such arrangements.'" S. Rep. No. 105, 80th Cong., 1st Sess., 7 (1947), 1 Leg. Hist. 413. However, this is not the end of the analysis, as other sections allow for exemptions. Namely, Congress, in § 14(b), reflected a decision that "any State or Territory that wishes to may exempt itself from that policy." *Mobil Oil*, 426 U.S. at 416-417. Moreover, § 14(b) allows a State or Territory to ban agreements "requiring membership in a labor organization as a condition of employment." Thus, with respect to those state laws which § 14 (b) permits to be exempted from § 8 (a)(3)'s national policy "[t]here is… conflict between state and federal law; but it is a conflict sanctioned by Congress with directions to give the right of way to state laws…." *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963).

As discussed at length in Geiler's Memorandum in Support, Indiana is a state with a law banning union-security clauses as allowed in § 14(b) and exempting it from § 8. Indiana Code § 22-6-6-8 (prohibiting union security as a condition of employment); Indiana Code § 22-6-6-9 ("A contract, agreement, understanding, or practice, written or oral, express or implied, between: (1) a labor organization; (2) an employer; that violates section 8 of this chapter is unlawful and void."). It is true Indiana's right-to-work law is one which conflicts with federal law, it is a conflict "sanctioned by Congress." *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963). In resolving this conflict, the U.S. Supreme Court has spoken, Indiana's law is given the right of way. *Id.* Thus, Indiana's right-to-work law, specifically its ban of union-security, is not preempted.

      **iv.** **The Award Subverts the Agreement's Procedure under the Interest-Arbitration Clause and Inappropriately Orders a Penalty**

In response to Geiler's argument that the Board exceeded its authority by instituting a fine if Geiler was not a signatory to the next Agreement, the Union nonsensically argues that Geiler was not free to repudiate the Agreement even absent the Award, so the Award was appropriate. To support this argument, the Union points to Article X, Section 8 of the Agreement. However, once again, the Union is incorrect. Article X, Section 8 of the Agreement only applies to the "Sheet Metal Contractors' Association of Greater Cincinnati, Inc.", not Geiler. However, Article XIV, Section 5 outlines the ways in which an individual employer entity can withdraw from the Association (and the Agreement) indicating the parties' understanding and intent that individual employing entities can, in fact, withdraw from the Association and the Agreement.

However, even assuming that the Union is correct, which Geiler vehemently denies, the Board, by ordering Geiler to remain a member of the Association for the duration of any forthcoming contract essentially struck Article VIV, Section 5 and/or Article XIV, Section 5 from the Agreement. Again, this action clearly exceeded the Board's authority under the Agreement.

Further, in its award, the Board articulates a penalty if Geiler is not a part of "the upcoming contract." [ECF 2-5]. The upcoming contract was not at issue in this grievance. [ECF 2-2]. There was no controversy or dispute concerning the "failure to negotiate a renewal." *Id.* At the hearing of the Board, the Union never once brought up renewal as an issue for the Board's determination. [*See generally,* ECF 2-3]. The Board is not the entity with the authority to determine the terms of a forthcoming agreement nor can it mandate that parties become signatories to any such agreement. As stated in the previous argument, this is the Board substituting itself for the will of the parties, which is tantamount to the Board modifying or amending a preexisting agreement and is specifically disallowed. *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

The Board, with this portion of the award, is clearly inserting itself as a party to negotiations for renewal of the Agreement. This is not its place and there is nothing in the evidentiary record which purports to permit the Board's authority to issue this sort of penalty under the Agreement. There is no doubt the Board's intrusion mandating Geiler's participation in a subsequent agreement is outside the scope of its power under the Agreement. This flies in the face of an arbitrator's obligation to accept an agreement as the statement of the parties' rights and obligations and the product of the parties' bargaining table, not "dispense [his or her] own brand of industrial justice." *Steelworkers*, 363 U.S. at 597; *Amax Coal Co. v. United Mine Workers of Am.*, 92 F.3d 571, 575 (7th Cir. 1996). There is no evidence the parties gave the Board the power to mandate acceptance of the next agreement under the penalty of a fine. Through its Award here, the Board has tainted the bargaining table and clearly put forth its own brand of justice.

The Board's assumption of authority to issue a penalty premised upon an dispute or controversy neither in front of it, nor in its authority to hear, is in violation of the Agreement. Thus, the award fails to draw "its essence from the agreement" and the Board itself "exceeded the

powers delegated to him by the parties"; thus, the Court must vacate it. *United States Soccer Fed'n, Inc. v. United States Nat'l Soccer Team Players Ass'n*, 838 F.3d 826, 832 (7th Cir. 2016); *Young Radiator Co. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W., & its Loc. Union No. 37*, 734 F.2d 321, 324 (7th Cir. 1984).

**D.  The Timeliness Argument is One of Contract Interpretation, Not a Substantive Arbitrability Determination.**

In opposition to Geiler's argument concerning untimeliness of the grievance, the Union frames Geiler's argument as one of substantive arbitration. [ECF 19 at p. 8]. Because of its unilateral determination, the Union contends this Court does not have the ability to "disturb" the finding of the Board in this regard. The Union's contention improperly classifies Geiler's argument, and this Court can decide whether the Board properly interpreted the Agreement in coming to its conclusion on timeliness.

