UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| THE GEILER COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 4:22-mc-00001-TWP-KMB |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL ASSOCIATION OF | ) | |
| SHEET METAL, AIR, RAIL, AND | ) | |
| TRANSPORTATION WORKS, | ) | |
| LOCAL UNION NO. 24. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF THE GEILER
COMPANY'S RENEWED MOTION TO VACATE ARBITRATION AWARD**

Plaintiff, The Geiler Company ("Geiler"), by counsel, respectfully submits the following Memorandum in Support of its Motion to Vacate Arbitration Award.

## I.  INTRODUCTION

Geiler seeks to vacate the Local Joint Adjustment Board's (the "Board") October 6, 2021, Award (the "Award"), as clarified on January 23, 2024, pursuant to this Court's order, because the Board exceeded its authority under the Collective Bargaining Agreement (the "CBA") and the Award is in manifest disregard of the law.

The Board exceeded its authority under the CBA when it heard a grievance submitted outside the time allotted in the CBA. The International Association of Sheet Metal, Air, Rail, and Transportation Workers, Local Union No. 24 (the "Union") filed its grievance over 120 days after it knew of its dispute with Geiler and did not file its appeal for a hearing to the Board within the required 30 days. Both of these deficiencies prohibit the Board from adjudicating the dispute. The Board further exceeded its authority as its Award is contrary to the CBA. The Award instituted a

1

fine against Geiler, which the CBA does not permit. The Board also required Geiler, through a $125,000 fine, to remain signatory to subsequent collectively bargained agreements, both in contradiction of CBA provisions and public policy. Finally, through its Award clarification, the Board rewrote Article II, § 1 of the CBA, reading out the Union Security clause, a key term.

The Award is in manifest disregard of the law. Article II, § 1 of the CBA, through its inclusion of a Union Security clause requiring contractors and subcontractors abide the CBA and require its employees be Union members, violates Indiana law. Thus, Article II, § 1 of the CBA cannot form the basis for an arbitration award, yet that is exactly what the Board used to form the Award. Even if Article II, § 1 of the CBA could form the basis for an arbitration award, the Award requires Geiler, through a $125,000 fine, to violate Indiana law, or mandate its subcontractors to violate Indiana law through enforcement of Article II, § 1 of the CBA. The Award also violates the National Labor Relations Act ("NLRA") § 8(f) by prohibiting Geiler from repudiating the relationship with the Association and failing to continue to agree to be bound by the CBA.

For these reasons, articulated more fully below, Geiler requests the Court vacate the Board's Award.

## II.    BACKGROUND

### A.    The Collective Bargaining Agreement

Geiler is a commercial HVAC and plumbing contractor which has served the greater Cincinnati, Northern Kentucky, and Southern Indiana area since 1885. Prior to the Award, Geiler was a member of the Sheet Metal Contractors Association of Greater Cincinnati, Inc. (the "Association") and was a signatory to the CBA between the Association and the Union. Exhibit ("Ex.") A, CBA. Article II, § 1 of the CBA prohibits Association members from subcontracting or assigning work covered under the CBA to a subcontractor who "fails to agree in writing to the conditions of employment" in the CBA, "including, *without limitations*, those relating to Union

Security." *Id.* (*emphasis added*). The Union Security clause obligates Association members "require membership in the Union, as a condition of continued employment," for "all employees performing any of the work specified in Article 1 of the Agreement." *Id.* at Article V, § 1.

Article X, §§ 1 and 2 of the CBA set forth procedures for the grievance process for issues arising under the CBA. *Id.* Section 1 requires that an aggrieved party attempt to resolve any dispute regarding breach of the CBA and submit a formal grievance within thirty days of the occurrence giving rise to the grievance or thirty days of "first knowledge of the facts giving rise to the grievance." *Id.* If the grievance remains unresolved, either party may appeal the grievance to the Board for resolution within 30 days, or later by agreement of the parties. *Id.* at Article X, § 2 ("Notice of appeal to the Local Joint Adjustment Board shall be given within thirty (30) days after termination of the procedures prescribed in Section 1 of this Article, unless the time is extended by a mutual agreement of the Parties.") Article X, § 5 of the CBA grants the Board finite authority to "render decisions and grant such relief to either party" as it "deem[s] necessary and proper, including awards of damages or other compensation." *Id.* The procedure for grieving any issue or concern regarding negotiations of a renewal of the CBA are articulated in Article X, § 8.

Article XIV, § 5 of the CBA provides "the Employer (Geiler) authorizes [the Association] to act as its Collective Bargaining Representative for all matters relating to this [CBA]." Nowhere in the CBA does it provide authority for the Board to intercede in the negotiation of renewals of the CBA without the parties following Article X, § 8. *See generally*, Ex. A.

