# EXHIBIT A

# AGREEMENT

## between

## THE SHEET METAL CONTRACTORS ASSOCIATION OF GREATER CINCINNATI, INC.

## and

## INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL, AND TRANSPORTATION WORKERS (SMART) LOCAL UNION NO. 24 (CINCINNATI AREA)

**June 1, 2018 through May 31, 2022**

 37

**EXHIBIT A**

## TABLE OF CONTENTS

| Subject | Article | Addendum | Section | Page |
|---|---|---|---|---|
| | | 3 | | 35 |
| Apprentice Assignment | | | d | 44 |
| Apprentice Training Fund | | 9 | | 31 |
| Bargaining Representative | XIV | | 5 | 17 |
| Bonding Requirements | VIII | | 17 | 17 |
| Cincinnati Area Retirement Plan & Trust | | 9 | h | 48 |
| | | 27 | | 59 |
| Classified Workers | XIV | | 1-5 | 30 |
| Contract Duration | VIII | | 16 | 16 |
| Delinquent Contributions | VIII | | 9 | 10 |
| Discharging an Employee | | 30 | | 62 |
| Drug Testing Program | | 9 | f | 46 |
| Dues Check-Off/PAL | V | | 1-4 | 3 |
| Employees to be Members of the Union | | 11 | | 50 |
| Employers Right to Hire | | 10 | | 49 |
| Fringe Fund Payments | | 14 | | 51 |
| Foremen | I | | 1 | 1 |
| Geographic Jurisdiction | X | | 1-11 | 19 |
| Grievance Procedure | | 9 | c | 44 |
| Health & Welfare Fund | VIII | | 6 | 9 |
| Higher Wage Scale | VIII | | 5 | 9 |
| Hiring Out of Jurisdiction | VI | | 2 | 6 |
| Holidays | | 25 | | 55 |
| Hourly Wages and Fringes | | 7 | | 39 |
| Hours (Work Day and Week) | VIII | | 15 | 14 |
| International Training Institute | X | | 1-8 | 19 |
| Joint Adjustment Board | | 33 | | 69 |
| Journeyman Safety Training | XI | | 1-9 | 25 |
| Training Committee (JATC) | XII | | | 29 |
| Labor Management Committee | | 12 | | 50 |
| Lay-Off – Termination Card Employee | VIII | | 9 | 10 |
| Lay-Off Pay | | 9 | g | 47 |
| Local/National Industry Fund | | 29 | | 62 |
| Mechanical Service | VIII | | 11 | 11 |
| Minimum Employees | | 34 | | 70 |
| Mobility of Manpower | | 32 | | 66 |
| Money Purchase Plan | VIII | | 12 | 11 |
| National Industry Fund (IFUS) | | 9 | b | 43 |
| National Pension Fund | | 18 | | 53 |
| Non-Discrimination Clause | | 21 | | 53 |
| Notifications | VI | | 1 | 5 |
| Overtime – Rate | VI | | 3 | 6 |
| Overtime – Scheduling | | 23 | | 54 |
| Owner's Son/Daughter | | 20 | | 53 |
| Parking – Downtown | VIII | | 9 | 10 |
| Pay Day | | 15 | | 52 |
| Payroll Check Stubs | | 26 | | 57 |
| Pre-Apprentices | | | | |

**EXHIBIT A**

**EXHIBIT A**

| Subject | Article | Addendum | Section | Page |
|---|---|---|---|---|
| Protective Equipment | | 5 | | 37 |
| Reopener Clause | XIV | | 3 | 30 |
| Resolution 78 | | 24 | | 54 |
| Right to Refuse to Cross Picket Line | | 8 | | 41 |
| Safety | | 28 | a-d | 61 |
| Scholarship Fund | | 9 | i | 48 |
| Sending Employees Outside Jurisdiction | VIII | | 6 | 9 |
| Sending Employees Outside Jurisdiction | | 2 | a | 34 |
| Seventy-Two Hour Rule | | 1 | | 33 |
| Shift Work | VI | | 4 | 6 |
| Shift Work | | 7 | 2 | 40 |
| Show-Up Pay | VIII | | 10 | 11 |
| State Taxes | | 16 | | 52 |
| Steward Clause | | 6 | | 37 |
| Sub-Contracting | II | | 1-2 | 2 |
| Supplemental Unemployment Benefit Fund (SUB) | | 9 | e | 45 |
| Substance Testing Policy | | 31 | | 63 |
| Tools – Hand | IX | | 1-2 | 18 |
| Tools – Theft of | | 4 | | 36 |
| Tools – No Restrictions | | 17 | | 52 |
| Transportation | VII | | 1-2 | 6 |
| Travel Time and Expenses | | 2 | | 34 |
| Two-Man Rule | VIII | | 6 | 9 |
| Unemployment and Workers Compensation | | 13 | | 51 |
| Union Access to Work Sites | | 22 | | 54 |
| Union Contractor | | 19 | | 53 |
| Union to Furnish Workers | IV | | 1 | 3 |
| Wage Scale Defined | VIII | | 7 | 10 |
| Wages and Fringes | VIII | | 1-7 | 5 |
| Wages and Fringes – Minimum | | 9 | a | 42 |
| Wages and Fringes – Tables: | | | | |
| Journeymen | | 25 | a | 55 |
| Apprentices | | 25 | b | 56 |
| Pre-Apprentices | | 26 | | 57 |
| Classified Worker | | 27 | 1 | 59 |
| Work Classification | III | | 1 | 2 |
| Working Rules | | | | 73 |

STANDARD FORM OF UNION AGREEMENT (A-01-05) SHEET METAL ROOFING, VENTILATING AND AIR CONDITIONING CONTRACTING DIVISION OF THE CONSTRUCTION INDUSTRY

**AGREEMENT** entered into this **1st** day of **June, 2018** by and between the Sheet Metal Contractors' Association of Greater Cincinnati, Inc., hereinafter referred to as the **Employer**, and Local Union No. 24 Cincinnati of the International Association of Sheet Metal, Air, Rail, and Transportation Workers, hereinafter referred to as the **Union** for Hamilton, Highland, Brown and Clermont Counties in Ohio; Boone, Campbell, and Kenton Counties in Kentucky; Dearborn and Ohio Counties in Indiana.

### ARTICLE I
### WORK JURISDICTION

**SECTION 1.** This **Agreement** covers the rates of pay, and conditions of employment of all employees of the Employer engaged in, but not limited to, the (a) manufacture, fabrication, assembling, handling erection, installation, dismantling, conditioning, adjustment, alteration, repairing and servicing of all ferrous or non-ferrous metal work and all other materials used in lieu thereof and all HVAC systems, air-veyor systems, exhaust systems and air handling systems regardless of material used including the setting of all equipment and all reinforcements in connection therewith;  (b) all lagging over insulation and all duct lining;  (c) testing and balancing of all air handling equipment and duct work;  (d) the preparation of all shop and field sketches, whether manually drawn or computer assisted, used in fabrication and erection, including those taken from original architectural and engineering drawings or sketches, and  (e) metal roofing (f) all other work included in the jurisdictional claims of the

1

**EXHIBIT A**

International Association of Sheet Metal, Air, Rail, and Transportation Workers.

## ARTICLE II
### SUBCONTRACTING OR ASSIGNMENT OF WORK

**SECTION 1.** No Employer shall subcontract or assign any of the work described herein which is to be performed at a jobsite to any Contractor, Subcontractor or other person or party who fails to agree in writing to comply with the conditions of employment contained herein including, without limitations, those relating to Union Security, rates of pay and working conditions, hiring and other matters covered hereby for the duration of the project.

**SECTION 2.** Subject to other applicable provisions of this **Agreement,** the Employer agrees that when subcontracting for prefabrication of materials covered herein, such prefabrication shall be subcontracted to fabricators who pay their employees engaged in such fabrication not less than the prevailing wage for comparable sheet metal fabrication, as established under provisions of this **Agreement.**

## ARTICLE III
### WORK CLASSIFICATION

**SECTION 1.** The Employer agrees that none but journeymen and apprentice sheet metal workers shall be employed on any work described in **Article I** and further, for the purpose of proving jurisdiction, agrees to provide the Union with written evidence of assignment on the employer's letterhead for certain specified items of work to be performed at job-site prior to commencement of work at the site. List of such specific items, which may be revised from time to time, as agreed to by and between SMACNA and SMART, shall be provided to the Employer.

2

## ARTICLE IV
### UNION TO FURNISH WORKERS

**SECTION 1.** The Union agrees to furnish, upon request by the Employer, duly qualified journeymen and apprentice sheet metal workers in sufficient numbers as may be necessary to properly execute work contracted for by the Employer in the manner and under the conditions specified in this **Agreement.**

## ARTICLE V
### EMPLOYEES TO BE MEMBERS OF THE UNION

**SECTION 1.** The Employer agrees to require membership in the Union, as a condition of continued employment, of all employees performing any of the work specified in **Article I** of this **Agreement,** within eight (8) days following the beginning of such employment or the effective date of this **Agreement,** whichever is the later, provided the Employer has reasonable grounds for believing that membership is available to such employees on the same terms and conditions generally applicable to other members and that membership is not denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

**SECTION 2.** Union may request recognition as the exclusive collective bargaining agent for all employees employed by the Employer in the classifications and geographic jurisdiction covered by this Agreement whether or not they are members of the Union. In determining whether the union has the support of a majority of the Employer's employees such showing may be based upon either a majority of those employed at the time such recognition is requested, or a majority of those eligible to vote under the National Labor Relations Board's Steiny-Daniels formula. No later than 10 days

3

**EXHIBIT A**

following the union's request, the Employer shall review employees' authorization cards submitted by the Union in support of its claim to represent and have the support of a majority of such employees. If a majority of the employees has designated the Union as their exclusive collective bargaining representative, the Employer will recognize the Union as such majority representative of all employees in the classification and geographic jurisdiction covered by this Agreement. The employer shall not file or cause the filing of a petition for election or unfair labor practice charge with the National Labor Relations Board in connection with any demands for recognition provided for here. Article X of this agreement shall be the sole and exclusive means of resolving any dispute concerning this provision.

If, during the term of this **Agreement,** the Labor Management Relations Act of 1947 shall be amended by Congress in such manner as to reduce the time within which an employee may be required to acquire Union membership, such reduced time limit shall become immediately effective instead of and without regard to the time limit specified in **Section 1.** of this **Article**.

**SECTION 3.** The provisions of this **Article** shall be deemed to be of no force and effect in any state, to the extent to which the making or enforcement of such provision is contrary to law. In any state where the making and enforcement of such provision is lawful only after compliance with certain conditions precedent, this **Article** shall be deemed to take effect as to involved employees immediately upon compliance with such conditions.

**SECTION 4.** The Employer agrees to deduct Union Dues assessment or service fees (excluding fines and initiation fees) from each week's pay of those employees who have authorized such deductions in writing, irrespective of whether they are Union members. Not later than the twentieth (20th) day of each month, the

4

Employer shall remit to the designated financial officer of the Union, the amount of deductions made for the prior month, together with a list of employees and their social security numbers for whom such deductions have been made.

### ARTICLE VI
### HOURS, HOLIDAYS, OVERTIME, SHIFT WORK

**SECTION 1.** The regular working day shall consist of eight (8) hours labor in the shop or on the job between six (6:00) a.m. and five (5:00) p.m. and the regular working week shall consist of five (5) consecutive eight (8) hour days labor in the shop or on the job beginning with Monday and ending with Friday of each week. All full time or part time labor performed during such regular hours shall be recognized as regular working hours and paid for at the regular hourly rate. Except as otherwise provided pursuant to **Section 4.** of this **Article**, the first twelve (12) hours performed on Saturdays and work in excess of eight (8) hours per day on weekdays, but no more than twelve (12) hours, shall be at the rate of time and one half (1½) the regular rate of pay. All work hours in excess of twelve (12) hours Monday through Saturday will be two (2) times the regular rate of pay. All work hours between 12:01 a.m. Sunday to starting time six (6:00) a.m. Monday shall be at two (2) times the regular rate of pay for those working Sunday into Monday. When job necessitates requiring starting before regular starting time six (6:00) a.m. during workweek, pay shall be paid at one and one-half (1½) times the regular rate of pay.

A makeup day may be scheduled for work missed due to inclement weather, when mutually agreed between the Local Union and Employer. The makeup hours shall be paid at the regular rate of pay. Employees shall be at the shop or project site at scheduled starting time each day and shall remain until quitting time.

