UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| **THE GEILER COMPANY,** | * | Civil No. 4:22-mc-00001-TWP-DML |
| *Plaintiff,* | * | Judge Tanya Walton Pratt |
| v. | * | Magistrate Judge Debra McVicker Lynch |
| **INTERNATIONAL, ASSOCIATION OF SHEET METAL, AIR, RAIL, AND TRANSPORTATION WORKERS, LOCAL UNION NO. 24,** | * * * | **DEFENDANT'S RENEWED MOTION TO CONFIRM ARBITRATION AWARD AND RESPONSE IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO VACATE ARBITRATION AWARD** |
| *Defendant.* | * | |

**I.     Introduction.**

Defendant International Association of Sheet Metal, Air, Rail, and Transportation Workers, Local Union No. 24 ("Local 24" or "Union") requests the Court to deny The Geiler Company's ("Geiler'") Renewed Motion to Vacate Arbitration Award ("Renewed Motion to Vacate") and Memorandum in Support. (Docs. 33 and 34.)

Because the Sheet Metal Contractors Association of Greater Cincinnati Local Joint Adjustment Board's ("Board") October 6, 2021 Arbitration Award ("Arbitration Award") (Doc. 34-5), as clarified on January 23, 2024 (Doc. 34-8 at PageID# 357-359), draws its essence from the Parties' Collective Bargaining Agreement ("CBA") (Doc. 34-1), the Renewed Motion to Vacate should be denied and Local 24's Renewed Motion to Confirm should be granted.

**II.     The Arbitration Award (and Clarification) must be confirmed.**

An application to confirm an arbitration award is a summary proceeding and does not involve a detailed reexamination of the facts. See *Masco Corp. v. Prostyakov*, 2012 WL 12871438, at *1 (S.D. Ind. Mar. 30, 2012), aff'd, 558 F. App'x 685 (7th Cir. 2014); *Garmin Wurzburg GmbH v. Auto. Imagineering & Mfg., LLC*, 2015 WL 4491231, at *3 (N.D. Ind. July 23, 2015). The court treats the application as any other motion, but the other procedures of the Federal Rules of Civil Procedure are inapplicable. *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1258 (7th Cir. 1992).

The court must confirm the award unless it finds grounds to vacate, modify, or correct the award. 9 U.S.C. § 9; see *Int'l Union of Operating Eng'rs, Local No. 841 v. Murphy Co.*, 82 F.3d 185, 188 (7th Cir. 1996). The role of federal courts in reviewing the decision of an arbitrator is extremely limited, to the point that the merits of the decision cannot even be reviewed. *See Prate Installations, Inc. v. Chi. Reg'l Council of Carpenters*, 607 F.3d 467, 470 (7th Cir. 2010). The court may not vacate or refuse to enforce an award, even if the court believes the award is clearly or grossly erroneous, as long as the arbitrator arguably: 1) construed the contract, and 2) acted within the scope of the arbitrator's authority. See *Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1025 (7th Cir. 2013); *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 692 (7th Cir. 2004); *Butler Mfg. Co. v. United Steelworkers of Am., AFL-CIO-CLC*, 336 F.3d 629, 632 (7th Cir. 2003).

Here, the Board construed the parties' CBA and acted within their authority. As such, the Court should confirm the Arbitration Award/Clarification.

**III.    Geiler's arguments to vacate are unfounded.**

Plaintiff seeks to vacate the Arbitration Award/Clarification, claiming that the Board exceeded its authority under the CBA and that the Arbitration Award/Clarification is in

manifest disregard for the law. For the reasons outlined below, Plaintiff's arguments are unfounded.