Courts have held an arbitrator exceeded their authority when hearing grievances which were untimely. The decisions of these courts stand upon the proposition that an arbitrator's finding of timeliness must derive "in some rational way from the collective bargaining agreement." *Wyandot, Inc. v. Local 227,* UFCW Union, 205 F.3d 922, 928 (6th Cir.); *Paper, Allied-Indus. Chem. & Energy Workers, Local Union No. 5-998 v. LWD, Inc.*, 99 Fed. App'x. 683 (6th Cir. 2004); *R.H. Cochran & Assocs., Inc. v. Sheet Metal Workers Int'l Assoc. Local Union No. 33*, 2008 WL 408462 (N.D. Ohio Feb. 12, 2008). This is a natural outgrowth of the Seventh Circuit's requirement the arbitrator's decision be premised upon a possible interpretation of the collective bargaining agreement or be set aside. *Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.*, 935 F.2d 1501, 1505–06 (7th Cir. 1991).

The timeliness determinations in the *Wyandot*, *Paper*, *R.H. Cochran* cases were discussed at length in *Int'l Union of Operating Eng'rs, Local 139 v. Wingra Stone Co.*, 211 F. Supp. 3d 1187

11

(W.D. Wisc. 2016).[3] The court in *Wingra Stone* in upholding the arbitrator's timeliness decision did not determine it was unable to review the arbitrator's timeliness determination. If fact, the court went through an extensive analysis of the reasoning as to why it was not disturbing the arbitrator's determination. *Wingra Stone Co.*, 211 F.Supp. at 1193-1195. In its conclusion on the matter, the court reasoned it would have vacated the award as untimely had the arbitrator not interpreted the contract as allowing continuing violation grievances. *Id.* at 1194-1195.

Put simply, none of the reasons cited in *Wingra Stone* for non-disturbance of the arbitrator's determination of timeliness are present in this claim. The first of which was the fact the grievance at issue in *Wingra Stone* was determined to be a "continuing violation." *Id.* at 1193-1194. This is not the case here. The violation alleged in the Union's grievance concerned a "discrete" violation. Namely, the commencing of work allegedly in violation of Article II, Section 1, which occurred as soon as work on the Sunman-Dearborn Project began. Further, for the reasons more fully articulated in Geiler's Memorandum in Support, the Board wholly disregarded and failed to interpret, or show its interpretive reasoning, how the grievance was timely pursuant to Article X, Section 1 of the Agreement.[4] There is no question the grievance, as shown unequivocally in Geiler's submitted evidence was untimely and the Board issued an award outside of its authority under the Agreement.

---

[3] Geiler notes the Union cited to *Int'l Union of Operating Eng'rs, Local 139 v. Wingra Stone Co.*, 211 F. Supp. 3d 1187 (W.D. Wisc. 2016) as one which supports its position and distinguishes the instant motion to vacate from those cited from the Sixth Circuit. However, this is in an incomplete reading of the Western District of Wisconsin's opinion concerning timeliness. As discussed above, the reason the Western District of Wisconsin did not overturn the arbitrator's award was because the arbitrator interpreted the contract as allowing for continuing violation grievances. Since the court determined the award was based upon an interpretation of the contract, the court's review could not include whether this interpretation was in error. Here, the Board failed to interpret the Agreement at all. There is no reasoning provided as to why the Union's clearly untimely grievance was permitted to proceed; as there is no such interpretation which would allow such a finding.

[4] Geiler notes the Union has failed to put forth factual disputes contradicting Geiler's timeline of events pertinent to the timeliness determination. Thus, the Union has conceded the timeline as Geiler asserts. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); see also *Wackett v. City of Beaver Dam*, 642 F.3d 578, 582 n.1 (7th Cir. 2011).

### E. The Fine Issued is Contrary to the Agreement.

The Union argues the Board's stated fine was not contrary to the Agreement, as the Agreement provides the Board with power to grant relief as "necessary and proper." The Union again misses the mark with its interpretation of Geiler's contentions. Geiler is not taking issue with the word "fine". Geiler takes issue with the form of the award as commensurate with a punitive award.

Indiana has held "consistent with their punitive nature, punitive damages are akin to a *fine* exacted by the government of Indiana to deter and punish wrongdoers." *State v. Doe*, 987 N.E.2d 1066 (quoting *Cheatham v. Pohle*, 789 N.E.2d 467, 473 (Ind. 2003)(*emphasis added*). Thus, in Indiana, a fine is a punitive damage award simply stated differently. Further, the only damages specifically allowed within the plain language of the Agreement and the Board's procedures are compensatory in nature. *See* Ex. A, Section X., Article 5; Ex. E, Board Procedures, Section I.F.1. Accordingly, given the fact punitive damages and fines are synonymous with one another, they are not permitted in a breach of contract action absent allegations of an underlying tort. *See Lancaster v. Avon Prod., Inc.*, No. 2:15-CV-148-WTL-WGH, 2015 WL 4532751, at *2 (S.D. Ind. July 27, 2015) ("[T]he Indiana Supreme Court has consistently stated the general rule that punitive damages are not allowed in a breach of contract action. [I]n order to recover punitive damages in a lawsuit founded upon a breach of contract, the plaintiff must plead and prove the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded.")(internal quotes and citations omitted). There is no evidence the Union argued, nor the Board held Geiler committed any wrongful act aside from breach of a contractual term. Thus, the Board's fine is against Indiana law, and should be vacated.