**B.    The Sunman-Dearborn Community Schools Project and Pre-January 2021 Meetings Between the Union and Geiler About the Project.**

On September 17, 2020, Geiler bid for a project at the Sunman-Dearborn Community Schools ("Sunman-Dearborn Project") in St. Leon, Indiana. Geiler included Metal Airways, Inc. in its bid as a subcontractor for sheet metal work on the Project, even though Metal Airways was

not a signatory to the CBA and did not require Union membership as a term of employment.[1] On September 22, 2020, Union Representative Jeff Mueller met, in-person, with Geiler's Chief Executive Officer, William Reid Geiler III, and questioned Geiler's use of Metal Airways in its bid. Ex. B, February 21, 2021, Grievance and Request for Hearing; Ex. C, Union Hearing Statement, p. 7. On September 28, September 30, and October 6, 2020, the Union sent emails to Geiler, regarding its continuing objection to Geiler's intention to use Metal Airways as a subcontractor on the Sunman-Dearborn project. Ex. B; Ex. C, p. 7.

On October 15, 2020, Geiler was awarded the Sunman-Dearborn Project.[2] Work on the project began within one week. Aware of Metal Airways work on the Sunman-Dearborn Project due to Geiler's bid, the Union called and emailed Geiler regarding its objection through October 30, 2021. Ex. B; Ex. C, p. 7. The Union had expressed its concerns regarding Geiler for more than thirty days; however, the Union did not timely submit a grievance.

**C.    The Union's January 21, 2021, Letter to Geiler and February 12, 2021, Grievance Appeal to the Board.**

On January 21, 2021, over 120 days after the Union undeniably knew of the dispute and raised it with Geiler, the Union sent a letter to Geiler, asserting that Geiler had violated the CBA through its use of Metal Airways to perform work on the Sunman-Dearborn Project. Ex. D, January 2021 Letter. Then, twenty-two days later, on February 12, 2021, the Union filed a grievance appeal and request for hearing before the Board. Ex. B.

---

[1]    Geiler notes it did not have a direct contractual relationship with Metal Airways, but contracted them through a third-party, BTU Consulting.

[2]    This evidence was admitted during the hearing and is not in dispute; however, there was no court reporter at the hearing and no formal transcript of the Board hearing.

D.       **The Board Hearing**

On September 8, 2021, the Board heard the Union's grievance appeal. There is no formal transcript of the Board's hearing. Ex. C, p. 1. However, during the hearing, the Union presented evidence about its communications with Geiler regarding Geiler's subcontracting of work on the Sunman-Dearborn Project to Metal Airways, including its late September and October 2020 communications. Ex. B; Ex. C, p. 7. The Union argued, without evidence, of its entitlement to compensatory damages (lost dues to the Union) because Geiler subcontracted work to a non-union contractor. Ex. C, pp. 24-29. While the Union sought $400,000 in "damages", it offered no evidence to support this request and no evidence to support a finding of any actual damage to the Union or any individual employees.[3] *See generally*, Ex. C. The Union did not seek fines or other punitive damages in its grievance or at the hearing. *Id.* at pp. 24-29. For its part at the Hearing, Geiler, through its Vice President, William Reid Geiler, III, argued to the Board that Indiana's Right-to-Work statute governed Sunman Dearborn Schools Project and Geiler did not violate Article II, § 1 of the CBA. Ex. G, Declaration of William Reid Geiler, III at ¶ 4. Geiler also submitted argument to the Board the Union's grievance was untimely. *Id.* at ¶ 5.

E.       **The Award**

On October 6, 2021, the Board issued its Award for the Union. Ex. E, The Award. Without explanation, the Board concluded "all procedural requirements had been met," and "that the [Union's] grievance was timely." *Id.* The Board then found that Geiler violated the subcontracting clause of the CBA (Article II, § 1). *Id.* With no evidence that a fine was appropriate here or that the fine was based on any contractual provision, the Board issued Geiler a $250,000 fine, with half

---

[3]      Even assuming that the Union provided evidence of damages in the form of lost wages to individual employees because those employees were never union members, it would be inappropriate for the Union to recover these "damages".

5

held in abeyance provided Geiler did not violate the subcontracting clause further and remained a party of the Association Bargaining Unit for the next collective bargaining agreement with the Union. *Id.* The fine has no calculable basis and the Board awarded it without justification.

**F.    Procedural History and Clarified Award**

On January 3, 2022, Geiler filed its first Motion to Vacate the Award and Memorandum in Support with this Court. [ECF 1.] In response, the Union filed its Response in Opposition and its Cross-Motion to Confirm the Award on April 8, 2024. [ECF 19.] The matter became fully briefed and ripe for ruling on June 6, 2022, when Geiler filed its Reply in Support of its Motion to Vacate. [ECF 24.] On October 31, 2022, this Court issued its order remanding the Award to the Board for clarification as to which provision(s) of Article II, § 1 Geiler violated, including whether union security was at issue. [ECF 25.]