5

**EXHIBIT A**

**SECTION 2.** New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Day and Sundays shall be recognized as holidays. Monday will be recognized as holiday if holiday falls on Sunday. Friday is never a holiday unless the actual holiday falls on Friday. All work performed on holidays shall be paid as follows: two (2) times the regular rate of pay.

**SECTION 3.** It is agreed that all work performed outside of regular working hours during the regular workweek and on holidays shall be performed only upon notification by the Employer or employee to the Local Union in advance of scheduling such work. Preference to overtime and holiday work shall be given to men on the job on a rotation basis so as to equalize such work as nearly as possible.

**SECTION 4.** Shift work and the pay and conditions therefore shall be only as provided in written Addendum attached to this **Agreement**. Energy Conservation-Retrofit work performed outside the regular workday in occupied buildings shall be performed under shift work conditions to be established by the local parties or by the National Joint Adjustment Board on the request of either party, if not locally provided. (See Addendum 7)

### ARTICLE VII
### TRANSPORTATION

**SECTION 1.** When employed in a shop or on a job within the limits of the Union's jurisdiction, employees shall be governed by the regular working hours specified herein and shall provide for themselves necessary transportation within the said limits from home to shop or job at starting time and from shop or job to home at quitting time and the Employer shall provide or pay for all necessary additional transportation during working hours.

**SECTION 2.** When employed outside of the limits specified in **Section 1.** of this **Article**, and within the jurisdiction of the Union, employees shall provide transportation for themselves which will assure their arrival at the limits specified in **Section 1.** of this **Article** at regular starting time and the Employer shall provide or pay for all additional transportation for such jobs, including transportation from such job back to the limits specified in **Section 1.** of this **Article**, which will assure arrival at such limits at quitting time. As an alternative to the foregoing method, travel expense may be paid by a zone or other method of payment. If this alternative method is used, it will be as provided in a written Addendum attached hereto. (See Addendum 2.). The parties intend travel pay to fairly compensate employees for travel, not to place Contractors at a competitive disadvantage due to geographic location or to create artificial barriers against out of area Contractors.

### ARTICLE VIII
### APPLICABLE WAGE RATES & FRINGE BENEFITS FUNDS

**SECTION 1.** The minimum rate of wages for journeymen sheet metal workers covered by this **Agreement** when employed in a shop or on a job within the jurisdiction of the Union to perform any work specified in **Article I** of this **Agreement** shall be in accordance with Addendum 9 except as hereinafter specified in **Section 2.** of this **Article**.

**SECTION 2.** On all work specified in **Article I** of this **Agreement**, fabricated and/or assembled by journeymen, apprentices, pre-apprentices and/or classified sheet metal workers within the jurisdiction of this Union, or elsewhere, for erection and/or installation within the jurisdiction of any other collective bargaining areas or local union affiliated with the International Association of Sheet Metal, Air, Rail and Transportation Workers, whose

6

7

**EXHIBIT A**

established wage scale is higher than the wage scale specified in this Agreement, the higher wage scale of the jobsite Union shall be paid to the employees employed on such work in the home shop or sent to jobsite.

**SECTION 3.** The provisions of **Section 2.** of this **Article**, **Section 2.** of **Article II** and **Section 1.** of **Article III** shall not be applicable to the manufacture for sale to the trade or purchase of the following items:

1. Ventilators
2. Louvers
3. Automatic and fire dampers
4. Radiator and air conditioning unit enclosures
5. Fabricated pipe and fittings for residential installations and light commercial work as defined in the locality
6. Mixing attenuation boxes
7. Plastic skylights
8. Air diffusers, grilles, registers
9. Sound attenuators
10. Chutes
11. Double-wall panel plenums
12. Angle rings

8

**SECTION 4.** The provisions of **Section 2.** of this **Article** shall not be applicable to AIR POLLUTION CONTROL SYSTEMS fabricated for the purpose of removing air pollutants, excluding air conditioning, heating and ventilating systems. In addition, the provisions of **Section 2.** of this **Article**, will not be applicable to the manufacture of spiral pipe and fittings for high-pressure systems.

**SECTION 5.** Except as provided in **Sections 2.** and **6.** of this **Article**, the Employer agrees that journeymen sheet metal workers hired outside of the territorial jurisdiction of this **Agreement** shall receive the wage scale and working conditions of the **Local Agreement** covering the territory in which such work is performed or supervised.

**SECTION 6.** When the Employer has any work specified in **Article I** of this **Agreement** to be performed outside of the area covered by this **Agreement** and within the area covered by another **Agreement** with another Union affiliated with the International Association of Sheet Metal, Air, Rail, and Transportation Workers and qualified sheet metal workers are available in such area, he/she may send no more than two (2) sheet metal workers per job into such area to perform any work which the Employer deems necessary, both of whom shall be from the Employer's home jurisdiction. All additional sheet metal workers shall come from the area in which the work is to be performed. Journeymen sheet metal workers covered by this **Agreement** who are sent outside of the area covered by this **Agreement** shall be paid at least the established minimum wage scale specified in **Section I.** of this **Article** but in no case less than the established wage scale of the **Local Agreement** covering the territory in which such work is performed or supervised, plus all necessary transportation, travel time, board and expenses while employed in that area and the Employer shall be otherwise governed by the established working conditions of that **Local Agreement.** If

9

EXHIBIT A

employees are sent into an area where there is no **Local Agreement** of the International Association of Sheet Metal, Air, Rail, and Transportation Workers covering the area then the minimum conditions of the home Local Union shall apply.

**SECTION 7.** In applying the provisions of **Section 2., 5.** and **6.** of this **Article VIII**, the term "wage scale" shall include the value of all applicable hourly contractual benefits in addition to the hourly wage rate provided in said **Sections**.

**SECTION 8.** Welfare benefit contributions shall not be duplicated. When sheet metal workers are employed temporarily outside the jurisdiction of their home Local Union, the parties signatory to this **Agreement** agree to arrange through the Health and Welfare Trust Fund to transmit health and welfare contributions made on behalf of the employee to the Health and Welfare Fund in the employee's home Local Union. The parties to this **Agreement** agree to establish a system for continuing health and welfare coverage for employees working temporarily outside the jurisdiction of the **Local Collective Bargaining Agreement** when health and welfare contributions are transmitted on their behalf by trust funds from other areas. When sheet metal workers are temporarily employed outside the jurisdiction of their home Local Union, the parties signatory to this **Agreement** shall arrange to transmit any 401(k) contributions required to be made to a 401(k) plan where work is performed to a 401(k) plan established for the employees home Local Union, and/or to the National Supplemental Savings Plan. This obligation is conditioned upon a suitable reciprocity arrangement being agreed to by the trustees of such plans.

**SECTION 9.** Wages or electronic transfer payroll stub detail at the established rates specified herein shall be paid or provided weekly in the shop or on the job at or before quitting time on the regular payday

of each week and no more than three (3) regular working days will be withheld. Employees may be paid by electronic transfer or by mail on a voluntary basis. If electronic transfer is used, a copy of the Employees Electronic Transfer Release Form must be placed on file with the Union by the Employer. However, employees, when discharged, shall be paid in full. Employees who are terminated and/or laid-off, shall be furnished from the office of the Employer, a lay-off slip which shall indicate the reason for said termination or lay-off.

**SECTION 10.** Journeymen and apprentice sheet metal workers who report for work by direction of the Employer and are not placed to work, shall be entitled to two (2) hours pay at the established rate. This provision, however, shall not apply under conditions over which the Employer has no control.

**SECTION 11.** Each Employer covered by this **Agreement** shall employ at least one (1) journeyman sheet metal worker who is not a member of the firm on all work specified in **Article I** of this **Agreement**.

**SECTION 12. (a)** (IFUS)  Contributions provided for in **Section 12.(b)** of this **Article** will be used to promote programs of industry education, training, negotiation and administration of **Collective Bargaining Agreement**, research and promotion, such programs serving to expand the market for the services of the sheet metal industry, improve the technical and business skills of employers, stabilize and improve Employer-Union relations and promote, support and improve the employment opportunities for employees. No part of any such payments however, shall be used for any purpose except as expressly specified above.

**(b)** The Employer shall pay the Sheet Metal and Air Conditioning Contractors' National Industry Fund of the United States (IFUS) twelve cents ($0.12) per hour for each hour worked on and after the effective date of this **Agreement,** for each employee of the Employer covered by this **Agreement**. Payment shall be made on or before the twentieth (20th) day of the succeeding month and shall be remitted to IFUS, 4201 Lafayette Center Drive, Chantilly, VA 22021-1209, or for the purpose of transmittal, through the Sheet Metal Contractors Association of Greater Cincinnati.

**(c)** The IFUS shall submit to the International Association of Sheet Metal, Air, Rail, and Transportation Workers, not less often than semi-annually, written reports describing accurately and in reasonable detail the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds. One (1) time per year, the IFUS shall include in such written report a financial statement attested to by a certified public accountant containing its balance sheet and detailed statement of annual receipts and disbursements. Further specific detailed information in regard to IFUS activities or its receipts and/or expenditures shall be furnished to the International Association of Sheet Metal, Air, Rail, and Transportation Workers upon written request.

**(d)** Grievances concerning the use of IFUS funds for purposes prohibited under **Section 12. (a),** or for violations of other subsections of this **Section** may be processed by the International Association of Sheet Metal, Air, Rail, and Transportation Workers directly to the National Joint Adjustment Board under the provisions of **Article X** of this **Agreement**. In the event such proceeding results in a deadlock, either party may, upon ten (10) days notice to the other party, submit the issue to final and binding arbitration. The Arbitrator shall be selected by the Co-Chairman of the National Joint

12

Adjustment Board. The Arbitrator shall be authorized to impose any remedial order he/she deems appropriate for the violation of this **Section,** including termination of the employer's obligation to contribute to the IFUS. The authority of the Arbitrator is expressly limited to a determination of a deadlocked issue under this **Section (Section 12., Article VIII)** and no other.

**SECTION 13. (a) (CAIF)** Contributions provided for in **Section 13.(b)** of this **Article** will be used to promote programs of industry education, training, negotiation and administration of **Collective Bargaining Agreement,** research and promotion, such programs serving to expand the market for the services of the Sheet Metal Industry, improve the technical and business skills of employers, stabilize and improve Employer-Union relations and promote, support and improve the employment opportunities for the employees. No part of any such payments, however, shall be used for any other purpose except as expressly specified above.

**(b)** The Employer shall pay to the Cincinnati Area Sheet Metal Industry Fund (hereinafter referred to as the Local Industry Fund), effective June 1, 2014, twelve cents ($0.12) per hour for each hour worked on or after the effective date of this **Agreement** by each employee of the employer covered by this **Agreement**. Payment shall be made monthly on or before the twentieth (20th) day of the succeeding month.

**(c)** The fund shall furnish to the Business Manager of the Union, not less often than semi-annually, written reports describing in reasonable detail the nature of the activities in which it is engaged or which it supports directly or indirectly with any of its funds. One (1) time per year, the Fund shall include in such written report, a statement attested to by a certified public accountant and containing its balance sheet and detailed statement of receipts and

13

EXHIBIT A

**EXHIBIT A**

disbursements. Further specific detailed information in regard to Fund activities or it receipts and/or disbursements shall be furnished to the Business Manager of the Union upon his written request.

(d) Grievances concerning the use of Local Industry Fund monies to which an employer shall contribute for purposes prohibited under **Section 13.(a)** or for violations of other subsections of this **Section** shall be handled under the provisions of **Article X** of this **Agreement**. The National Joint Adjustment Board shall be authorized to impose any remedial order for violation of this **Section**, including termination of the Employer's obligation to contribute to the Local Industry Fund.

SECTION 14. The Union and Employer recognize that the contributions provided in **Sections 12. (b)** and **13. (b)** of this **Article** support activities that benefit the entire sheet metal industry. It is essential that Employer support these activities, even though it may be performing sheet metal work under the provisions of a separate project agreement or maintenance agreement. Therefore, hours worked for purpose of determining the contributions required under **Sections 12. (b)** and **13. (b)** of this **Article** shall include all hours worked by each employee of the Employer under any project agreement or maintenance agreement, unless specifically excluded by the terms of a written addendum that is negotiated by the Contractors' Association and the Local Union that are parties to this **Agreement**.