### A. *Timeliness issues are reserved for an Arbitrator.*

Geiler claims that Local 24's grievance and appeal to the Board were untimely. (Doc. 34 at PageID# 226-228.) There is an abundance of cases that reserve questions of timeliness to an arbitrator. (See *John Wiley & Sons v. Livingston*, 376 U.S. 543, 558 (1964).)[1] Notably, Geiler does not argue that a violation of the subcontracting clause—as alleged in the grievance—is not substantively arbitrable. Geiler attempts to avoid the wealth of case law expressly reserving procedural arbitrability determinations (i.e., whether conditions precedent were met) to an arbitrator, *e.g., John Wiley & Sons v. Livingston*, 376 U.S. 543, 558 (1964) and frames the issue as one of substantive arbitrability (i.e., whether a party can be required to arbitrate the subject matter of a dispute).[2] However, the Seventh Circuit has found – over and over again – that timeliness issues are reserved to an arbitrator. *Corman Derailment Servs. v. Operating Engineers Local 150*, 335 F.3d 643, 650-51 (7th Cir. 2003); *Teamsters Local 744 v. Metro. Dist. Inc.*, 763 F.2d 300, 303 (7th Cir. 1985). Plaintiff offers no compelling reason to deviate from this clear precedent.

---

[1] See also *Johnson v. Western & Southern Life Ins. Co.*, 598 Fed. Appx. 454, 456 (7th Cir. Ind. April 14, 2015) ("The Supreme Court has applied this rule consistently, making clear in more recent decisions that federal courts must presume that the parties intended arbitrators to decide whether a party has complied with time limits and other arbitrational prerequisites.") (Citing *BG Group plc v. Republic of Arg.*, 572 U.S. 25 (2014); *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 85-86 (2002).)

[2] Geiler cites *United States Soccer Federation, Inc. v. United States National Soccer Team Players Ass'n*, 838 F.3d 826 (2016), but that case does not discuss timeliness or arbitrability at all. This reference to an unpublished, out-of-circuit district court opinion that contradicts binding Seventh Circuit case law should be ignored. Indeed, a district court in the Seventh Circuit found it distinguishable. *Int'l Union of Operating Eng'rs, Local 139 v. Wingra Stone Co.*, 211 F. Supp. 3d 1187, 1193-94 (W.D. Wis. 2016).

For the sake of argument, Local 24's filing of the underling grievance and its appeal to the Board were in fact timely. These timeliness issues were covered in detail in the Union's arbitration hearing Position Statement. (Doc. 34-3 at PageID# 289-294, Union's Position Statement.) And, in the Arbitration Award, the Board "determined that all procedural requirements had been meet, that the grievance was timely, and was properly before the Board for consideration." (Doc. 34-5 at PageID# 319, Arbitration Award.) Clearly, the Board expressly ruled in favor of Local 24 on Geiler's alleged procedural arguments. As such, the Court should not disturb the Board's findings on the timeliness issues.

**B.     *The Board did not exceed its authority under the CBA with its issuance of a "fine."***

Geiler argues that "the CBA does not authorize the issuance of a fine." (Doc. 34 at PageID# 229-233, Mem. Supp., pp. 11-15.) However, Article X, Section 5 of the CBA provides as follows:

> A Local Joint Adjustment Board, Panel and the National Joint Adjustment Board are empowered to render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensation.

(Doc. 34-1 at PageID# 253, CBA, Art. X, Sec. 5.) This language empowers the Board with the ability to render decisions and grant relief as "necessary and proper." (*Id.*) There is nothing limiting about this language, at all.

The Board's choice of wording should not make its Arbitration Award unenforceable. Indeed, the amount awarded by the Board is fully supported by the evidence. Based upon the evidence of estimated hours worked and the rates established by the CBA, Local 24 demanded damages in the amount of $494,125.00. (Doc. 34-3 at PageID# 310-315, Union's Position Statement.) The Board found Geiler violated Article II, Section 1 of the CBA and

4

owed a monetary "fine" to Local 24. (Doc. 34-5 at PageID# 319.) It seems evident the Board awarded approximately half of the damages requested by Local 24 and simply identified it as a "fine" payable to Local 24. To the extent the use of the word "fine" needs clarification, the Court could require a limited remand to the Board, *Ethyl Corp. v. United Steelworkers of America, etc.*, 768 F.2d 180, 187 (7th Cir. 1985), instead of vacating the award in its entirety, which would result in a windfall to Geiler.