Outside of the definitional issue, the award as outlined is clearly punitive. Initially, the Board coined the penalty a "fine." The Board was unambiguous in its language. The nature of the award itself spells this out quite clearly. If Geiler acts in violation of the subcontracting clause, or fails to remain part of the upcoming contract, it is required to pay six-figures. The Board does not describe how it came to this number, what facts the alleged fine is based upon, and there is no evidence to support the award or the amount of the fine. What else is this but a fine. The Board is not granting relief for the actions of Geiler as it pertains to the grievance at issue, but relief for future as yet committed actions or omissions. The award is a pendulum swinging over the head of Geiler, requiring it to act in a certain manner moving forward. The parties did not grant the Board power to issue fines, punitive damages, or awards to control their future behavior. The Board's only authority was to grant relief for actions grieved. Thus, the Board clearly exceeded its authority.

For this reason, the Court should vacate the award. *See Bankers Life & Cas. Ins.,* 830 F.3d at 730 (vacating an award that provided a damages remedy that had no basis under the Parties' agreement); *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d at 1256 (vacating an award that required payment of a remedy not provided under the parties' agreement); *United States Soccer Fed'n, Inc.*, 838 F.3d at 832 (vacating an award that was contrary to the express language of the parties' agreement).

**F.     The October 6, 2021 Arbitration Award in Favor of the Union Should Be Vacated.**

In support of its contention for confirmation of the Board's award, the Union merely points the Court to its arguments in opposition to Geiler's Motion to Vacate. [ECF 19 at p. 11]. These arguments, as articulated above, and in Geiler's Memorandum in Support of its Motion to Vacate,

are insufficient. In fact, in some cases, these arguments provide additional support for Geiler's contentions for vacating the Board's award.

As stated in Geiler's Memorandum in Support of its Motion to Vacate, an arbitration award must be vacated if it is ""in manifest disregard of the law." *See, e.g., Wilko v. Swan*, 346 U.S. 427, 436-37 (1953) (overruled on other grounds in *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477 (1989) (noting "manifest disregard of the law" as a judicial basis, independent of the Federal Arbitration Act, to overturn an arbitration award); *Koveleskie v. SBC Cap. Markets, Inc.*, 167 F.3d 361, 366 (7th Cir. 1999) (same). Further, the arbitrator must not "exceed the powers delegated to him by the parties" and the award must "draw its essence from the agreement" or be vacated. *United States Soccer Fed'n, Inc.*, 838 F.3d at 832; *Young Radiator Co.*, 734 F.2d at 324. For the reasons stated in Geiler's Memorandum in Support and above, Geiler has shown the Board's award meets these standards; thus, this Court must vacate the Board's October 6, 2021 Arbitration Award.

The Union also asserts the Court has the authority to remand the case back to the arbitrator if the award is too ambiguous to be enforced. [ECF 19 at p. 11]; *Ethyl Corp. v. United Steelworkers of America, etc.*, 768 F.2d 180, 187 (7th Cir. 1985). The Board's award is not too ambiguous to be enforced. As noted above, the award states Geiler violated a clause to the Agreement which was stricken per the location of the work performed, instituted a fine for the violation of the stricken clause, requires Geiler to act in violation of the law, and mandates Geiler's participation in the next agreement under economic duress and under penalty of fine. All of which was outside of the Board's authority as articulated per a plain reading of the Agreement. Thus, this award should not be remanded, but vacated as required by law.

### III. CONCLUSION

For the reasons stated above, and in Geiler's Memorandum in Support of its Motion to Vacate, this Court must vacate the Board's October 6, 2021 arbitration award.

Respectfully submitted,

LITTLER MENDELSON, P.C.

/s/ *Ryan J. Sterling*
Brooke E. Niedecken (OH #0079142)
41 South High Street, Suite 3250
Columbus, OH 43215
Telephone:   614.463.4201
Facsimile:    614.221.3301
E-mail:         bneidecken@littler.com

Ryan J. Sterling (34212-49)
111 Monument Circle, Suite 702
Indianapolis, IN  46204
Telephone:   317.287.3600
Facsimile:    317.636.0712
Email:          rsterling@littler.com

*Attorneys for Plaintiff The Geiler Company*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 6th day of June, 2022, the foregoing *Plaintiff's Reply in Support of its Motion to Vacate and Response in Opposition to Defendant's Motion to Confirm Arbitration Award* has been filed via the Court's electronic filing system. Notice of filing will be performed by the Court's electronic filing system, and parties may access the document through the Court's electronic filing system.

*/s/ Ryan J. Sterling*