On January 23, 2024, the Board issued its clarification of its October 6, 2021, Award. Ex. H, January 23, 2024 Clarification. The Board stated Geiler "violated the subcontracting clause in Article II, Section 1 of the CBA." *Id.* at p. 1. The Board further found "the union security clause found in Article V, Section 1, and the passing reference to the clause found within Article II, Section 1 are not applicable to the work at issue, and irrelevant to the Board's determination." *Id.* at p. 2. The issue as the Board saw it constituted Geiler's "subcontracting of sheet metal work to an entity (Metal Airways) that was not signatory to the CBA, and union security was not a basis for the decision and award." *Id.* Although the Board took steps to explain its award as one that was not reliant on Article II, § 1, the truth is that the only basis for the Award was the fact that Geiler subcontracted with a non-signatory to the CBA, also known as a non-union employer. *Id.* Thus, Article II, § 1 is exactly the reason and justification for the Award and as outlined below, renders the award illegal.

### III.    ARGUMENT

The Supreme Court of the United States and Seventh Circuit Court of Appeals both grant this Court authority to vacate the Award if it is "in manifest disregard of the law." *See, e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995) citing, *Wilko v. Swan*, 346 U.S. 427, 436-37 (1953) (overruled on other grounds in *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477 (1989) (noting "manifest disregard of the law" as a judicial basis, independent of the Federal Arbitration Act, to overturn an arbitration award); *Koveleskie v. SBC Cap. Markets, Inc.*, 167 F.3d 361, 366 (7th Cir. 1999) (same). In the Seventh Circuit, an award is "in manifest disregard of the law" if it requires that the parties violate the law. *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 580-81 (7th Cir. 2001) (citing *Eastern Associated Coal Corp. v. United Mine Workers*, 531 U.S. 57 (2000)).

Section 10 of the Federal Arbitration Act also provides a district court with authority to vacate an arbitration award "where the arbitrator exceeded their powers" or did not reach "a mutual, final and definite award." 9 U.S.C. § 10(a)(4). An arbitrator is "confined to interpretation and application of the collective bargaining agreement; he [or she] does not sit to dispense his [or her] own brand of industrial justice." *United States Soccer Fed'n, Inc. v. United States Nat'l Soccer Team Players Ass'n*, 838 F.3d 826, 832 (7th Cir. 2016) (quoting *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). The arbitrator's award must "draw its essence from the [] [] agreement." *Young Radiator Co. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W., & its Loc. Union No. 37*, 734 F.2d 321, 324 (7th Cir. 1984) (quoting *F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Local 781*, 629 F.2d 1204, 1215 (7th Cir. 1980). When the arbitrator's award "manifests an infidelity to this obligation" and "exceed[s] the powers delegated to him by the parties," a reviewing court must vacate the award. *United States*

*Soccer Fed'n, Inc.*, 838 F. 3d at 832 (internal citations omitted). Because the arbitrator is typically limited to interpreting the contract, if "there is no possible interpretive route to the award," then a "noncontractual basis can be inferred and the award set aside." *Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.*, 935 F.2d 1501, 1505–06 (7th Cir. 1991).

The Court should vacate the Award because the Board exceeded its authority under the CBA and the Award is in manifest disregard of the law.

**A.      The Board Exceeded Its Authority Under the CBA.**

An arbitrator's authority to issue an award under a collective bargaining agreement is a proper question for judicial review. *United States Soccer Fed'n, Inc.*, 838 F.3d at 832. When analyzing the legitimacy of an arbitrator's award, the court must determine whether the award "draws its essence from the agreement" or "exceeded the powers delegated to him by the parties." *United States Soccer Fed'n, Inc.*, 838 F.3d at 831-832; *Young Radiator Co.*, 734 F.2d at 324. An arbitrator is not permitted to modify or amend the agreement. *Anheuser-Busch, Inc. v. Local Union 744, IBT*, 280 F.3d 1133, 1140 (7th Cir. 2002) (vacating award where the arbitrator rewrote the contract and inscribed his own language upon the contract; something that he was not authorized to do). Here, the Board exceeded its authority when it adjudicated an untimely grievance and appeal and issued an award contrary to the CBA.

**1.      The Board Had No Authority Under the CBA to Adjudicate the Union's Untimely Grievance and Board Appeal.**

If a grievance or related appeal is not timely under the procedural requirements in the parties' agreement, the arbitrator has no authority to adjudicate it. *See United States Soccer Fed'n, Inc.*, 838 F.3d at 832, 837 (vacating arbitration award where arbitrator exceeded his authority by ignoring the clear and unambiguous terms of the parties' agreement); *R.H. Cochran & Assocs., Inc. v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 33*, No. 1:07-CV-772, 2008 WL 408462,

at *8 (N.D. Ohio Feb. 12, 2008), aff'd, 335 F. App'x 516 (6th Cir. 2009) (vacating an arbitration award because the facts showed the grievance was untimely and invalid, determining the merits outside the scope of the arbitrator's authority). By hearing the grievance, the Board ignored the procedural requirements for grievances under the CBA, accepted an untimely grievance and appeal, and issued an award contrary to its authority under the CBA.