SECTION 15. (ITI) Effective as of the date of this **Agreement** the Employers will contribute to the International Training Institute for the Sheet Metal and Air Conditioning Industry (ITI) the hourly contribution rate established by the ITI Trustees. Such amount shall be contributed for each hour worked by each employee of the employer covered by this Agreement. In the event that such hourly

14

contribution is changed during the term of this Agreement, such change shall become effective during the next anniversary date of this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the ITI, or, for purposes of collection and transmittal electronically.

(NEMIC) Effective as of the date of this Agreement, the Employer shall contribute to the National Energy Management Institute Committee (NEMIC), the hourly contribution rate established by the NEMIC Trustees. Such amount shall be contributed for each hour worked by each employee of the Employer covered by this Agreement. In the event that such hourly contribution rate is changed during the term of this Agreement, such change shall become effective during the next anniversary date of this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the NEMIC, or, for collection and transmittal electronically.

(SMOHIT) Effective as of the date of this **Agreement,** the Employer shall contribute to the Sheet Metal Occupational Health Institute Trust (Institute) the hourly contribution rate established by the Institute's Trustees. Such amount shall be contributed for each hour worked by each employee covered by this Agreement until the Institute Trustees determine that the Trust is financially self-sufficient. In the event that such hourly rate is changed during the term of this Agreement, such change shall become effective during the next anniversary date of this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the Institute, or, for purposes of collection and transmittal electronically.

15

**EXHIBIT A**

The parties authorize the trustees of all National Funds (as defined below) to cooperatively establish uniform collection procedures for efficient and effective operation of the various National Funds. The parties recognize that the National Funds can receive and process contribution reports and remittances electronically. The parties agree to encourage employers to utilize the electronic reporting and remittance system.

The parties agree to bound by, and act in accordance with, the respective Plan Documents, Agreements and Declarations of Trusts and/or Trust Documents establishing or governing the International Training Institute for the Sheet Metal and Air Conditioning Industry, the National Energy Management Institute Committee, the Sheet Metal Occupational Health Institute Trust, and the Industry Fund of the United States, and to the extent that this Agreement requires contributions to the following funds, the Sheet Metal Workers' National Pension Fund, National Stabilization Agreement of the Sheet Metal Industry Trust Fund, Sheet Metal Workers' National Health Fund, International Association of Sheet Metal, Air, Rail and Transportation Workers Scholarship Fund, Sheet Metal Workers' National Supplemental Savings Plan (Collectively, "National Funds"), as applicable and the separate agreements and declarations of trusts of all other local or national programs and benefit plans to which it has been agreed that contributions will be made bound by any amendments to said trust or plan documents as may be made from time and hereby designate as their representatives on the Board of Trustees such trustees as are named together with any successors who may be appointed pursuant to said documents.

**SECTION 16. DELINQUENT CONTRIBUTIONS** In the event that the Employer becomes delinquent in making contributions to any national or local Fund, the Union may withdraw all employees from

16

the service of the Employer within five (5) days notice of such delinquency by the trustees. The withdrawal of such employees from the service of the Employer shall not constitute a violation of any provision of this **Agreement**.

**SECTION 17. (BONDING)**

**(a)** The Employer shall comply with any bonding provisions governing local Funds that may be negotiated by the local parties and set forth as a written Addendum to this **Agreement**. The Employer shall likewise comply with bonding requirements by the Trustees of the National Funds.

**(b)** When an Employer is performing any work specified in **Article I** of this **Agreement** outside of the area covered by this **Agreement** and within the area covered by another **Agreement** with a local union affiliated with the International Association of Sheet Metal, Air, Rail, and Transportation Workers, the Employer shall comply with uniformly applied bonding requirements of that local area that are reasonable and necessary to ensure the timely payment of any contribution that may be required to local and national Funds, but in no event shall such bonds be in excess of three (3) months estimated contributions to local and national Funds.

**(c)** An Employer that has been delinquent in making contributions to any national or local Fund shall, upon written notification of the trustees or Local Union, make the specified payment to such Fund at weekly intervals. Such obligation shall continue until the Employer has not been delinquent in making contributions for a period of twelve (12) consecutive months.

**SECTION 18.-** The Employer and the Union understand that the Sheet Metal Workers National Pension Fund ("NPF or "Fund") has issued a Funding Improvement Plan under the Pension Protection Act

17

EXHIBIT A

of 2006. The Parties of this Agreement have adopted the Sheet Metal Workers National Pension Fund's (NPF) First Alternative Option of the Funding Improvement Plan (FIP) as in effect when the Collective Bargaining Agreement is entered into and as the selected Option is amended from time to time. The Employer will contribute to the NPF at the hourly rates set forth in this Agreement, in accordance with the FIP First Alternative Option and the NPF's Trust Document (copies of these documents have been made available to the parties and are available at (www.smwnpf.org). The First Alternative Option and the NPF Trust Document, as amended, are incorporated into this Agreement. The Employer will pay its required monthly NPF contributions no later the 20th day of the month in which Covered Employment was performed. Failure to pay on time and in full will constitute a delinquency and subject the Employer to interest, liquidated damages, fees and costs as set forth in the Trust Document. The Employer may transmit contributions and remittance data electronically via the National Benefit Funds' secure online Internet Payment System ("IPS"), accessible at www.smwnbf.org (contact the IPS support Team via email at ips@smwnbf.org or by calling 800-231-4622).

## ARTICLE IX
## HAND TOOLS

**SECTION 1.** Sheet metal workers covered by this **Agreement** shall provide for themselves all necessary hand tools. Employers shall furnish all power tools.

**SECTION 2.** Journeymen and apprentice sheet metal workers covered by this **Agreement** shall not be permitted or required as a condition of employment to furnish the use of automobile or other conveyance to transport members, tools, equipment or materials from shop to job, from job to job, or from job to shop; facilities for such

18

transportation to be provided by the Employer. This provision shall not restrict the use of an automobile or other conveyance to transport its owner and personal tools from home to shop or job at starting time or from shop or job to home at quitting time.

## ARTICLE X
## JOINT ADJUSTMENT BOARD

The Union and the Employer, whether party to this **Agreement** independently or as a member of a multi-employer Bargaining Unit, agree to utilize and be bound by this **Article**.

**SECTION 1.** Grievances of the Employer or the Union, arising out of interpretation or enforcement of this **Agreement**, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible. Both parties may participate in conferences through representatives of their choice.

To be valid, Grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the Grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of first knowledge of the facts giving rise to the Grievance. The Grievance Procedure set forth in this **Article** applies only to Labor-Management disputes.

**SECTION 2.** Grievances not settled as provided in **Section 1.** of this **Article** may be appealed by either party to the Local Joint Adjustment Board where the work was performed or in the jurisdiction of the Employer's home local and such Board shall meet promptly on a date mutually agreeable to the members of the Board, but in no case more than fourteen (14) calendar days following the request for its services, unless the time is extended by mutual agreement of the parties or Local Joint Adjustment Board. The

19



EXHIBIT A

Board shall consist of representatives of the Union and of the local Employer's Association and both sides shall cast an equal number of votes at each meeting. The local Employers' Association, on its own initiative, may submit Grievances for determination by the Board as provided in this **Section**. Except in the case of a deadlock, a decision of a Local Joint Adjustment Board shall be final and binding.

Notice of appeal to the Local Joint Adjustment Board shall be given within thirty (30) days after termination of the procedures prescribed in **Section 1.** of this **Article**, unless the time is extended by a mutual agreement of the parties.

**SECTION 3.** Grievances not disposed of under the procedure prescribed in **Section 2.** of this **Article**, because of a deadlock or failure of such Board to act, may be appealed jointly or by either party to a Panel, consisting of one (1) representative appointed by the Labor Co-Chairman of the National Joint Adjustment Board and one (1) representative appointed by the Management Co-Chairman of the National Joint Adjustment Board. Appeals shall be mailed to the National Joint Adjustment Board. *Notice of appeal to the Panel shall be given within thirty (30) days after termination of the procedures prescribed in **Section 2.** of this **Article**. Such Panel shall meet promptly, but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the panel members. Except in case of deadlock, the decision of the Panel shall be final and binding.

Notwithstanding the provision of Paragraph 1 of this **Section**, an Employer who was not a party to the Labor Agreement of the area in which the work in dispute is performed may appeal the decision of the Local Joint Adjustment Board from that area, including a unanimous decision, and request a Panel hearing as set forth in **Section 3.** of this **Article**, providing such appeal is approved by the

20

Co-Chairman of the National Joint Adjustment Board "as well as a decision of any alternate arbitration tribunal established for that area" to a NJAB Panel. Such a right of appeal shall exist despite any contrary provision in the **Agreement** covering the area in which the work is performed. For the purposes of this **Section**, an Employer who is party to the Labor Agreement of the area in which the work in dispute is performed, but has no permanent shop within the area served by the Local Joint Adjustment Board that rendered the unanimous decision, shall also be entitled to appeal a deadlocked or unanimous Local Joint Adjustment Board decision and request a Panel hearing.

**SECTION 4.** Grievances not settled as provided in **Section 3.** of this **Article** may be appealed jointly or by either party to the National Joint Adjustment Board. Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board. Appeals to the National Joint Adjustment Board shall be submitted within thirty (30) days after termination of the procedures described in **Section 3.** of this **Article**. The Procedural Rules of the National Joint Adjustment Board are incorporated in this **Agreement** as though set out in their entirety. (Copies of the procedures may be obtained from the National Joint Adjustment Board.)

**SECTION 5.** A Local Joint Adjustment Board, Panel and the National Joint Adjustment Board are empowered to render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensation.

**SECTION 6.** In the event of non-compliance within thirty (30) calendar days following the mailing of a decision of a Local Joint Adjustment Board, Panel or the National Joint Adjustment Board, a local party may enforce the award by any means including proceedings in a court of competent jurisdiction in accord with

21

EXHIBIT A

applicable state and federal law. If the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorney's fees in addition to such other relief as is directed by the courts.

**SECTION 7.** Failure to exercise the right of appeal at any step thereof, within the time limit provided therefore, shall void any right of appeal applicable to the facts and remedies of the Grievance(s) involved. There shall be no cessation of work by strike or lockout during the pendency of the procedures provided for in this **Article**. Except in case of deadlock, the decision of the National Adjustment Board shall be final and binding.

**SECTION 8.** In addition to the settlement of Grievances arising out of interpretation or enforcement of this **Agreement** as set forth in the preceding sections of this **Article**, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this **Agreement** shall be settled as hereinafter provided:

    **(a)**    Should the negotiations for a renewal of this **Agreement** or negotiations regarding a wage/fringe re-opener become deadlocked in the opinion of the Union representative(s) or of the Employer(s) representative, or both, notice to that effect shall be given to the National Joint Adjustment Board.

If the Co-Chairmen of the National Joint Adjustment Board believe the dispute might be adjusted without going to final hearing before the National Joint Adjustment Board, each will then designate a panel representative who shall proceed to the locale where the dispute exists as soon as convenient, attempt to conciliate the differences between the parties and bring about a mutually acceptable agreement. If such panel representatives or either of them conclude that they cannot resolve the dispute, the parties thereto and the Co-Chairmen

22

of the National Joint Adjustment Board shall be promptly so notified without recommendation from the panel representatives. Should the Co-Chairmen of the National Joint Adjustment Board fail or decline to appoint a panel member or should notice of failure of the panel representatives to resolve the dispute be given, the parties shall promptly be notified so that either party may submit the dispute to the National Joint Adjustment Board.

In addition to the mediation procedure set forth above or as an alternate thereto, the Co-Chairmen of the Board may each designate a member to serve as a subcommittee and hear the dispute in the local area. Such committees shall function as Arbitrators and are authorized to resolve all or part of the issues. They are not, however, authorized to deadlock and the matter shall be heard by the National Joint Adjustment Board in the event a subcommittee is unable to direct an entire resolution of the dispute.

The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board. The unanimous decision of said Board shall be final and binding upon the parties, reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached. There shall be no cessation of work by strike or lockout unless and until said Board fails to reach a unanimous decision and the parties have received written notification of its failure.

    **(b)**    Any application to the National Joint Adjustment Board shall be upon forms prepared for that purpose subject to any changes which may be decided by the Board from time to time. The representatives of the parties who appear at the hearing will be given the opportunity to present oral argument and to answer any questions raised by members of the Board. Any briefs filed by either party

23

**EXHIBIT A**

including copies of pertinent exhibits shall also be exchanged between the parties and filed with the National Joint Adjustment Board at least twenty-four (24) hours in advance of the hearing.

(c) The National Joint Adjustment Board shall have the right to establish time limits which must be met with respect to each and every step or procedure contained in this **Section**. In addition, the Co-Chairmen of the National Joint Adjustment Board shall have the right to designate time limits which will be applicable to any particular case and any step therein which may be communicated to the parties by mail, telegram or telephone notification.