Plaintiff also takes issue with the required actions to avoid paying the balance of the monetary award. (Doc. 34 at PageID# 230-233, Mem. Supp., pp. 12-15.) The Board ordered half of the $250,000.00 payable to Local 24 within 30 days and held the other half in abeyance with the following two conditions: 1) pending "no further violations of the subcontracting clause;" 2) required Geiler to remain "a part of the Association Bargaining Unit for the upcoming contract." (Doc. 34-5 at PageID# 319.) Both of these nonmonetary remedies are grounded in the language of the CBA, i.e., Geiler is already subject to the subcontracting clause in Article II, Section 1 and to the interest-arbitration clause in Article X, Section 8. (See Doc. 34-1.) In order to avoid the balance of the award held in abeyance, Plaintiff simply must comply with these two express provisions of the CBA. In this regard, the Board did not exceed its authority in fashioning remedies.

**C.    *The Arbitration Award does not require Plaintiff to violate Indiana's right-to-work law and it complies with federal labor law in all aspects.***

Plaintiff argues the Arbitration Award requires it to violate Indiana's right-to-work law. (Doc. 34 at PageID# 235-237, Mem. Supp., pp. 17-19.) This issue was not raised at arbitration and, therefore, should be rejected. *National Wrecking Co.*, 990 F.2d at 960-961. If the Court does consider Plaintiff's argument on this point, Plaintiff cites no explicit case law

for this proposition.[3] Notably, Geiler admits that this dispute relates to construction work in Indiana, (Doc. 34 at PageID# 235, Mem. Supp., p. 17), and as discussed below, both state and federal law treat employers in the building and construction industry much differently than other employers. Regardless, as explained below, the Arbitration Award does not rely upon any alleged illegal contact provisions as they relate to Plaintiff's work in the building and construction industry.

Significantly, neither the grievance nor the Arbitration Award is based upon Geiler's violation of union-security provisions, which are outlawed in Indiana. (See Doc. 34-2, Grievance and Doc. 34-5, Award.) Other than Geiler's post-Arbitration Award arguments to this Court, nothing in the record indicates that the Union has alleged a violation of the express union-security language in the CBA. Local 24 has only ever alleged a subcontractor-clause violation under Article II, Section 1 of the CBA.[4] (Doc. 34-2 at PageID# 283, Grievance.) To the extent Indiana law applies to the parties' CBA,[5] it does not make the Arbitration Award unenforceable.

---

[3] Likewise, Local 24's counsel could not find any relevant case law on this point.

[4] Relatedly, Local 24's work preservation language in Article II, Section 2 has been upheld as valid and enforceable by the Sixth Circuit Court of Appeals in *Eisenmann Corporation v. Sheet Metal Workers International Association Local No. 24*, 323 F.3d 375 (6th Cir. 2003) and not in violation of Section 8(e) of the National Labor Relations Act, 29 U.S.C. § 158(e).

[5] The Union questions the applicability of Indiana law to this dispute, at all, under choice-of-law principles. Consider all of the following facts: Geiler is an Ohio corporation. (Doc. 4 at PageID# 129, Corporate Disclosure Statement.) Local 24 is based in Ohio. (Doc. 1 at PageID# 3, Certificate of Service.) The grievance was filed in Ohio. (Doc. 34-2 at PageID# 283, Grievance.) The Board served the Arbitration Award in Ohio. (Doc. 34-5 at PageID# 319, Arbitration Award.) In addition, the following facts are not in the record (but are likely undisputed), the CBA is negotiated and executed in Ohio, the Board hearing took place in Ohio, and performs most of its work in Ohio. In this case, the only connection to Indiana is the job sites subject to the grievance, which the Supreme Court dictates that factor *may* be controlling. *Oil, Chemical and Atomic Workers v. Mobil Oil Corp.*, 426 U.S. 407, 417-18 (1976). Regardless, the Union asserts that Indiana law does not preclude confirmation of the Arbitration Award because there was no attempt to enforce a union-security clause.

6

Indiana's right-to-work statute states: "Nothing in this chapter is intended, or should be construed, to change or affect any law concerning collective bargaining or collective bargaining agreements **in the building and construction industry** . . ." Indiana Code § 22-6-6-3 (emphasis added). Clearly, it has limited application to the building and construction industry. The statute lists three exceptions, all of which are limited to union-security provisions. *Id.* "If an Indiana statute is not ambiguous, the court will give effect to the plain, ordinary, and usual meaning of the language of the statute." *United States v. Smith*, 668 F.3d 427, 431 (7th Cir. 2012). To reiterate, other than Geiler's post-Arbitration Award arguments to this Court, nothing in the record indicates that the Union has alleged a violation of the express union-security language in the CBA.