Under Article X, § 1 of the CBA, grievances "must be raised within thirty (30) calendar days following the occurrence giving rise to the Grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of first knowledge of the facts giving rise to the Grievance." Ex. A at p. 12. Grievances not settled under § 1, "may be appealed [] [] to the Local Joint Board where the work was performed or in the jurisdiction of the Employer's home local[.]" *Id.*, Article X, § 2, pp. 12-13. "Notice of appeal to the Local Joint Adjustment Board shall be given within thirty (30) days after termination of the procedures prescribed in Section 1 of this Article, unless the time is extended by a mutual agreement of the Parties." *Id.*

On September 22, the Union met with Geiler to discuss Geiler's use of Metal Airways in its bid for the Sunman-Dearborn Project. Ex. B; Ex. C, p. 7. After the Union learned in mid-October that Geiler obtained the Sunman-Dearborn Project with Metal Airways as a subcontractor, the Union called and emailed Geiler regarding the issue through October 30, 2021. Ex. B; Ex. C, p. 7. Thus, the Union knew about Geiler's subcontracting to non-union Metal Airways on September 22, 2020, and October 30, 2020. With full knowledge, the Union chose not to pursue a grievance within the 30 calendar days as required by the CBA. *Id.* The Union waived its right to pursue a grievance about Geiler's use of Metal Airways on the Sunman-Dearborn Project.

Rather than timely pursuing its rights under the CBA, the Union waited until January 21, 2021—over 120 days after the Union first met with Geiler in-person and over 90 days after the

project began —to claim, by written letter, Geiler had violated the CBA through its use of Metal Airways to perform work on the Sunman-Dearborn Project. Ex. D. Thus, the grievance was untimely. Even if the Union had timely filed the grievance, the Union's appeal to the Board was also untimely. The Union did not file its appeal until February 12, 2021—well more than the 30 day deadline for appeals outlined in the CBA. See Ex. B; Ex. C, p. 7. The Union did not file a timely grievance appeal with the Board. Ex. A, Article X, §§ 1 and 2.

The Union did not raise a timely grievance under Article X, § 1 and did not timely request a hearing/appeal under Article X, § 2. Because of these procedural deficiencies, the Board had no authority to adjudicate the untimely grievance and appeal. For this reason, the Court should vacate the Award. *See, R.H. Cochran & Assocs., Inc.*, 2008 WL 408462, at *8.

### 2.    The Board Issued an Award Contrary to the CBA.

An arbitrator is not empowered to modify or amend the parties' agreement; he must accept the agreement as the statement of the parties' rights and obligations and the product of the parties' bargaining table, not "dispense [his or her] own brand of industrial justice." *Steelworkers*, 363 U.S. at 597; *Amax Coal Co. v. United Mine Workers of Am.*, 92 F.3d 571, 575 (7th Cir. 1996). Arbitrators may not issue awards at odds with the express language of the parties' agreement. *See United States Soccer Fed'n, Inc.*, 838 F.3d at 832-833 (vacating an arbitration award because it conflicted with and effectively added a term to the parties' agreement that would require the Players Association's approval of print creatives); *Young Radiator,* 734 F.2d at 325 (vacating an arbitration award because the arbitrator read an additional term into the agreement regarding the circumstances under which the employer could terminate employees for theft (i.e., only where theft was the motivating cause for the discharge)). Nor may arbitrators issue awards that grant remedies not authorized by the parties' agreement. *See Bankers Life & Cas. Ins. Co. v. CBRE, Inc.*,

10

830 F.3d 729, 730 (7th Cir. 2016) (vacating an arbitration award of damages based on a cost-benefit analysis not provided for under the Parties' agreement); *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1256 (7th Cir. 1994) (vacating an award that required payment of a damages remedy not provided under the parties' agreement).

The Board overextended in its Award and clarification of its Award. The CBA does not contemplate the issuance of a fine; yet the Award does exactly that, it fines and punishes Geiler for a failure to "remain part of the Association Bargaining Unit" for the upcoming contract and coerces Geiler to join the subsequent collective bargaining agreement. The Board also fails to interpret and/or rewrites multiple terms within the CBA in its Award.

### i.        The CBA does not authorize the issuance of a fine.

The CBA and the Board's procedures gives the Board limited authority to grant, if any monetary relief, compensatory damages for violations of the CBA:

> A Local Board, Panel and the National Joint Board are empowered to render such decisions and grant such ***relief to either party*** as they deem necessary and proper, including ***awards of damages*** or ***other compensation***.