(d) Unless a different date is agreed upon mutually between the parties or is directed by the unanimous decision of the National Joint Adjustment Board, all effective dates in the new **Agreement** shall be retroactive to the date immediately following the expiration date of the expiring **Agreement**.

* All correspondence to the National Joint Adjustment Board shall be sent to the following address:

National Joint Adjustment Board
P.O. Box 220956, Chantilly, VA 20153-0956
OR
4201 Lafayette Center Drive
Chantilly, VA 20151-1209.

**SECTION 9. (NJAB Fee):** Employers not contributing to the Industry Fund of the United States (IFUS) will be assessed a fee to be determined periodically by the Administrator of the National Joint Adjustment Board. Proceeds will be used to reimburse IFUS for costs of arbitration under the provisions of **Article X**.

24

**SECTION 10.** (Specialty Addendum): In addition to the settlement of disputes provided for in **Sections 1.** through **8.** of this **Article**, either party may invoke the services of the National Joint Adjustment Board to resolve disputes over the initial establishment of terms for specialty addenda, if the provisions of **Article X** have been adopted in their entirety, and without modification.

Such a dispute may be submitted upon the request of either party any time that local negotiations for such an **Agreement** have been unsuccessful. Such a dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by said Board. The unanimous decision of said Board shall be final and binding upon the parties. There shall be no strike or lockout over such a dispute.

**SECTION 11.** In administering and conducting dispute resolution activities under the arbitration procedures of the Standard Form of Union Agreement, the National Joint Adjustment Board, the International Association of Sheet Metal, Air, Rail, and Transportation Workers, the Sheet Metal and Air Conditioning Contractors National Association, Inc. and their representatives are functioning as Arbitrators and not as the representative of any entity that is party to such dispute. Therefore, they shall enjoy all of the rights, privileges and amenities afforded to Arbitrators under applicable law.

## ARTICLE XI
### JOINT APPRENTICESHIP & TRAINING COMMITTEE

**SECTION 1.** All duly qualified apprentices shall be under the supervision and control of a Joint Apprenticeship & Training Committee composed of an equal number of trustees, half of whom shall be selected by the Employer and half by the Union. There shall

25

be a minimum of four (4) trustees.   Employer members of this Committee shall be employed by signatory Contractors. Said Joint Apprenticeship & Training Committee shall formulate and make operative such rules and regulations as they may deem necessary and which do not conflict with the specific terms of this **Agreement**, to govern eligibility, registration, education, transfer, wages, hours, working conditions of duly qualified apprentices and the operation of an adequate apprentice system to meet the needs and requirements of the trade. Said rules and regulations, when formulated and adopted by the parties hereto, shall be recognized as part of this **Agreement**.

**SECTION 2.**   The Joint Apprenticeship & Training Committee designated herein shall serve for the life of this **Agreement**, except that vacancies in said Joint Apprenticeship & Training Committee caused by resignation or otherwise, may be filled by either party hereto, and it is hereby mutually agreed by both parties hereto, that they will individually and collectively cooperate to the extent that duly qualified apprentices be given every opportunity to secure proper technical and practical education experience in the trade, under the supervision of the Joint Apprentice & Training Committee.

**SECTION 2. (a) (Upgrade Training)**
The parties will review the needs for specialized and skill-upgrade training and cooperate to establish necessary programs which will then be supervised by the Joint Apprenticeship Training Committee.

**SECTION 3.**   It is the understanding of the parties to this **Agreement** that the funds contributed by signatory Employers to the International Training Institute and any Local Joint Apprenticeship and Training Fund (Local JATC) will not be used to train apprentices who will be employed by employers in the Sheet Metal Industry not signatory to a **Collective Bargaining Agreement** providing for contributions to the International Training Institute and a Local

26

JATC. Therefore, the Trustees of the International Training Institute and Local JATC shall adopt and implement a Scholarship Loan Agreement Program which will require apprentices and journeymen employed by signatory Employers to repay the cost of training either by service following training within the union sector of the industry or by actual repayment of the cost of training if the individual goes to work for a non-signatory Employer in the Sheet Metal Industry.  The cost of the training shall include the reasonable value of all International Training Institute and Local JATC materials, facilities and personnel utilized in training.   If a Local JATC does not implement the Scholarship Loan Agreement, the Local JATC shall be prohibited from utilizing International Training Institute materials and programs.

**SECTION 4.**  It is hereby agreed that the Employer shall apply to the Joint Apprenticeship & Training Committee and the Joint Apprenticeship & Training Committee shall grant apprentices on the basis of one (1) journeyman to one (1) apprentice; four (4) journeymen to two (2) apprentices; seven (7) journeymen to three (3) apprentices; and three (3) journeymen to one (1) apprentice thereafter, regularly employed throughout the year.   Provided however an Employer will not be entitled to a new apprentice if the Employer has an apprentice on layoff for lack of work.

**SECTION 5.**   All applicants for apprenticeship shall serve an apprenticeship of five (5) years and such apprentices shall not be in charge of work on any job and shall work under the supervision of a journeyman until apprenticeship terms have been completed and they have qualified as journeymen.

**SECTION 6.**   A graduated wage scale for apprentices shall be established and maintained on the following percentage basis of the established wage rate of journeymen sheet metal workers

27

EXHIBIT A

**EXHIBIT A**

Effective 06/01/18:

First Year ............First half 45% ............... Second half 45%

Second Year ........First half 47.5% ........... Second half 50%

Third Year ......... First half 52.5% ........... Second half 55%

Fourth Year ...... First half 60%............ Second half 65%

Fifth Year ......... First half 70% .............. Second half 75%

This **Section** shall not have the effect of reducing the wage progression schedule of any apprentice who was indentured prior to the effective date of this **Agreement**. (See Addendum 9 for apprentice fringe benefits.)

**SECTION 7.** The parties will establish on a local basis the SMWIA Youth-to-Youth program (the program) and the procedures to enable all apprentices to participate in the program. The activities of the program that deal with organizing and other traditional union activities shall be funded by the local union through a check-off in compliance with the provisions of Section 302 (c) of the Labor-Management Relations act of 1947. Activities that may be funded by Employer contributions shall be so funded if, and to the extent, the parties shall agree locally to sponsor and implement the same.

**SECTION 8.** The parties agree that concentrated apprenticeship training is preferable to night schooling and urge the Joint Apprenticeship and Training Committee to implement concentrated training during the term of this **Agreement**. The parties recognize that previous experience in the industry can be considered when evaluating and placing sheet metal workers into the apprenticeship

28

program and the JATC shall work cooperatively with the parties in establishing standards for placing employees into the program. The parties shall also address the need to provide continuity in health care for those workers entering the program with prior experience in the industry.

**SECTION 9. (Upgrade Training)**
The parties agree that career-long skill upgrade training is necessary for an effective workforce and agree to undertake those measures available to them to encourage continuing training for sheet metal journeymen.

**ARTICLE XII**
**LABOR-MANAGEMENT COMMITTEE**

SMACNA and the International Association of Sheet Metal, Air, Rail and Transportation Workers (SMART) Local Union No. 24 are committed to promoting productive and cooperative Labor-Management relations. In furtherance of this goal, the local Employers' association and Local Union agree to establish a Labor-Management Committee which shall meet to discuss industry issues of mutual concern. Such committees will strive to improve communications, understand and respond to industry direction and trends and resolve common issues collaboratively.

**ARTICLE XIII**
**NON-DISCRIMINATION**

In applying the terms of this **Agreement** and in fulfilling their obligations thereunder, neither the Employer nor the Union will discriminate in any manner prohibited by law.

29

**EXHIBIT A**

## ARTICLE XIV
## CONTRACT DURATION

**SECTION 1.** This **Agreement** and addenda numbers 1 through 36, attached hereto, shall become effective on the 1st day of **June, 2018,** and remain in full force and effect until the 31st day of **May, 2022,** and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this **Agreement** shall continue in force and effect until conferences relating thereto have been terminated by either party, provided, however, that the Contract expiration date contained in this **Section** shall not be effective in the event proceedings under **Article X, Section 8.** are not completed prior to that date. In that event, this **Agreement** shall continue in full force and effect until modified by order of the National Joint Adjustment Board, or until the procedures under **ARTICLE X, SECTION 8.** have been otherwise completed.

**SECTION 2.** If, pursuant to federal or state law, any provision of this **Agreement** shall be found by a court of competent jurisdiction to be void or unenforceable, all the other provisions of this **Agreement** shall remain in full force and effect.

**SECTION 3.** Notwithstanding any other provisions of this **ARTICLE,** or any other **ARTICLE** of this **Agreement,** whenever an amendment to the Standard Form of Union Agreement shall be adopted by the sponsoring national associations, any party to this **Agreement,** upon the service of notice to all other parties hereto, shall have this **Agreement** reopened thirty (30) days thereafter, for the sole and only purpose of attempting to negotiate such amendment or amendments into this **Agreement** for the duration of the term hereof. There shall be no strike or lockout over this issue.

30

**SECTION 4.** Each Employer hereby waives any right it may have to repudiate this **Agreement** during the term of the **Agreement** or during the term of any extension, modification or amendment to this **Agreement.**

**SECTION 5.** By execution of the **Agreement,** the Employer authorizes Sheet Metal Contractors Association of Greater Cincinnati to act as its Collective Bargaining Representative for all matters relating to this **Agreement.** The parties agree that the Employer will hereafter be a member of the multi-employer bargaining unit represented by said Association unless this authorization is withdrawn by written notice to the Association and the Union at least one hundred-fifty (150) days prior to the current expiration dates of the **Agreement.**

31

**EXHIBIT A**

IN WITNESS WHEREOF, the parties hereto affix their signatures this **1st** day of **June 2018**. This standard form of Union Agreement has provided for a reduction of the wage schedule for new apprentices. The purpose of this is to make Contractors more competitive with non-union competition. To achieve that objective, employers agree to minimize multiple markups.

Sheet Metal Contractors Association of Greater Cincinnati, Inc.

By: _____
       Jack McDonald, President

Local Union No. 24 Cincinnati of International Association of Sheet Metal, Air, Rail, and Transportation Workers

By: _____
       Rodney French, Business Manager

_____
(Name of Employer)

By: _____
       (Signature of Officer or Employer Representative)

Local Union No. 24 Cincinnati of International Association of Sheet Metal, Air, Rail, and Transportation Workers

By: _____
       (Signature of Union Officer or Representative)

32

## ADDENDA TO THE INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL, AND TRANSPORTATION WORKERS AGREEMENT

FORM A-01-05

### ADDENDUM 1.
### 72 HOUR RULE

(a) Notwithstanding the provisions of **Article IV** of this **Agreement**, the Union **shall** furnish within seventy-two (72) hours, (144 hours when the Union reaches full employment), upon request by the Employer, duly qualified journeymen and apprentice sheet metal workers in sufficient numbers as may be necessary to properly execute work contracted for by the Employer in the manner and under the conditions specified in the Agreement. In the event the Union cannot furnish duly qualified journeymen and apprentice sheet metal workers, the Employer shall have the right to hire from other sources.

(b) The Employer retains the right to reject any employees referred by the Union however, such rejection shall be based solely upon workmanship and/or qualification, and in no way be based upon membership or non-membership in the Union. The Employer shall furnish a statement in writing to the Union, upon request, stating the reason for rejection and the Union may thereupon refer the matter to the Local Joint Adjustment Board who shall hear the case.

33

**EXHIBIT A**

## ADDENDUM 2.
## TRAVEL TIME AND TRAVEL EXPENSES

Employees are to receive pay for travel in accordance with only one (1) of the provisions below:

(a) When employees are sent outside the jurisdiction of the Union and beyond a fifty (50) mile radius of the Hamilton County Court House, and it is mutually agreed (Employer and employee) that they shall remain overnight, they shall receive not less than a minimum of sixty-five dollars ($65.00) per day for living expenses, plus actual transportation costs going to and from such construction projects. When traveling, employees shall receive the straight hourly rate per hour only for those hours traveled during the regular working hours and workweek, as defined in **Article VI.** Traveling done outside of the regular workweek shall be paid at the straight hourly rate per hour for the time traveling, but not to exceed eight (8) hours per day.