Geiler claims the Arbitration Award should be vacated because the CBA's union-security clause is void (as applied in Indiana). (Doc. 34 at PageID# 235-237, Mem. Supp., pp. 17-19.) Once again, this issue was not raised at arbitration and could be rejected on that basis. *National Wrecking Co.*, 990 F.2d at 960-961. However, even if the Court considers this argument, the CBA expressly states that its union-security provision is not applicable in states that prohibit them, providing: "The provisions of this Article shall be deemed to be of no force and effect in any state, to the extent to which the making or enforcement of such provision is contrary to law." (Doc. 34-1 at PageID# 245, CBA, Art. V, Sec. 3. (Emphasis removed).) Stated differently, if a state law renders the union-security clause illegal, the CBA indicates its union-security clause does not apply in that state. As such, any further reference to "union security" in the agreement, e.g., Article II, Section 1, must be construed as stricken

7

in such a state.[6] Furthermore, the CBA contains a savings-and-severability clause, (Doc. 34-1 at PageID# 258, CBA, Art. XIV, Sec. 2), further rendering Plaintiff's argument meritless.

Additionally, Indiana's right-to-work law does not apply if it conflicts with, or is preempted by, federal law. Indiana Code § 22-6-6-2. In this regard, subcontracting clauses—like Article II, Section 1 of the CBA—in the building and construction industry are valid and enforceable under federal law. See 29 U.S.C. § 158(e) (prohibiting such arrangements generally, but specifically providing "nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site . . ."). Indiana law cannot – and does not – change that. The same is true for pre-hire agreements executed without a representation election or majority support by employees. 29 U.S.C. § 158(f). No Indiana, or federal, law prohibits enforcement of such provisions. This likely explains the building and construction exemption[7] in Indiana's right-to-work law. Indiana Code § 22-6-6-3.

Further, Plaintiff argues that the Arbitration Award takes away its ability to repudiate the CBA at expiration in violation of the NLRLA. (Doc. 34 at PageID# 238, Mem. Supp., p. 20.) However, the express terms of the CBA in Article X, Section 8, which is known as an interest-arbitration clause, already provide for a continuing relationship. "[A]ny controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement shall

---

[6] To be sure, the CBA covers jobsites in four counties in Ohio, which is not a right-to-work state. (Doc. 34-1 at PageID# 243, CBA, Preamble.)

[7] The building and construction exemption in Indiana's right-to-work statute was likely designed to avoid potential *Garman* preemption challenges under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959) and *Lodge 76, International Association of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Commission*, 427 U.S. 132 (1976). *See, e.g.*, *Ohio St. Bldg. & Constr. Trades Council v. Cuyahoga County Bd. of Commrs.*, 98 Ohio St.3d 214, 2002-Ohio-7213 (providing a persuasive, thoughtful analysis about federal preemption's impact on state laws attempting to prohibit lawful building and construction industry arrangements protected by federal labor law).

8

be settled as hereinafter provided." (Doc. 34-1 at PageID# 254, CBA, Art. X, Sec. 8.) The CBA then outlines a mandatory arbitration process that the parties must follow. (*Id.* at PageID# 254-255, CBA, Art. X, Sec. 8 (a) through (d).)

As such, even prior to the issuance of the Arbitration Award, Plaintiff was already barred from repudiating the CBA and was subject to an interest-arbitration clause. (Doc. 34-1 at PageID# 254-255, CBA, Art. X, Sec. 8 (a) through (d).) A similar interest-arbitration provision—with nearly identical language—has been upheld by the Seventh Circuit in the context of construction pre-hire agreements. *Sheet Metal Workers Local Union No. 20 v. Baylor Htg. & Air Conditioning, Inc.*, 877 F.2d 547, 555 (7th Cir. 1989) (discussing an agreement to arbitrate "any controversy or dispute arising out of the failure of the parties to renegotiate a renewal of this agreement") (abrogated on other grounds by *Int'l Union of Operating Eng'rs, Local 150 v. Rabine*, 161 F.3d 427, 431 (7th Cir. 1998)). Therefore, the Arbitration Award draws its essence from the CBA—which clearly has an interest-arbitration clause precluding unilateral repudiation—and does not otherwise violate federal labor law.