Ex. A, Article X, § 5, at p. 13 (emphasis added).

> The [Board] may render such decisions and grant such ***relief to either party*** as it deems necessary and proper, including ***awards of damages*** or ***other compensation***.

Ex. F, Board Procedures, Section I.F.1, at p. 3 (emphasis added).

Neither the CBA, nor the Board's own procedures, provide the Board any authority to issue a punitive award, such as a fine. Thus, a fine is not an available remedy in a breach of contract dispute such as this. *See Lancaster v. Avon Prod., Inc.*, No. 2:15-CV-148-WTL-WGH, 2015 WL 4532751, at *2 (S.D. Ind. July 27, 2015) ("[T]he Indiana Supreme Court has consistently stated the general rule that punitive damages are not allowed in a breach of contract action. [I]n order to recover punitive damages in a lawsuit founded upon a breach of contract, the plaintiff must plead

and prove the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded.") (Internal quotes and citations omitted).[4]

Knowing the Board's limited authority to grant only compensatory damages, if any monetary relief, the Union did not ask for punitive relief for Geiler's alleged breach of the CBA. Ex. C, pp. 24-29. Instead, and consistent with the CBA, the Union sought only compensatory damages resulting from the alleged breach of the CBA. *Id.* By the Union's own admission and understanding, the Board has no authority to issue fines for breaches of the CBA, particularly a $250,000 fine devoid of any calculable basis. *Id.*

The Board issued a punitive fine ($250,000) without justification or explanation. Ex. E. This defied the express terms of the CBA and went well beyond the Board's authority to grant compensatory relief, if any monetary relief, under the CBA. Ex. A, Article X, § 5, at p. 13. The Board had no authority to issue a fine under the CBA. The parties never agreed to empower the Board to award punitive awards or fines against a party, thus, the Board exceeded its authority.

For this reason, the Court should vacate the award. *See Bankers Life & Cas. Ins.,* 830 F.3d at 730; *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d at 1256; *United States Soccer Fed'n, Inc.*, 838 F.3d at 832-833.

### ii.    The CBA does not authorize the Board to require Geiler to sign on to the next agreement to avoid a substantial fine.

The Board's Award is also contrary to the CBA because it requires Geiler remain in the Association Bargaining Unit for the next collective bargaining agreement to avoid paying a six-

---

[4]    *Accord* Restatement (Second) of Contracts § 355 ("Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable."); 24 Williston on Contracts § 65:2 (4th ed.)(explaining that "exemplary or punitive damages are not generally recoverable in breach of contract actions, even where the contract is maliciously or intentionally breached"); 5 Corbin on Contracts § 1077 (1964) ("It can be laid down as a general rule punitive damages are not recoverable for breach of contract....").

figure fine. *See*, Ex. E ("Geiler Company has a fine of $250,000, with half payable in thirty days with disbursement of payment as directed by Local No. 24; and half held in abeyance pending…Geiler Company remains a part of the Association Bargaining Unit for the upcoming contract.") This requirement falls outside the Board's authority and is not supported in the CBA.

The fine portion of the Award is a re-writing of the CBA. The Board, by ordering Geiler remain a member of the Association during any forthcoming contract or face a $125,000 fine, failed to comply with Article XIV, § 5 ("By execution of this Agreement, the Employer authorizes Sheet Metal Contractors Association of Greater Cincinnati to act as its Collective Bargaining Representative for all matter relating to this Agreement.") of the CBA. Ex. A, Article XIV, § 5, at p. 18. The Board, in its Award, inserts itself as a party to negotiations for renewal of the CBA. This is not its place; the only entity allowed to function as a bargaining representative is the Association (*See*, Article. XIV, § 5), and there is nothing in the CBA allowing the Board to negotiate on behalf of the Union or Geiler in these circumstances. *See generally*, Ex. A. The Board's intrusion mandating Geiler's participation in a subsequent agreement, or face a $125,000 fine, is outside its authority in the CBA. *Id*.

The Board also subverted the grievance process outlined for when issues arise during the negotiations process found in Article X, § 8. Article X, § 8 mandates the procedure for grieving "any controversy or dispute arising out of the failure of the parties to negotiate a renewal" of the CBA. *See*, Ex. A, Article X, § 8, at p. 14. The Award violates the exclusive process to adjudicate issues regarding failing to negotiate a renewal of the CBA. Any upcoming contract or renewal was not at issue in this grievance. *See*, Ex. B; Ex. C. There was no controversy or dispute about the "failure to negotiate a renewal." *Id.* At the hearing, the Union never brought up renewal as an issue for the Board's determination. *See generally,* Ex. C. The Board is not the entity with the authority

13

to determine the terms of a forthcoming agreement nor can it mandate parties become signatories to any such agreement. *See generally*, Ex. A. The Board, through its improper insertion of itself in the bargaining process, gave the Union a bargaining chip against Geiler in the negotiation of any further collective bargaining agreement – i.e., a $125,000 fine the Union could use to strong-arm Geiler to bend to its will in any renewal negotiations. *See*, Ex. E. The Board substituted itself for the will of the parties, and changed the preexisting agreement, which is specifically disallowed. *Anheuser-Busch, Inc.*, 280 F.3d at 1140 (7th Cir. 2002).