(b) When traveling outside of the jurisdiction of this **Agreement** and not remaining overnight, employees shall receive mileage based on IRS Federal Standard as of January 1st of each year, per mile for all miles traveled from the jurisdiction of Local Union 24 Cincinnati to the jobsite and back. This provision shall not apply for travel to Butler and Warren Counties in Ohio, therefore there will be no mileage paid in these two (2) Counties. When traveling through Butler and Warren Counties, travel pay will be paid.

(c) When employees travel within the territorial jurisdiction of this **Agreement**, but outside of a thirty-five (35) mile radius from the Hamilton County Court House, they shall receive mileage based on IRS Federal Standard as of January 1st of each year, per mile for all miles traveled from the thirty-five (35) mile radius line to the job site and back to the thirty-five (35) mile radius line.

(d) When employees travel outside of the territorial jurisdiction of this **Agreement**, but inside of a thirty-five (35) mile radius from the Hamilton County Court House, they shall receive travel pay in accordance with Contract provisions of the adjoining Local Union. This provision shall not apply for travel to Butler and Warren Counties in Ohio therefore there will be no mileage paid in these two (2) Counties. When traveling through Butler and Warren Counties travel pay will be paid.

Employees choosing to drive to and from the job site, it is their responsibility to be at the job site at starting time and remain until quitting time. If directed by the Employer to leave the job site and return, then the above paragraph shall again apply.

When employees are sent from shop to job or moved from job to job during the regular working hours they shall be paid not less than mileage based on IRS Federal Standard as of January 1st of each year per mile (for each mile) traveled.

## ADDENDUM 3.
## APPRENTICE ASSIGNMENTS

All assignments for apprentices by the JATC shall be made under stipulations as set forth in the "Standards" approved by Local No. 24 Cincinnati and the "Association".

34

35

**EXHIBIT A**

## ADDENDUM 4.
## THEFT OF TOOLS

a. Contractors will provide a safe place on the job or in the shop for tools or replace loss. Maximum reimbursement not to exceed Seven Hundred and 00/100 Dollars ($700.00). It will be the employee's responsibility to verify that the Company's Office has received the list of tools.

b. The Employer agrees to provide adequate protection for safeguarding tools at the job site. The Employer shall be responsible for the loss (by theft) of employee's tools due to reported forced entry. The employee shall furnish a list of his tools to the foreman on the job site or the Company at the start of his employment.

c. The following is a list of tools that the Contractor is responsible for replacement of in accordance with **Section 2.** of this **Addendum**:

Chisels
Dividers (as required)
Drift Pins
Hammers (Tinners)
Rivet Sets
Scratch Awl
Tongs
Wrench: Crescent or Open End
Snips: Aviation (R&L), Straight (Bulldogs)
Punches: Center, Prick, Whitney (Small)

Combination Square with Level
Dolly Bar
Hacksaw Frame
Pliers
Rule: One six-foot folding
Screw Drivers (as required)
Vice-Grips

## ADDENDUM 5.
## PROTECTIVE EQUIPMENT

Contractors shall furnish special clothing when required, including leather palmed gloves and hard hats. The Contractor shall also furnish welders protective clothing such a leather sleeves, helmets and gloves. Any required or necessary protective or safety equipment shall be provided by the Contractor "as required by law or the customer".

## ADDENDUM 6.
## STEWARD CLAUSE

**SECTION 1.** The parties hereto agree that on every job undertaken by the Employer, there shall be a working Steward for said job or said shop. The Business Manager or Business Representative of the Union may appoint Stewards. The Business Manager or Business Representative will contact the designated Company Representative before appointing a Job or Shop Steward. Should the Company Representative dispute the proposed Steward for said Shop or Job, or want to transfer or layoff the Steward, there will be an immediate hearing (within forty-eight (48) hours) to resolve the issue.

**SECTION 2.** The Steward shall have the right and duty to observe and make immediate report to the Union office and to the Employer

EXHIBIT A

involved, of any Grievance, dispute or controversy involving the interpretation or application of any terms of the **Agreement**, that he/she has been unable to adjust, and his Employer shall not in any manner, interfere with the performance of his duty or cause any retaliation or discrimination whatsoever because of the carrying out of his duty; a Steward shall not abuse his position as Steward at the expense of his Employer.

**SECTION 3.** Nothing in the preceding **Section** shall prohibit an Employer from transferring a Job or Shop Steward to another job, or laying a Job or Shop Steward off if a job is to be discontinued or temporarily halted for cause over which the Employer has no control, provided the Steward is the next to last employee transferred or laid off from said job or shop. The Steward shall be the first (1st) employee recalled or rehired by the Employer, for said job, providing he/she is qualified to perform, after such layoff. Before a Steward is transferred or laid off, the Employer shall notify the Local Union of such action.

**SECTION 4.** When employees work overtime, the Shop or Job Steward will be asked to work overtime on any job for which he/she is qualified to perform the work.

**SECTION 5.** The Steward shall have authority to report all safety hazards and unsafe working conditions on the job site to the Contractor and/or his/her representatives and members. The Steward shall promptly take care of injured workers and accompany them to their homes or hospital providing Management does not assume the responsibility with a qualified First Aid Individual, without any loss of time, and report said injury to the proper officers of the Union and Employer.

38

**SECTION 6.** The Job or Shop Steward shall report to the office of the Union and all requests of the Employer for overtime work and the names of journeymen and apprentices working overtime.

**SECTION 7.** If mutual agreement is not reached and the Steward is terminated or transferred, the Union has the right to an immediate Grievance Board hearing within forty-eight (48) hours, unless extended by mutual agreement.

## ADDENDUM 7.
## HOURS OF WORK, FOUR (4) TENS (10), OVERTIME, SHIFTS

**SECTION 1.** The regular working day shall consist of eight (8) hours labor in the shop or on the job between six o'clock (6:00) a.m. and five o'clock (5:00) p.m. and the regular working week shall consist of five (5) eight (8) hour days labor in the shop or on the job beginning with Monday and ending with Friday of each week. However, the Employer may designate an alternate schedule whereby the regular working day shall consist of ten (10) hours labor in the shop or on job between six (6:00) a.m. and six o'clock (6:00) p.m. and the regular work week shall consist of four (4) ten (10) hour days labor in the shop or on the job, beginning with Monday and ending Thursday of each week unless the Employer designates Friday as a voluntary makeup day because of inclement weather or holiday or conditions beyond the Employer's control mutually agreed by Union and Employer occurring during the designated work week. The four (4) ten (10) hour day's working week schedule requires mutual agreement between the Union and the Employer. All full time or part time labor performed during such regular hours and regular makeup day hours shall be recognized as regular working hours and paid for at the regular straight time hourly rate. Except as otherwise provided pursuant to **Article VI, Sections 1.,2.,3.** and **4.**, all work performed

39

outside of regular working hours and performed during the regular work week shall be as follows:

**ALTERNATE WORK WEEK OVERTIME:**

All hours worked in excess of the regular hours up to twelve (12) hours of the work day, Monday through Friday, all hours shall be paid at one and one-half (1 ½) times the straight time rate. Non-makeup Fridays, when working four (4) ten (10) hours days overtime, shall be paid at one and one-half (1 ½) times the straight time rate, up to twelve (12) hours. The first twelve (12) hours performed on Saturday shall be at one and one-half (1 ½) times the straight time rate. After twelve (12) hours Monday through Saturday it will be two (2) times the regular rate of pay. All hours between 12:01 a.m. Sunday to starting time six (6) o'clock a.m. Monday shall be at two (2) times the regular rate of pay for those working Sunday into Monday.

**SECTION 2.** Shift Work: All shifts are to be eight (8) hours, or ten (10) hours as defined above.

First Shift    -7:30 A.M. to 4:00 P.M. Unless mutually agreed upon.

Second Shift   -Starting time, after regular starting time but before 7:00 P.M. at additional ten per cent (10%) pay.

Third Shift    -Starting time 7:00 P.M. or after at additional twenty percent (20%) pay.

Shift work in Occupied Buildings shall be a minimum of two (2) consecutive day's duration.

40

All other shift work shall be a minimum of five (5) consecutive days duration or four (4) consecutive day's duration on alternate workweek schedule.

All work in excess of regular workday shall be premium pay as defined in **Article VI**, plus applicable shift premium.

**SECTION 3.** The regular starting and quitting times may be adjusted by mutual consent of the Employer and the Union.

**SECTION 4.** For Roofing Shops Only - Monday through Friday - on a voluntary basis. A workday of up to ten (10) hours a day between six (6:00) o'clock a.m. and six (6:00) o'clock p.m. shall consist of a regular work day (with pay at straight time), with time and one half (1½) to be paid after ten (10) hours per day and after forty (40) hours per workweek. There will be no intent to limit the hours worked on the fifth (5th) working day in a work week. Starting time no later than 7:30 A.M.

**ADDENDUM 8.**
**RIGHT TO REFUSE TO CROSS PICKET LINE**

An employee shall have the right to refuse to cross a picket line or refuse to work where a labor dispute exists, as provided in **Section 7.** and **Section 8.** of the Labor-Management Relations Act, as amended, if pertinent, and neither the Employer nor the Union shall cause any disciplinary action whatsoever against such employee for exercising or not exercising such right.

41

**EXHIBIT A**

**EXHIBIT A**

## ADDENDUM 9.
## WAGES AND FRINGES

(a)   The minimum rate of wages for journeymen sheet metal workers covered by this **Agreement** when employed in a shop or on a job within the jurisdiction of the Union to perform any work specified in **Article I** of this **Agreement** shall be as follows, except as specified in **Section 2.** of **Article VIII**:

| | |
|---|---|
| **Effective June 1, 2018** | **$29.36 per hour** |
| **Effective June 1, 2019** | **$ 0.05 allocated to JATC, $1.30 to be determined** |
| **Effective June 1, 2020** | **$ 0.05 allocated to JATC, $1.35 to be determined** |
| **Effective June 1, 2021** | **$ 0.05 allocated to JATC, $1.35 to be determined** |

Whenever a wage change becomes due during the life of this **Agreement**, the change may be allocated to any fund or funds in the **Agreement** in any amounts the employees so desire.

Notwithstanding the provisions of **Article VIII**, **Section 9.**, the Employer and Union agree that no more than three (3) days pay will be withheld.  However, employees when discharged, shall be paid in full.

It is clearly understood and agreed by and between these parties that in the event it should become necessary or desirable, and as the result of **Agreement** between these parties, to eliminate or discard any of the Welfare, Pension, Money Purchase Plan, Apprentice and/or SUB benefits as set forth in this **Agreement**, the payments made by the Employer or required to be made for payment of such Welfare, Pension, Money Purchase Plan, Apprentice and/or SUB benefits

42

shall, in such event, be added to and become a part of the wage rate of the employee.

If during the duration of the **Collective Bargaining Agreement** the membership of Local 24 Cincinnati Area votes to modify the existing Local, Jointly administered Trust Funds, the Contractors Association and Contractors agree to participate in the modifications of these Funds. It is understood that the establishment of any new Fringe Benefit Fund would require the collective bargaining process.

(b)   PENSION FUND: The Employer agrees to contribute, for each hour paid, to each employee subject to the terms of this **Agreement** during the term of the **Agreement** to the Sheet Metal National Pension Fund.  Effective June 1, 2007 Fund contributions are to be paid on hours worked.

**Effective June 1, 2018:**
Journeymen ................................$ 9.45 per hour

Apprentices shall have pension rates paid at their current period rate as follows:

**Effective June 1, 2018:**

| | | | |
|---|---|---|---|
| First Period........ | 45% | Sixth Period....... | 55% |
| Second Period......45% | | Seventh Period.... | 60% |
| Third Period........ | 47.5% | Eighth Period....... | 65% |
| Fourth Period....... | 50% | Ninth Period....... | 70% |
| Fifth Period...... | 52.5% | Tenth Period........ | 75% |

43

(Example - First period 45% shall also have 45% paid into National Pension Fund and he will receive a full pension credit toward vesting providing proper hours are worked.)

Classified Workers

**Effective June 1, 2018** ............................. $4.25 per hour

    **(c)  HEALTH & WELFARE FUND**:  The Employer agrees to contribute, for each hour paid, to each employee subject to the terms of this **Agreement** during the term of this Agreement to Indiana State Council of Roofers Health and Welfare Fund (Including $0.02 SMOHI).
Effective June 1, 2007 Fund Contributions are to be paid on hours worked.