### D. *The Board did not change Article II, Section 1 in its Award clarification.*

On October 31, 2022, this Court asked the Board to "clarify which provision of Article II, Section 1 Geiler violated." (Doc. 25 at PageID# 200.) The Court expressly indicated that it wanted to understand whether "union security was at issue." (*Id.*)

The Board clearly and unequivocally understood its assignment. The Board was to "clarify which provision of Article II, Section 1 Geiler violated." (Doc. 34-8 at PageID# 357.) The Board explained that "the issue before [it] explicitly concerned 'subcontracting or assignment of work'. (*Id.* at PageID# 358.) It explained that "union security was not a basis

9

for the decision and award." (*Id*.) And, "[t]he Board [found] that Geiler Company violated the subcontracting clause in Article II, Section 1 of the Collective Bargaining Agreement." (*Id*. at PageID# 357.)

Geiler suggests the Board must have changed the CBA through the Award. First, Geiler erroneously asserts that the Union Security clause applies without limitations. (Doc. 34 at PageID# 233.) But such a conclusion would have required the Board or this Court to ignore express language of the CBA stating the exact opposite. (See Doc. 34-1 at PageID# 245, CBA, Art. V, Sec. 3, "The provisions of this Article shall be deemed to be of no force and effect in any state, to the extent to which the making or enforcement of such provision is contrary to law.") Further, Geiler erroneously assumes the Board must have concluded that: "(1) the Board failed to read and interpret the CBA based on unambiguous language; or (2) the Board understands the Union Security clause violates Indiana law and attempts to read it out of its Award and Article II, § 1 to avoid the Court vacating the Award." (Doc. 34 at PageID# 233.) But, again, this ignores (1) express language in the CBA and (2) express findings that the Board did not rely on the Union Security Clause because the grievance was based on subcontracting violations.

### IV. The Court's ability[8] to vacate an arbitration decision is extremely limited.

The court's review of an arbitration award is sufficiently narrow to prevent the arbitration process from becoming a "junior varsity trial court[] where subsequent appellate review is readily available to the losing party." *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters,*

---

[8] The recent Supreme Court *Badgerow* decision does not affect this Court's ability to hear the instant case because there is independent federal jurisdiction under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, thus requiring no "look through" analysis as recently prohibited by the Supreme Court. Compare *Badgerow v. Walters*, No. 20–1143, slip op. at syllabus, 596 U.S. ___ (Mar. 31, 2022) with *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960).

*Local 731*, 990 F.2d 957, 960 (7th Cir. 1993) (explaining judicial review is narrow because arbitration is intended to be the final resolution of a dispute); *see also Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994) (noting that judicial review of arbitration awards is so "tightly limited" that "perhaps it ought not be called 'review' at all").

Indeed, judicial review of arbitration decisions is so limited that the Court cannot review the merits of an arbitrator's decision. *See Prate Installations, Inc. v. Chi. Reg'l Council of Carpenters*, 607 F.3d 467, 470 (7th Cir. 2010)). In fact, "[e]ver since federal courts began enforcing arbitration awards, the scope of judicial review of the award has been extremely narrow." *Chi. Newspaper Publishers' Ass'n v. Chi. Web Printing Pressmen's Union No. 7*, 821 F.2d 390, 393 (7th Cir. 1987) (quoting *Ethyl Corp. v. United Steelworkers of Am., AFL-CIO-CLC*, 768 F.2d 180, 183 (7th Cir. 1985)).