Finally, the CBA does not provide the Board authority to issue a fine. Nor does it provide the Board authority to require Geiler sign on to the next collective bargaining agreement through the imposition of a crippling and unauthorized fine. Ex. A, Article X, § 5. This is particularly so when considering this relief has nothing to do with the alleged violation of the CBA, nor any relief requested by the Union. *See generally*, Ex. B; Ex. C. Here, too, the Award is contrary to the CBA. The Court should vacate the Award. *United States Soccer Fed'n, Inc.*, 838 F.3d at 832; *Young Radiator,* 734 F.2d at 325; *Steelworkers*, 363 U.S. at 597; *Amax Coal Co.*, 92 F.3d at 575.

Each element of the Board's fine defies an arbitrator's duty to accept an agreement as the statement of the parties' rights and obligations and the product of the parties' bargaining table, not "dispense [his or her] own brand of industrial justice." *Steelworkers*, 363 U.S. at 597; *Amax Coal Co.*, 92 F.3d at 575. In instituting its fine, the Board has violated and/or rewrote Article XIV, § 5, Article X, § 5, and Article X, § 8 of the CBA. The Board worked to coerce Geiler to submit to an upcoming agreement and gave the Union increased bargaining power when negotiating any further agreement. Ex. F. There is no evidence Geiler, or the Union, gave the Board the power to mandate acceptance of the next agreement under the penalty of a fine. Through its Award, the Board has

14

tainted the bargaining table, clearly put forth its own brand of justice, and the Court must vacate it. *Steelworkers*, 363 U.S. at 597; *Amax Coal Co.*, 92 F.3d at 575.

### iii.    The Board changed Article II, Section 1 in its Award clarification.

The Board must accept the CBA as the statement of the parties' rights and obligations and the product of the parties' bargaining table, not "dispense [his or her] own brand of industrial justice." *Steelworkers*, 363 U.S. at 597; *Amax Coal Co.*, 92 F.3d at 575. The Board could not issue an award at odds with the express language of the parties' agreement. *United States Soccer Fed'n, Inc.*, 838 F.3d at 832; *Young Radiator,* 734 F.2d at 325. The Award and the Board's January 23, 2024, clarification, show conclusively the Board rewrote key terms of the CBA and issued its own brand of justice to punish Geiler.

In its clarification of its Award, the Board found "the union security clause found in Article V, Section 1, and the *passing reference* to the clause found within Article II, Section 1 are not applicable to the work at issue." Ex. H at p. 2 (*emphasis added*). The term "passing reference" is curious when reading Article II, § 1 of the CBA, which under no uncertain terms applies the Union Security clause, ***without limitations***. Ex. A at p. 4; Ex. H at p. 2. For the Board to say the Union Security clause found in Article V, § 1, and expressly included in Article II, § 1, is inapplicable leaves two conclusions: (1) the Board failed to read and interpret the CBA based on unambiguous language; or (2) the Board understands the Union Security clause violates Indiana law and attempts to read it out of its Award and Article II, § 1 to avoid the Court vacating the Award. It does not matter which is true, the result is the same, the Board amended unambiguous language of the CBA to fit its own needs, dispensed its own brand of industrial justice, and the Court must vacate the Award. *Steelworkers*, 363 U.S. at 597; *Amax Coal Co.*, 92 F.3d at 575 (7th Cir. 1996); *United*

*States Soccer Fed'n, Inc.*, 838 F.3d at 832; *Young Radiator,* 734 F.2d at 325; *Anheuser-Busch, Inc.*, 280 F.3d at 1140 (7th Cir. 2002).