**Effective June 1, 2018:**

| | |
|---|---|
| Journeymen............................................. | $7.35 per hour |
| Apprentices (1st,2nd, 3rd, 4th and 5th year) ............ | $7.35 per hour |
| Pre-apprentices........................................... | $6.07 per hour |
| Classified Workers ..................................... | $6.07 per hour |

    **(d)  APPRENTICESHIP TRAINING FUND**:  The Employer agrees to contribute, for each hour paid, to each employee (except pre-apprentices) subject to the terms of this **Agreement** during the term of the **Agreement** to SMART Local Union 24 Cincinnati Apprenticeship Training Fund.  Contributions are to be paid on hours paid through May 31, 2007.  Effective June 1, 2007 Fund contributions are to be paid on hours worked.

**Effective June 1, 2018**............................................$ 0.43 per hour

44

This fund shall be administered by a Board of Trustees consisting of an equal number of trustees half of whom shall be designated by the Employers signatory to this **Agreement,** and half of whom shall be designated by SMART Local Union 24. The Trustees shall administer the Fund in accordance with the terms and provisions of the **Agreement** and Declaration of Trust dated July 14, 1967, the terms and provisions of which are herein incorporated by reference.

    **(e) SUPPLEMENTAL UNEMPLOYMENT BENEFIT FUND (SUB)**: The Employer agrees to contribute, for each hour paid to each journeyman and apprentice subject to the terms of this **Agreement** during the term of the **Agreement** to the SUB Fund. Effective June 1, 2007 Fund contributions are to be paid on hours worked.

**Effective June 1, 1996:**

| | |
|---|---|
| Journeymen ......................................... | $ 0.70 per hour |
| Apprentices ........................................ | $ 0.35 per hour |
| Pre-apprentices .................................... | -0- |
| Classified Workers ................................. | -0- |

Note:  No SUB contribution shall be made on pre-apprentices or classified workers.

Effective February 14, 2000, Employer contributions shall continue to be made by a single check as before, which check shall be in the total amount required to be contributed for all fringe benefit fund contributions covered by this **Agreement**.

If, at the end of any month, an employee has Thirteen Thousand Five Hundred and 00/100 Dollars ($13,500.00) or more in his SUB Fund

45

**EXHIBIT A**

**EXHIBIT A**

individual account balance, Employer agrees that contributions that would otherwise be made to the SUB Fund shall be made instead to the SMART Local #24 Cincinnati Area Money Purchase Pension Plan, for those employees who have signed an authorization form to do so, which form has been approved by the Trustees of the SUB Fund.

To facilitate this procedure, Employer contributions that are to be allocated to the SUB Fund or to the Money Purchase Pension Plan shall be initially paid to the SMART Local #24 Cincinnati - Sheet Metal Contractors Association of Greater Cincinnati Receiving Trust, until transferred at the direction of the Administrator of the SUB Fund or Money Purchase Pension Plan.

It shall be the responsibility of the Administrator to determine from the records of the SUB Fund at the end of each month when Employer contributions are to be made and allocated to the Money Purchase Pension Plan instead of the SUB Fund.

    **(f) DUES CHECK-OFF/PAL:** The Employer agrees to withhold from each employee's applicable wages the following amounts for each hour paid, for whatever deduction that is properly adopted by the Union membership and certified to the Association in writing effective June 1, 1992.

Effective June 1, 2007 dues would be withheld on hours worked.

Dues Check-Off structure effective January 1, 2006

Journeymen ........................ $0.0275 x per hour of total package.

Plus per capita as required by the International Association of Sheet Metal, Air, Rail and Transportation Workers. Currently $0.17/hour

46

through June 30, 2019. This assessment is subject to future increases which will be determined by the International Association of Sheet Metal, Air, Rail and Transportation Workers.

A PAC [Political Action Committee] Contribution of $0.05 is included on the dues Check-Off. If employee does not sign authorization card, money will go to the Local Cincinnati J.A.T.C. It is clearly understood that the Dues Check-Off per payroll hour deduction is in addition to the member's dues and assessments.

The Employer must have an Employee's signed authorization card in the employer's file prior to making above dues deduction. (Note: Employer must furnish copy of authorization to Local 24 office.)

The Employer recognizes the right of the Union to unilaterally increase or decrease the percentage and/or amount of Dues Check-off contribution following a written notice to the Association from the Union.

    **(g) LOCAL/NATIONAL INDUSTRY FUND:** The Employer agrees to contribute for each hour paid to each employee, subject to the terms of this **Agreement** during the term of the **Agreement** to Cincinnati Area Sheet Metal Industry Fund. Effective June 1, 2007 Fund contributions are to be paid on hours worked.

**Effective June 1, 2014**......................…........ $ 0.24 per hour worked

This Local Industry Fund shall be solely administered by the Sheet Metal Contractors' Association of Greater Cincinnati, Inc. through the established Trust Agreement under standards that will effectively protect and promote the best interests of the Industry, including but not limited to, meeting the expenses of said Association, the expenses of conducting public relations as applied to the Sheet Metal Industry

47

and expenses connected with the Promotion of Stability of Relations between labor and management and such other purposes as are consistent with this program and no other.

The Union recognizes the right of the Association to unilaterally increase or decrease the percentage and/or amount of CAIF contribution following a written notice to the Union from the Association.

**(h)   CINCINNATI AREA RETIREMENT PLAN & TRUST:**  The Employer agrees to contribute, for each hour paid, to each employee subject to the terms of this **Agreement** to the SMART Local #24 Cincinnati Area Retirement Plan & Trust Fund.  Effective June 1, 2007 Fund contributions are to be paid on hours worked.

**Effective June 1, 2018:**

| | |
|---|---|
| Journeymen............................................. | $ 2.47 per hour |
| Apprentices (3rd, 4th and 5th Years)...... .............. | $ 2.47 per hour |
| Apprentices (1st and 2nd Years)........... .............. | $ 0.00 per hour |
| Pre-Apprentices................................. | -0- |
| Classified Workers............................. | $ 1.11 per hour |

**(i) SCHOLARSHIP FUND:**  The Employer agrees to contribute, for each hour paid, to each employee subject to the terms of this **Agreement** to the SMART Local #24 Cincinnati Area Scholarship Fund.

**Effective June 1, 2002:**

| | |
|---|---|
| Journeymen ................................................. | $0.01 per hour |
| Apprentices (3rd, 4th and 5th Years)................. | $0.01 per hour |

48

| | |
|---|---|
| Apprentices (1st and 2nd Years)........................ | $0.01 per hour |
| Pre-Apprentices............................................. | $0.01 per hour |
| Classified Workers......................................... | $0.01 per hour |

## ADDENDUM 10.
## FRINGE BENEFIT FUND PAYMENTS-WHEN DUE & DAMAGES

The payments to the funds, covered by the terms of this **Agreement,**

1. National Pension Fund
2. Local Health Plan and SMOHI
3. Apprenticeship Training Fund
4. Supplemental Unemployment Benefit Fund
5. Local 24 Dues Check-Off
6. Cincinnati Area Industry Fund
7. National Industry Fund of the United States
8. International Training Institute
9. NEMI
10. Money Purchase Plan
11. Scholarship Fund
12. Construction Fund

shall be made by each Contractor/Employer on or before the fifteenth (15th) day of each month covering the required payments for the preceding month.  Contributions not received by or postmarked later than the twentieth (20th) day of the month, to allow for weekends and legal banking holidays shall be assessed ten percent (10%) liquidated damages on the unpaid balance to the applicable fund.

49

**EXHIBIT A**

In addition to the assessment of liquidated damages, in the event that any action or proceedings against any participating Employer is necessary, to enforce the payment of any contributions to the Fringe Benefit Fund in the timely manner, as outlined above, the Trustees or the Union shall have the right to sue and recover on behalf of the Funds, the amount of the unpaid contributions, if any, plus the assessed liquidated damages, interest and other damages provided by ERISA, any and all court costs and reasonable attorney's fees.

## ADDENDUM 11.
## EMPLOYERS' RIGHT TO HIRE

It is a condition of this **Contract** that the Employer is at liberty to employ or reject any job applicant; however, the Employers do agree to hire only qualified journeymen or registered apprentices, classified or pre-apprentices. The Employer may recall any particular journeyman previously employed by Contractors that are parties to this **Agreement.**

The Employer further agrees to notify the Union of opportunities for new employment with such Employer and to give the Union an opportunity to refer qualified applicants for such employment.

## ADDENDUM 12.
## EMPLOYEE LAY OFF

When an employee is laid off, he shall receive evidence as to why his employment was terminated. Termination cards will be provided by the Union for the convenience of the Contractors. Approximately one (1) hour notice will be given to the Employee when getting laid off.

50

In the event of reduction of the work force on a project, non-area resident employees will be first to be laid off by the Employer, except a non-area Employer may retain two non-area men.

## ADDENDUM 13.
## UNEMPLOYMENT & WORKERS COMPENSATION

Employers employing members of International Association of Sheet Metal, Air, Rail, and Transportation Workers, Local Union No. 24, or members of a local Union affiliated with the International Association of Sheet Metal, Air, Rail, and Transportation Workers, shall pay unemployment and workers' compensation tax on said members, regardless of the number of employees employed by the Employer and shall furnish to the Local Union Office a certificate of compliance for workers' compensation.

## ADDENDUM 14.
## FOREMEN

Working foremen and general foremen (also working) from Local 24 shall be required as per the following table:

| Men Employed | Foreman | Foreman "B" | General Foreman |
|---|---|---|---|
| 1- 2 | 0 | 0 | 0 |
| 3-10 | 1 | 0 | 0 |
| 11-20 | 1 | 1 | 0 |
| 21-30 | 1 | 1 | 1 |

Each additional ten (10) men – one (1) additional Foreman

51

EXHIBIT A

**EXHIBIT A**

When the job requires (2) Foremen, the first foreman on site will move to "B" status at $1.25 and the additional foreman on site will be at $1.00.

Effective June 1, 2018 - Foreman Rates

Foreman...........................................$1.00 per hour above
Journeyman Scale
Foreman (B).....................................$1.25 per hour above
Journeyman Scale
General Foreman................................$1.75 per hour above
Journeyman Scale

The appointment of Foremen is the responsibility of the Employer.

## ADDENDUM 15.
## PAYROLL CHECK STUBS

All payroll check stubs shall show the total hours worked.

## ADDENDUM 16.
## STATE TAXES

All state income taxes shall be paid in the state where the employee resides.

## ADDENDUM 17.
## TOOLS

There shall be no restrictions on tools provided they are approved by the Industrial Commission of Ohio.

52

## ADDENDUM 18.
## NON-DISCRIMINATION

The Employer and the Union agree that they will not discriminate against any employee or applicant for employment nor in the referral of applicants for employment because of race, color, creed, national origin or age.

## ADDENDUM 19.
## UNION CONTRACTOR

Before the Union will enter into an **Agreement** with any Employer, the Employer shall:

a.    Notify the Union of their intention to open and operate a Union Sheet Metal Shop.
b.    Have an established permanent business address.
c.    Have sufficient tools and equipment to fabricate and erect sheet metal work.

## ADDENDUM 20.
## PARKING

Where no parking is available on job sites and when paid parking only is available, the maximum rates will be paid. (Receipt must be presented by the employee to the Employer):

Effective June 1, 2018.......................$10.00 per day maximum

## ADDENDUM 21.
## NOTIFICATIONS

The Union shall notify the Sheet Metal Contractors' Association of Greater Cincinnati Inc. of all signatory contractors to the **Collective**

53

**EXHIBIT A**

**Bargaining Agreement** and the Contractors' Association will notify the Union of all members of the Contractors' Association.

Contractors and Union agree to notify State and Federal Authorities of Wage Rate, Classifications and Ratios of apprentices to Journeymen Sheet Metal Workers.

### ADDENDUM 22.
### UNION ACCESS TO WORK SITES

(a)   The Employer shall not prohibit representatives of International Association of Sheet Metal, Air, Rail, and Transportation Workers, Local Union No. 24 from access to any shop or job site at any reasonable time provided that the representative first notifies the management of his presence.

### ADDENDUM 23.
### OWNER'S SON OR DAUGHTER

The son/daughter of an owner or majority stockholder of a Company may work in the shop and the shop only. He/she may work during the established day shift hours Monday through Friday.   The Company must notify the Union of the owner status and the name of the working son/daughter.  The son/daughter shall not be permitted to work without a journeyman present.

### ADDENDUM 24.
### RESOLUTION 78

Resolution 78 will be made available as necessary at the discretion of the Local Union.

54

a)   One (1) journeyman to three (3) others for the Architectural Industry on private work. ("Others" is defined as either Classified, Apprentices or Pre-Apprentices.)  This resolution will be utilized to acquire additional work and not circumventing the existing work force.