Courts must "uphold an award so long as 'an arbitrator is even *arguably* construing or applying the contract and acting within the scope of this authority.'" *Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1025 (7th Cir. 2013) (quoting *Local 15, Int'l Bhd. of Elec. Workers v. Exelon Corp.*, 495 F.3d 779, 782-83 (7th Cir. 2007) (emphasis in *Johnson*)). As it relates to authority to fashion remedies, the Supreme Court stated:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the

11

> arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

"A decision draws its essence from the collective bargaining agreement when it has a plausible foundation in the terms of the agreement." *Clear Channel Outdoor, Inc. v. Int'l Unions of Painters & Allied Trades, Local 770*, 558 F.3d 670, 675 (7th Cir. 2009). "It is only when the arbitrator *must have* based his award on some body of thought, or feeling, or policy, or law that is outside the contract that the award can be said not to 'draw its essence from the collective bargaining agreement.'" *Id.* (citing *Arch of Ill., Div. of Apogee Coal Corp. v. Dist. 12, United Mine Workers of Am.*, 85 F.3d 1289, 1292 (7th Cir. 1996); quoting *Ethyl Corp.*, 768 F.2d at 184-85) (emphasis in *Arch of Ill.*) (ellipses omitted)).

The Seventh Circuit recently summarized this narrow standard as follows:

> The scope of the agreement to arbitrate is critical, as the parties have the prerogative of giving either a broad or a narrow mandate to the arbitrators. A court must find a violation of the agreement to arbitrate before it may set aside the award. *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1505 (7th Cir. 1991). Hard as it may be to set aside our normal rules for review, we must do so for arbitration, lest we undermine the institution. The question "is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." *United States Soccer Fed'n, Inc. v. United States Nat'l Soccer Team Players Ass'n*, 838 F.3d 826, 832 (7th Cir. 2016) (quotations and citations omitted). Furthermore, ambiguity in an explanatory opinion does not justify setting aside an award. *United Steelworkers*, 365 U.S. at 598. Only if "there is no possible interpretive route to the award" may a "noncontractual basis . . . be inferred and the award set aside." *United States Soccer Fed'n*, 838 F.3d at 832 (quoting *Chicago Typographical Union*, 935 F.2d at 1505-06).

*Cont'l Cas. Co. v. Certain Underwriters at Lloyds of London*, 10 F.4th 814, 819 (7th Cir. 2021).

12

Based on this overwhelming case law, this Court's ability to vacate the Board's October 6, 2021 Arbitration Award (Doc. 34-5), as clarified on January 23, 2024 (Doc. 34-8), is so limited that it cannot vacate (and must confirm).

**V.    If the Court finds any of the Board's rulings deficient, it should remand the matter to the Board again or sever any problematic remedies.**

The general rule is that a reviewing court should either enforce or vacate an arbitration award, but courts do have the power to remand to the arbitrator where appropriate. *Randall v. Lodge No. 1076, International Association of Machinists and Aerospace Workers, AFL-CIO*, 648 F.2d 462, 468 (7th Cir. 1981). An arbitrator, unlike a trial court or an administrative agency, is not a tribunal of continuing jurisdiction. When an arbitration is over, the arbitrator is discharged, even if the award has not yet been enforced. However, if an award is too ambiguous to be enforced, the court has the power to remand a case to the arbitrator for clarification. *Ethyl Corp. v. United Steelworkers of America, etc.*, 768 F.2d 180, 187 (7th Cir. 1985). As such, if this Court determines the Arbitration Award needs clarified even further, it should remand the matter to the Board for additional proceedings. Or, if the Court determines any remedies to be problematic, it should sever them from the Arbitration Award and confirm the remainder.

## CONCLUSION

For the foregoing reasons, this Court should deny the Plaintiff's Renewed Motion to Vacate and, instead, confirm the Arbitration Award.

Respectfully submitted,

MANGANO LAW OFFICES CO., L.P.A.

s/Ryan K. Hymore_____
Ryan K. Hymore (Ohio Bar No. 0080750)
(*Pro Hac Vice*)

13

4030 Smith Road, Suite 200
Cincinnati, Ohio 45209
T: (513) 255-5888
F: (216) 397-5845
rkhymore@bmanganolaw.com

*Counsel for Defendant*

## PROOF OF SERVICE

I hereby certify that a copy of the foregoing motion was filed electronically this 16th day of August 2024. Service shall be made via the Court's electronic filing system to all parties registered.

s/Ryan K. Hymore