The Board's January 23, 2024, clarification of its Award also makes little sense. The issue, according to the Board, is Geiler's "subcontracting of sheet metal work to an entity (Metal Airways) that was not signatory to the Agreement." Ex. H at p. 2. It is not rates or pay, working conditions, hiring, or any other matters covered under the CBA, including whether Apprentices or Journeymen performed the work for the project. *Id.* This is also clear in the Union's grievance, which simply restates the entirety of Article II, § 1 of the CBA as the alleged CBA provision violated. *See*, Ex. B. The only concern raised in the Union's grievance and evidence submitted to the Board is Geiler's use of Metal Airways – an entity not requiring Union membership. *See generally*, Ex. B; Ex. C. Given the issue, and the lack of other grounds for the Award or alleged violation of Article II, § 1, there is no reading of the CBA under which the Union Security clause is inapplicable and does not form the basis of the Award. Neither the Board nor the Union have articulated any other  provision of the CBA that Geiler violated. *See generally,* Ex. A, Ex. B., Ex. C, and Ex. D. Put bluntly, if the Union Security clause does not apply, then Geiler did not violate Article II, § 1. This again leads to the conclusion that the Board impermissibly amended unambiguous language of the CBA, dispensed its own brand of industrial justice, and the Court must vacate the Award. *Steelworkers*, 363 U.S. at 597; *Amax Coal Co.*, 92 F.3d at 575 (7th Cir. 1996); *United States Soccer Fed'n, Inc.*, 838 F.3d at 832; *Young Radiator,* 734 F.2d at 325; *Anheuser-Busch, Inc.*, 280 F.3d at 1140 (7th Cir. 2002).

**B.      The Award Should be Vacated Because It is in Manifest Disregard of the Law.**

If an arbitration award is in manifest disregard of the law, this Court has the authority to vacate it. *Wilko*, 346 U.S. at 436-437; *Koveleskie*, 167 F.3d at 366. An award is in manifest

disregard of the law if it requires that a party violate the law. *See Watts*, 248 F.3d at 580-81 (citing *Eastern Associated Coal Corp. v. United Mine Workers,* 531 U.S. 57 (2000)). The Board's Award requires, and rewards, Geiler for its violation of Indiana's Right-to-Work Statute and requires Geiler to act contrary to the NLRA.

1.      **Article II, § 1 violates Indiana law and cannot form the basis for an arbitration award.**

The central consideration in determining applicable law when analyzing an arbitrator's award is the "employees' job situs." *Oil, Chemical and Atomic Workers v. Mobil Oil Corp.*, 426 U.S. 407, 417-18 (1976). The place where the work is performed is "the very raison d'etre of the relationship." *Id.* This consideration is paramount as the use of a job situs test will reduce the possibility of patently anomalous extraterritorial applications of any given State's right-to-work laws and ensure the laws of a State with a continuing and current relationship with these employees will govern. *Id.* at 418-419. It is clear the law applicable to the work performed is Indiana, as the work on which the Union submitted its grievance concerned Sunman Dearborn Schools, East Central High School, and Sunman Dearborn Middle School – all in the State of Indiana. *See*, https://www.sunmandearborn.k12.in.us/information/about-us.[5] Based on Indiana law, the Award, and the CBA more generally, require Geiler to violate Indiana law.

Under Indiana law, any agreement requiring individuals to (1) be a union member of a labor organization or (2) pay dues, fees, assessments, or other charges of any kind or amount to a labor organization or third party is "unlawful and void" as a matter of law. Indiana Code § 22-6-

---

[5]      Geiler respectfully requests the Court take judicial notice of this fact. The location of all Sunman Dearborn Schools within the State of Indiana is both a fact which is "generally known within the trial court's territorial jurisdiction" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This Court may take judicial notice at "any stage of the proceeding." Fed. R. Evid. 201(d).

6-8 (prohibiting union security as a condition of employment); Indiana Code § 22-6-6-9 ("A contract, agreement, understanding, or practice, written or oral, express or implied, between: (1) a labor organization; (2) an employer; that violates section 8 of this chapter is unlawful and void."). The plain language of the provision allegedly violated by Geiler clarifies this: "No employer shall subcontract or arising any of the work described herein which is to be performed at a jobsite or to any Contractor or Subcontractor or other person or party who fails to agree in writing to comply with the conditions of employment contained herein *including, without limitations, those relating to Union Security* . . . ." Ex. A, Article II, § 1, at p. 4. The Union Security clause which Article II, § 1 expressly incorporates provides, "[t]he Employer agrees to require membership in the union, as a condition of continued employment, of all employees performing any of the work specified [under the Agreement][.]"). *Id.* at Article V, § 1, at p. 4. Despite the Board's best attempts, it cannot simply read the Union Security clause out of Article II, § 1 of the CBA, without modifying or re-writing the CBA, which is impermissible. *Anheuser-Busch, Inc.*, 280 F.3d at 1140 (7th Cir. 2002).[6]

Thus, the provision of the CBA the Board's clarified Award alleges Geiler violated is contrary to Indiana law and unenforceable as applied to the Indiana work and cannot form the basis for the Award. *See Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 Fed. Appx. 415, 420-421 (6th Cir. 2008); *New Britain Bd. of Educ. v. New Britain Fed'n of Tchrs., Loc. 871*, 754 F. Supp. 2d 407, 417 (D. Conn. 2010) (quoting *McLeod v. American Federation of Television & Radio Artists*, 234 F. Supp. 832, 841 (S.D.N.Y.1964)) ("If a contract provision 'is unenforceable and void, it should not and cannot form the basis for any arbitration award, irrespective of the holding of the arbitrator,