### ADDENDUM 25.
### TABLE OF WAGES AND FRINGE BENEFITS

a)        JOURNEYMEN: Effective Date 6-01-2018

| | |
|---|---|
| Base Wage   .................................. | ..$ 29.36 |
| Local H & W and SMOHI   .......................... | $  7.37 |
| Supplemental Unemployment (SUB)   .............. | $  0.70 |
| National Pension Fund (NPF) ..................... | $  9.45 |
| International Training, NEMI (ITI) & Scholarship. | .$ 0.16 |
| National Industry Fund (IFUS)........................... | ..$ 0.12 |
| Local Industry Fund (CAIF) ........................... | $  0.12 |
| Local Training Fund (JATC) ............................ | $  0.43 |
| Money Purchase Plan (MPP) ............................ | $  2.47 |
| **Dues Checkoff  .0275 x total package per hour | |
| *TOTALS...................................... | $ 50.18 |

| | |
|---|---|
| Effective June 1, 2019 | $ 0.05 allocated to JATC, $1.30 to be determined |
| Effective June 1, 2020 | $ 0.05 allocated to JATC, $1.35 to be determined |
| Effective June 1, 2021 | $ 0.05 allocated to JATC, $1.35 to be determined |

Base Wage and Fringe Fund Contributions subject to change.

55

**EXHIBIT A**

\*\*Dues checkoff is deducted from base wage. Effective June 1, 2007 dues will be deducted on hours worked.

Effective June 1, 2007 all Fringe Benefit Fund Contributions payments would be based on HOURS WORKED.

**b)     APPRENTICES:** **Effective June 1, 2019, June 1, 2020 and June 1, 2021:** Apprentices to receive a wage increase based on a percentage of the journeyman wage increase corresponding to the apprentice's period of training in accordance with **ARTICLE XI, SECTION 6.**

**c)     EFFECTIVE June 1, 2018**

|  | PRE-APPRENTICES | CLASSIFIED WORKER |
|---|---|---|
| Base Wage | $11.01 | $13.21 |
| H & W & SMOHI | $6.09 | $6.09 |
| Nat. Pension & COLA | -0- | $4.25 |
| ITI, NEMI & Scholarship | $0.16 | $0.16 |
| IFUS | $0.02 | $0.12 |
| CAIF | $0.12 | $0.12 |
| JATC | -0- | $0.43 |
| Money Purchase Plan | -0- | $1.11 |
| TOTALS | $17.40 | $25.49 |

56

**Effective June 1, 2018, June 1, 2019, June 1, 2020 and June 1, 2021:** Pre-Apprentices to receive a base wage increase equal to thirty-seven and one-half percent (37.5%) of the journeyman base wage rate.

**Effective June 1, 2018, June 1, 2019, June 1, 2020 and June 1, 2021:** Classified workers to receive a base wage increase equal to forty-five percent (45%) of the journeyman base wage rate.

**ADDENDUM 26.**
**PRE-APPRENTICES**

The Union and the Employer hereby agree that effective June 1, 1989 all references to pre-apprentices are removed from the main body of this **Agreement** and are herein made an addendum to the **Agreement.** Further, it is agreed that if either State or Federal regulations are changed to recognize helpers or pre-apprentices on prevailing wage projects, the language is to be re-inserted in the main body of the **Agreement.**

Although language was removed, the main body of this **Agreement** applies to the conditions of employment of pre-apprentices. In addition to the main body of the **Agreement,** the following shall apply to pre-apprentices:

**1a.** It is hereby agreed that the Employer may apply to the Joint Apprenticeship and Training Committee and the Joint Apprenticeship and Training Committee shall grant apprentices in accordance with the following table:

**1b.** It is hereby agreed that the Employer may apply to the Union and the Union shall grant pre-apprentices from a pool, in accordance with the following table:

57

**EXHIBIT A**

Number of:

| Employees | Journeymen | Apprentices | Pre-Apprentices |
|---|---|---|---|
| 1 | 1 | 0 | 0 |
| 2 | 1 | 1 | 0 |
| 3 | 2 | 1 | 0 |
| 4 | 2 | 1 | 1 |
| 5 | 3 | 1 | 1 |
| 6 | 3 | 2 | 1 |
| 7 | 4 | 2 | 1 |
| 8 | 4 | 2 | 2 |
| 9 | 5 | 2 | 2 |
| 10 | 5 | 3 | 2 |
| 11 | 6 | 3 | 2 |
| 12 | 7 | 3 | 2 |
| 13 | 7 | 3 | 3 |

Schedule repeats above 13 employees, Example: At 15 employees add lines for 13 & 2. At 42, add 3 times line for 13 & line for 3, etc. (Based on 2-1-1, 2-1-1, 3-1-1 revolving ratio).

**2.** If no apprentices are available the Employer may employ pre-apprentices instead, provided however an Employer will not be entitled to a new apprentice if the Employer has an apprentice on layoff for lack of work.

**3.** In the event the Employer is entitled to employ a pre-apprentice and the Union fails to comply with the Employer's written request to furnish a pre-apprentice within forty eight (48) hours, the Employer may hire such employees and refer them to the Union for enrollment.

58

**4.** Pre-apprentices shall be enrolled as applicants for future openings in the apprenticeship program. The Joint Apprenticeship and Training Committee shall evaluate the qualifications of pre-apprentices for such openings during the first (1st) year of employment. No pre-apprentice shall be retained beyond one (1) year unless he has been found to be qualified as an applicant.

Individuals who meet the requirements for apprenticeship may remain as pre-apprentices for two (2) years. If they have not been indentured during the two (2) year period, they automatically convert to Classified Worker status or are ineligible to continue employment as a pre-apprentice. The two (2) year period for existing Pre-apprentices begins on June 1, 1992.

**5.** The base scale for pre-apprentices shall be as referenced and Health & Welfare after four (4) months and four hundred (400) hours. See **Addendum 9** and **Addendum 25**.

**6.** Apprentices and Pre-apprentices shall receive safety information orientation when they start working.

**ADDENDUM 27.**
**CLASSIFIED WORKER**

**SECTION 1.** Classified workers may be employed in the following ratio:

**(a)**     One (1) classified worker for any Employer who employs one (1) journeyman;

**(b)**     Two (2) classified workers for any Employer who employs at least five (5) journeymen;

59

**EXHIBIT A**

(c)      Thereafter, the ratio will be one (1) classified worker for each additional five (5) journeymen employed.

Classified workers may perform any work covered by **Article I** of which they are capable and will work under the general direction of a journeyman.  The wage rate for classified workers will not be less than forty-five percent (45%) of the journeyman wage rate. They shall be covered by the Health and Welfare plan, at a contribution rate not to exceed that of a pre-apprentice.  Pension contributions shall be the same percentage as their wage rate.  Except as provided in **Sections 2.** and **6.** of this **Article**, the Employer agrees that Classified sheet metal workers hired outside of the territorial jurisdiction of this **Agreement** shall receive the wage scale and working conditions of the local **Agreement** covering the territory in which such work is performed or supervised.

Classified sheet metal workers who report for work by direction of the Employer and are not placed to work, shall be entitled to two (2) hours' pay at the established rate.  This provision, however, shall not apply under conditions over which the Employer has no control.

Classified sheet metal workers covered by this **Agreement** shall not be permitted or required as a condition of employment, to furnish the use of automobile or other conveyance to transport men, tools, equipment or materials from shop to job, from job to job, or from job to shop; facilities for such transportation to be provided by the Employer. This provision shall not restrict the use of an automobile or other conveyance to transport its owner and personal tools from home to shop or job at starting time or from shop or job to home at quitting time.

60

In the event the Employer is entitled to employ a Classified worker and the Union fails to comply with the Employer's written request to furnish a Classified worker within forty-eight (48) hours, the Employer may directly hire such employees, and refer them to the Union.

## ADDENDUM 28.
## SAFETY

(a)      It is agreed that employees who, while on the job, suffer injuries which require emergency hospital or doctors care and which render the employee incapable of continuing work for that day, shall be paid no less than four (4) hours and no more than eight (8) hours pay depending upon when the disabling injury was incurred; if before twelve o'clock (12:00) noon the minimum shall be paid, if after twelve o'clock (12:00) noon the maximum shall be paid.

(b)      In accordance with the provisions of the Williams-Steiger Occupational Safety and Health Act of 1970 (29-U.S.C65), each Employer shall:

(1)      Furnish to each employee, employment that is free from hazards which are likely to cause death or serious physical harm to employees; and

(2)      Comply with Occupational Safety and Health Standards promulgated under this act.

(c)      Each employee shall comply with Occupational Safety and Health Standards and all rules, regulations and orders issued pursuant to this Act, which are applicable to employee's own actions and conduct.

61

EXHIBIT A

**(d)** Drug Testing-Safety Training-Protective Equipment concept agreed with language, procedure, legal aspects and implementation to be developed.

## ADDENDUM 29.
## MECHANICAL SERVICE, MAINTENANCE & INSTALLATION

Mechanical Service, Maintenance and Installation Work is all work relating to evacuation, charging, start-up, inspection, operation, maintenance and service calls necessary to keep a mechanical electrical system and controls of a refrigeration, air conditioning, heating and/or ventilation or any other newly installed, remodeled, revamped or redesigned mechanical system in operational order. Controls include, but not limited to, electrical, pneumatic and D.D.C.

Service, Maintenance and Installation work shall include, but not be limited to all maintaining, cleaning, adjusting, repairing, overhauling, starting, operating and balancing of any system or component part thereof, regardless of size or location, including all other service, maintenance and installation work assigned to the employer by the owner.

## ADDENDUM 30.
## DRUG TESTING PROGRAM

During the term of this **Agreement** a voluntary employee drug-testing program will be established. The program will be funded by a contribution from the Cincinnati Area Industry Fund.

62

## ADDENDUM 31.
## SUBSTANCE TESTING POLICY

**PREFACE:**
Alcohol/substance abuse is recognized as a treatable illness. The desired result is rehabilitation. The preferred procedure is through referral to a locally operated industry Employee Assistance Program (EAP). The EAP should provide employee and supervisor educational programming, individual and family counseling; as well as treatment referral services. Workplace problems arising out of an employee's relationship with substance abuse may warrant a variety of management responses including referral for treatment, testing, disciplinary action, or even termination of employment. This statement addresses the testing issue, only.

Except for work opportunity mandated testing, no substance testing program should be implemented unless there is an Employee Assistance Program (EAP) implemented to provide treatment for any Bargaining Unit employees.

**GENERAL PROVISIONS:**
SMART/SMACNA Joint Alcohol and Substance Abuse Committee regard blood/urine testing as problematic, and do not advocate reliance on such procedures to identify individuals with an alcohol/chemical dependency. However, certain circumstances support substance testing as a warranted vehicle for determining possible impairment and/or a propensity for substance abuse.

These include:

1. Pre-employment Screening
2. Probable Cause
3. Work Opportunity Mandated Testing

63

**EXHIBIT A**

Whenever testing is utilized it shall be accomplished through dignified and humane procedures insuring complete confidentiality of specimen custody and test results. The individual being tested and the EAP shall have access to the test results.

For all testing, tests shall be conducted by qualified and accredited laboratories which comply with the Scientific and Technical Guidelines for Federal Drug Testing Programs and the Standards for Certification of Laboratories engaged in Urine Drug Testing for Federal Agencies issued by the Alcohol, Drug Abuse and Mental Health Administration of the United States Department of Health and Human Services, or standards established by the applicable State having jurisdiction, whichever are the more stringent; maintain high quality control procedures; and follow manufacturer's protocols. All initial positive tests shall be subject to a confirmation assay; such as a Gas Chromatography with Mass Spectrometry (GC/MS). The levels of detected substances for determining positive results shall be those established as legitimate by the Alcohol, Drug Abuse and Mental Health Administration of the United States Department of Health and Human Services, or those established by the State having jurisdiction; whichever are the more stringent.

**PRE-EMPLOYMENT SCREENING:**
The screening of new prospective employees may be implemented to ascertain whether an applicant is capable of safely performing the duties of and meeting the pre-requisites for the employment offered.

Therefore, pre-employment drug/alcohol testing of regular members or applicants not currently members of the Union for sheet metal positions covered by the terms of a Collective Bargaining Agreement, may screen out those with a substance abuse problem.