---

[6]     Article II of the CBA does not provide an exemption to the Union Security clause for Right-to-Work states. *See generally*, Ex. A. Nor does it state Article II is inapplicable if enforcement of the CBA or the Union Security clause would violate law. *Id.* Even if the Court struck Article II, § 1 and/or Article V from the CBA when applied to work in Indiana to allow enforcement of the CBA to work in Indiana, which is not allowed, then Geiler could not have violated such provisions and the Award must be vacated as contrary to the CBA.

and the mere submission of the controversy to arbitration would compound the statutory violation.").

       **2.**    **The Award Requires that Geiler and its Subcontractors Violate the Law of Indiana, Where the Work at Issue Occurred.**

Moving beyond the argument the CBA is unenforceable and inapplicable in Indiana, the Award itself requires Geiler to violate Indiana's Right-to-Work Statute. *See generally,* Ex. E; Ex. H. The Award, despite the language of the Board's January 23, 2024 clarification, punishes Geiler for violation of the Union Security clause (or put another way – not requiring membership in the Union of the entity who ultimately performed sheet metal work to (Metal Airways) – *See*, Ex. A, Article V, § 1, at p. 4). The Award also holds Geiler hostage, keeping $125,000 of Geiler's fine in abeyance pending no further violation of Article II, § 1, including ***without limitations***, the Union Security clause. *See*, *Id.*, Article II, § 1, at p. 4; Ex. E; Ex. H. The Award places Geiler in the unenviable position of either violating the CBA (and the Award) and paying the remaining $125,000 or violating Indiana law and facing action from the State of Indiana. In addition, Geiler now understands it faces six-figure fines from the Board whenever it contracts for work in Indiana in compliance with Indiana law. If Geiler wishes to pursue a subcontractor for work performed in Indiana, it is forced to require said subcontractor "require membership in the Union" and violate Indiana law. *See*, Ex. A, Article II, § 1, at p. 4. The Award mandates Geiler and its subcontractors abide by the CBA in violation of Indiana's Right-to-Work Statute. *See* Ex. E (granting a fine for alleged violation of the CBA in Indiana and offering criteria for a reduced fine based on future compliance with the CBA in Indiana and elsewhere). That means the Award is in manifest disregard of the law and must be vacated. *See Watts*, 248 F.3d at 580-81.

### 3.        The Award Requires that Geiler Act Contrary to the NLRA.

The Award also requires Geiler act contrary to its rights under the NLRA. Under Section 8(f) of the NLRA, employers and unions in the construction industry may enter into collective bargaining agreements before the union establishes its majority status among employees or is certified as the representative of employees through a National Labor Relations Board election. *Elec. Workers Loc. 58 Pension Tr. Fund v. Gary's Elec. Serv. Co.*, 227 F.3d 646, 653 (6th Cir. 2000). Unlike agreements under Section 9(a) of the NLRA, employers and unions may repudiate their relationship after a Section 8(f) contract ends and have no duty to bargain over the next agreement. *Id.* Thus, Geiler need not remain a part of the Association Bargaining Unit, agree to the next contract with the Union, or bargain with the Union over any future agreement. *Elec. Workers Loc. 58 Pension Tr. Fund*, 227 F.3d at 653. But that is exactly what the Award requires through the imposition of a six-figure fine. Ex. E. Due to this requirement, the Award is in manifest disregard of the law and the Court must vacate it. *See Watts*, 248 F.3d at 580-81.

## IV.        CONCLUSION

Based on the foregoing, Geiler respectfully requests that the Court grant its Motion and vacate the Board's improper and unlawful Award.

<div style="margin-left: 40%">

Respectfully submitted,

LITTLER MENDELSON, P.C.

*/s/ Ryan J. Sterling*
Ryan J. Sterling (34212-49)
111 Monument Circle, Suite 702
Indianapolis, IN  46204
Telephone:    317.287.3600
Facsimile:    317.636.0712
Email:        rsterling@littler.com

Brooke E. Niedecken (OH #0079142)
41 South High Street, Suite 3250

</div>

20

Columbus, OH 43215
Telephone:    614.463.4201
Facsimile:    614.221.3301
E-mail:        bneidecken@littler.com

*Attorneys for Plaintiff The Geiler Company*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 16th day of July, 2024, the foregoing *Memorandum in Support of The Geiler Company's Motion to Vacate Arbitration Award* has been filed via the Court's electronic filing system. Notice of filing will be performed by the Court's electronic filing system, and parties may access the document through the Court's electronic filing system.

*/s/ Ryan J. Sterling*

4891-9733-2941.1 / 111004-1000