64

**PROBABLE CAUSE:**
Substance testing may be implemented when there is "probable cause". Probable Cause shall be defined as those circumstances based on objective evidence about the employee's conduct in the workplace that would cause a reasonable person to believe that the employee is demonstrating signs of impairment due to alcohol or drugs. Examples of objective evidence include when an employee shows signs of impairment such as difficulty in maintaining balance, slurred speech, erratic or atypical behavior, or otherwise appears unable to perform his/her job in a safe manner.

**WORK OPPORTUNITY MANDATED TESTING:**
In all situations where an Employer is required to agree to a testing program in order to qualify as a bidder on the project, testing may be required, but only if performed in accordance with these standards and applied uniformly to all personnel having access to the workplace. If testing is required on a project, the Employer may require any or all employees to submit to testing so as to assure adequate flexibility in manning the project, even if such employees are not to be immediately assigned to that project.

There shall be no discrimination against any employee who refuses a job assignment to a project that has drug testing.

**DRUG-FREE WORKPLACE PROGRAM:**
Employers may engage in testing as necessary for participation in the Ohio Bureau of Workers' Compensation's Drug-Free Workplace Program, notwithstanding anything within this policy. Additionally, Employers may promulgate, implement and administer employee assistance programs and any additional policies and procedures designed to meet the requirements of such Drug-Free Workplace Program in compliance with the Governors Executive Order 2002-13T.

65

**EXHIBIT A**

**PROVISO:**

Testing in any of the above situations shall be conducted and governed in accordance with the general provisions of this Policy Statement.

### ADDENDUM 32.
### MONEY PURCHASE PLAN

The Local 24 Cincinnati area membership has voted to establish a local, jointly administered pension fund to be named "Sheet Metal Workers Local 24 Cincinnati Area Retirement Plan & Trust Money Purchase Pension Plan", effective June 1, 1996.

### SHEET METAL NATIONAL PENSION FUND

"Standard Form of Participation Agreement" (Plan A)

The undersigned Employer and Union represent that the only agreement between said parties regarding pensions or retirements for employees covered by the Collective Bargaining Agreement between the parties is as follows:

**1.**       **(a)**  Commencing with June 1, 1989, and for the duration of this **Agreement** and any renewals or extensions thereof, the Employer will contribute to the Pension Funds as per current **Agreement** an hour (or any increased amount included in subsequent agreements) for each hour or part of an hour for which an Employee receives the basic hourly wage rate. Contributions for those hours paid at time and a half (1 ½) or double (2) time rates will be made to the Pension Fund at one and one half (1 ½) or two (2) times the hourly contribution rate, respectively. Contributions are required for vacation time, sickness absences and other hours for which payment

66

is made to the employee in accordance with the applicable **Collective Bargaining Agreement** between the Employer and the Union. Effective June 1, 2007 Fund contributions are to be paid on hours worked.

**(b)**  Contributions shall be paid on behalf of any employee, starting with the employee's first day of employment in a job classification covered by the **Collective Bargaining Agreement.**

**(c)**  The payments to the Pension Fund required above shall be made to the "Sheet Metal National Pension Fund" which was established under an Agreement and Declaration of Trust, a copy of which has been signed by the Employer in the place provided at the end of such **Agreement.**

**2.**  It is agreed that all contributions shall be made at such time and in such manner as the Trustees require and the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Pension Fund.

**3.**  If an Employer fails to make contributions to the Pension Fund within fifteen (15) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this **Article**, any provision of the **Collective Bargaining Agreement** to the contrary notwithstanding and the Employer shall be liable for all costs for collecting the payments due, together with attorney's fees and such penalties which may be assessed by the Trustees. The Employer's liability for payment hereunder shall not be subject to the Grievance Procedure or arbitration provided hereunder the **Collective Bargaining Agreement.**

67

4. It is agreed that the Pension Plan adopted by the Trustees of said Pension Fund shall, at all times, conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the Pension Fund as a deduction for income tax purposes.

5. The parties agree that this Participation Agreement shall be considered a part of the Collective Bargaining between the undersigned parties.

6. The expiration date of the present **Collective Bargaining Agreement** between the undersigned parties is May 31, 2022. Any copies of renewal or extension agreements will be furnished promptly to the Pension Fund office and, if not consistent with the Participation Agreement, can be used by the Trustees as the basis for termination of participation of the Employer.

7. The Employer and the Union recognize that during the term of this **Agreement**, the Sheet Metal National Pension Fund (NPF) will notify the parties of the Funds' status under the Pension Protection Act of 2006. It is anticipated that the Fund will be in critical status, consequently, the Employer and the Union further recognize that a surcharge may be imposed upon contributions to the Fund and the Fund may adopt a rehabilitation plan, incorporating alternative schedules of benefits and contributions, during the term of this **Agreement**.

The parties agree that schedule described above will be deemed to be adopted automatically if, in accordance with the **Agreement**, the Union allocates or reallocates a portion of the wage and fringe benefit package, or where the **Agreement** provides for an automatic allocation or reallocation of the wage and fringe benefit package, that

is sufficient to cover fully any increases in contribution rates to the NPF under that schedule.

It is undesirable to pay a surcharge upon pension contributions, with no resulting improvement in pension benefits. Accordingly, in the absence of a reallocation as provided above, at such time as the Trustees of the Fund furnish the Employer and the Union with alternative schedules as provided above, either party may re-open this **Agreement** upon thirty (30) days written notice to the other, for the purpose or reaching agreement upon the adoption of one of those schedules. During the negotiations, the parties shall give due recognition to the desirability of maintaining pension benefits in light of economic conditions in the local area.

The parties agree further that the schedule described above will become part of this **Agreement** and will be incorporated by reference herein, on the date the schedule is adopted or is deemed to have been adopted automatically in accordance with the terms above. The parties will not take any action or actions inconsistent with the NPF's Rehabilitation Plan or Funding Improvement plan of which the schedule is a part, as modified or amended from time to time.

### ADDENDUM 33.
### JOURNEYMAN SAFETY TRAINING

The JATC will conduct OSHA ten (30) hour training classes. A stipend will be paid by the JATC to those who take the training.

EXHIBIT A

EXHIBIT A

## ADDENDUM 34.
## MOBILITY OF MANPOWER WITHIN LOCAL 24

The following procedure shall be utilized regarding the mobility of manpower from one (1) Collective Bargaining area to another area within the territorial jurisdiction of Local 24.

(a)  Butler and Warren Counties:  There shall be total mobility of manpower in Butler and Warren Counties in Ohio.  The Contractor may send from the Cincinnati jurisdiction the number of sheet metal workers he determines are needed for the project.

(b)  For the balance of Cincinnati & Dayton territory, outside of Butler and Warren Counties, the Contractor may send the first four (4) sheet metal workers (journeymen, apprentice or pre-apprentice) from the Cincinnati jurisdiction.  Thereafter, the Contractor shall request the fifth (5th) person (journeyman) from the out of work list for the Collective Bargaining area the project is located in.  He then may bring in the sixth (6th) person (journeyman) and continue alternating until twelve (12) people are employed.  Thereafter, all journeymen shall come from the out of work list for the Collective Bargaining area the project is located in.

Lay-off shall be in reverse order without regard to hire date:
Example: 4 – (1) – 1 – (1) -  1 – (1) – 1 – (1) – 1 = 12 TOTAL
Contractor Area = 8 Members Total Project Area = 4 Members Total = 12 TOTAL

(c)  Columbus:  The Contractor may send no more than four (4) sheet metal workers from the Cincinnati area jurisdiction.

70

All additional sheet metal workers shall come from the Columbus jurisdiction.

(d)  Parties will work collectively between the Employers, Union and International to merge Health & Welfare and JATC Training Funds.  When they are merged there will be full mobility within Cincinnati and Dayton areas of Local 24.

## ADDENDUM 35.
## SOLICITATION

The Journeyperson may solicit his own job, providing when he secures such job, he obtains a Referral Slip from the Union Hall and the Contractor shall provide to the union a completed Contractors Solicitation Form for employee.  No member shall be denied a Referral Slip.

## ADDENDUM 36.
## BONDING REQUIREMENTS

Each contractor should be required to purchase a Surety Bond to insure payment of wages, deductions and contributions based on the average number of employees from the previous year.

| EMPLOYEES | BOND AMOUNT |
|-----------|-------------|
| 1-5 | $10,000.00 |
| 6-12 | $30,000.00 |
| 13-25 | $60,000.00 |
| 26 and over | $90,000.00 |

71

EXHIBIT A

### ADDENDUM 34.
### MOBILITY OF MANPOWER WITHIN LOCAL 24

The following procedure shall be utilized regarding the mobility of manpower from one (1) Collective Bargaining area to another area within the territorial jurisdiction of Local 24.

(a)  Butler and Warren Counties:   There shall be total mobility of manpower in Butler and Warren Counties in Ohio.  The Contractor may send from the Cincinnati jurisdiction the number of sheet metal workers he determines are needed for the project.

(b)  For the balance of Cincinnati & Dayton territory, outside of Butler and Warren Counties, the Contractor may send the first four (4) sheet metal workers (journeymen, apprentice or pre-apprentice) from the Cincinnati jurisdiction.  Thereafter, the Contractor shall request the fifth (5th) person (journeyman) from the out of work list for the Collective Bargaining area the project is located in.  He then may bring in the sixth (6th) person (journeyman) and continue alternating until twelve (12) people are employed.  Thereafter, all journeymen shall come from the out of work list for the Collective Bargaining area the project is located in.

Lay-off shall be in reverse order without regard to hire date:
Example: 4 – (1) – 1 – (1) -   1 – (1) – 1 – (1) – 1 = 12 TOTAL
Contractor Area = 8 Members  Total Project Area = 4 Members  Total = 12 TOTAL

(c)  Columbus:  The Contractor may send no more than four (4) sheet metal workers from the Cincinnati area jurisdiction.

70

All additional sheet metal workers shall come from the Columbus jurisdiction.

(d)  Parties will work collectively between the Employers, Union and International to merge Health & Welfare and JATC Training Funds.  When they are merged there will be full mobility within Cincinnati and Dayton areas of Local 24.

### ADDENDUM 35.
### SOLICITATION

The Journeyperson may solicit his own job, providing when he secures such job, he obtains a Referral Slip from the Union Hall and the Contractor shall provide to the union a completed Contractors Solicitation Form for employee.  No member shall be denied a Referral Slip.

### ADDENDUM 36.
### BONDING REQUIREMENTS

Each contractor should be required to purchase a Surety Bond to insure payment of wages, deductions and contributions based on the average number of employees from the previous year.

| EMPLOYEES | BOND AMOUNT |
|---|---|
| 1-5 | $10,000.00 |
| 6-12 | $30,000.00 |
| 13-25 | $60,000.00 |
| 26 and over | $90,000.00 |

71

**EXHIBIT A**

FOR THE INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL, AND TRANSPORTATION WORKERS LOCAL UNION NO. 24 (SMART) - CINCINNATI AREA

By: _Rodney French_  Title _Business Manager_  Date _2/11/19_

Rodney French          Title                    Date

FOR THE SHEET METAL CONTRACTORS ASSOCIATION OF GREATER CINCINNATI

By: _____  Title _PRES._  Date _2/11/19_

Authorized Officer     Title                    Date

FOR THE INDIVIDUAL EMPLOYER

_____

Company Name

By: _____  _____  _____

Authorized Officer     Title          Date

72

**WORKING RULES LOCAL UNION NO. 24 CINCINNATI**

I.       Each unemployed member shall fill out a card and mark only the work he/she can perform.

II.      In the event a member obtains a job with a local Contractor while he has an unemployed card on file, he must notify the Union Office immediately where he/she has obtained his job.

III.     No member shall be allowed to solicit a job from an out-of-town Contractor, nor shall an out-of-town Contractor be permitted to seek a member for his employ except the one (1) Local 24 member for supervision upon Company request through the Local Union Office.

IV.      Whenever a member is laid off by an out-of-town Contractor, he can be recalled by the same Contractor through the Local Union Office for the same job, provided it is within thirty (30) days (Saturdays and Sundays included). However, if the member is not available, then the member who was laid off first on that job (reverse sequence) can be assigned by the Local Union Office provided it is within the thirty (30) day limitation.

V.       The unemployment list will be operated in numerical order in accordance with the requirements of the jobs available.

VI.      A member must work thirty (30) days before his card is removed from the unemployment list.

VII.     Any member who refuses two (2) jobs that fit his recorded capabilities, his card shall be placed at the rear of the list.

73

**VIII.**     Business Agents have authority to refer members to jobs when circumstances are such that the Business Manager is not available.

EXHIBIT A

74