UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| THE GEILER COMPANY, )<br>)<br>    Plaintiff, )<br>v. )<br>)<br>INTERNATIONAL ASSOCIATION OF )<br>SHEET METAL, AIR, RAIL, AND )<br>TRANSPORTATION WORKS, )<br>LOCAL UNION NO. 24. )<br>)<br>    Defendant. ) | Civil No. 4:22-mc-00001-TWP-KMB |

**PLAINTIFF'S REPLY IN SUPPORT OF RENEWED
MOTION TO VACATE AND RESPONSE IN OPPOSITION TO
DEFENDANT'S RENEWED MOTION TO CONFIRM ARBITRATION AWARD**

Plaintiff, The Geiler Company ("Geiler"), respectfully submits the following Reply in Support of its Renewed Motion to Vacate Arbitration Award and Response in Opposition to Defendant Sheet Metal, Air, Rail, and Transportation Works, Local Union No. 24's (the "Union") Renewed Motion to Confirm Arbitration Award.

## I.    INTRODUCTION

In its Response in Opposition to Geiler's Renewed Motion to Vacate Arbitration Award and Memorandum in Support of its Renewed Motion to Confirm Arbitration Award, the Union misunderstands Geiler's positions, gives the Court misinterpretations and incomplete statements of law, and tries to confuse and conflate the issues. The Union's arguments reinforce Geiler's contentions the Award fails to interpret the Collective Bargaining Agreement ("CBA"), the Board exceeded its authority, and the Award is in manifest disregard of the law.

The Board exceeded its authority by ignoring the plain language of the CBA when it held the grievance timely filed and by issuing punitive penalties and fines to Geiler. Also, despite the

1

Union's protestations, this case is about union-security because the grievance alleged, and the Board found, Geiler violated Article ("Art.") II, § 1 of the CBA through its use of a non-union subcontractor (i.e., a subcontractor that did NOT agree to the CBA's union-security clause). There is no evidence Geiler violated another provision of the CBA and the Union's own arguments support the union-security clause is unenforceable either due to the unambiguous language of the CBA or under an analysis of Indiana or federal law. Due to the unenforceability of the union-security clause in Article II, § 1 of the CBA, the Award is in manifest disregard of the law.

This is precisely the type of award on which judicial review of arbitration awards is allowed and needed, and the Court should vacate the Board's clarified Award.

## II.   ARGUMENT

**A.   The Award Was Not Ambiguous and Should Be Vacated, Not Remanded.**

The Union asserts the Court has the authority to remand the case back to the Board if the Award is too ambiguous to be enforced. [ECF 35 at p. 13]; *Ethyl Corp. v. United Steelworkers of America, etc.*, 768 F.2d 180, 187 (7th Cir. 1985). The Court has remanded the Award once and need not do it again. The Award is not too ambiguous to be vacated. The Award states Geiler violated an unenforceable clause in the CBA, instituted an unlawful fine for the violation of the stricken clause, requires Geiler to act in violation of the law, and unlawfully mandates Geiler's participation in the next agreement under economic duress and penalty of fine. All of which was outside of the Board's authority as articulated per a plain reading of the CBA.

**B.   Geiler Did Not Waive Any Arguments.**

The Union, without citing to evidence, argues Geiler did not raise the issues that the CBA's Subcontracting and Union Security Clauses violate Indiana law during arbitration, and it has waived the argument pursuant to *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990

2

F.2d 957, 960-961 (7th Cir. 1993). However, Geiler argued union-security was unenforceable because of Indiana's right-to-work statute at the hearing and *Nat'l Wrecking Co.*, 990 F.2d at 960-961 does not support a finding that Geiler waived this argument.

At the arbitration hearing, Geiler asserted Art. II, § 1 violates Indiana law because of Indiana's status as a right-to-work state. [ECF 34-7 at ¶¶ 3-4.] Even if Geiler had not, Geiler cannot waive this argument, as Art. II, § 1 is void as a matter of law as applied in Indiana by the Award. Waiver is a rule of prudence and is "not jurisdictional." *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 Fed. Appx. 415 (6th Cir. 2008)(quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 159 (2d. Cir. 2003)(citation and quotation marks omitted)). This Court may determine whether Art. II, § 1 is unenforceable as applied by the Award, as it is a pure question of law. Either the clause is unenforceable as applied, or it is not. The Court sits in a better position to make this determination than the Board. In addition, failure to accept the issue will result in an injustice. If this Court fails to make this determination, Geiler is stuck between a rock and a hard place. The Award as written requires Geiler to adhere to Art. II, § 1 and face a fine under Indiana law, or follow Indiana law, but face a fine under the Award.

Finally, waiver is inappropriate because whether an award is premised on an illegal interpretation of the collective bargaining agreement and does not draw its essence from an agreement is precisely why this Court must review it. *Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.*, 935 F.2d 1501, 1505–06 (7th Cir. 1991). A party cannot determine whether an arbitrator's award "draws it essence from the collective bargaining agreement" or is in "manifest disregard of the law" without reviewing the award. Without the Award, Geiler could not determine the need for judicial review. The Award violates Indiana and federal law. This requires the Court to vacate the Award and the issue is one which Geiler did not, and could not, waive.

**C.    The Board Exceeded Its Authority Under the CBA.**

The Union's arguments opposing Geiler's assertion the Board exceeded its authority under the CBA are unpersuasive. The Union's arguments are premised on either an incomplete or incorrect interpretation of the law or fail to correctly interpret the CBA.

**1.    The Board's Finding The Grievance Was Timely Was Contrary To The Plain Language of the CBA.**

The Union's argument that timeliness issues are always reserved for the arbitrator and are unreviewable is a misconstruction of Seventh Circuit case law. An arbitrator's decision, including decisions about timeliness, must draw its essence from the agreement or be subject to vacature. Here, the Board's timeliness determination is in direct conflict with express time limits in the CBA and the undisputed facts.[1] Because the grievance is untimely, the Court must vacate the Award.

Because the Union has no way to dispute the timeline of events in this case which show the grievance untimely, it instead argues the Court lacks authority to review the Board's decision about timeliness. In support of its argument, the Union cites two Seventh Circuit cases, *Corman Derailment Servs. v. Operating Engineers Local 150*, 335 F.3d 643, 650-51 (7th Cir. 2003) and *Teamsters Local 744 v. Metro. Dist. Inc.*, 763 F.2d 300, 303 (7th Cir. 1985). These cases do not stand for the proposition the Union supposes – i.e., timeliness issues are reserved to the arbitrator with zero possibility of review.[2] Each discusses the authority of an arbitrator to determine whether

---

[1] The Union incorrectly states *United States Soccer Fed'n, Inc. v. United States Nat'l Soccer Team Players Ass'n*, 838 F.3d 826 (7th Cir. 2016) is an unpublished, out-of-circuit decision bearing no relevance. This case is from the Seventh Circuit and is published. Further, Geiler cites to this case for the proposition this Court may vacate an award when an "arbitrator exceeded his authority by ignoring the clear and unambiguous terms of the parties' agreement." This is in congruence with other Seventh Circuit decisions which stand for the proposition an arbitrator's decision must be premised upon a possible interpretation of the collective bargaining agreement or be set aside. *Chicago Typographical*, 935 F.2d at 1505–06 (7th Cir. 1991).

[2] The case the Union cites to in its footnote 1, *Johnson v. Western & Southern Life Ins. Co.*, 598 Fed. Appx. 454 (7th Cir. 2015) also does not stand for the proposition that timeliness issues are reserved for the arbitrator. What *Johnson* holds is that once a court has determined parties are obligated to submit the subject matter of a dispute to arbitration, procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator. *Id.* at 456. This is different from timeliness issues are reserved to the arbitrator.

4

the grievance brought is one which the parties contemplated as arbitrable **under the agreement** and each ruling came prior to arbitration occurring. Nowhere in these cases does it state timeliness is absolutely reserved to the arbitrator or the arbitrator can ignore bargained-for deadlines. In fact, a Seventh Circuit court held "time constraints on arbitration proceedings are substantive and jurisdictional rather than procedural." *Chicago Sch. Reform Bd. of Trustees v. Diversified Pharm. Servs., Inc.*, 40 F. Supp. 2d 987, 990 (N.D. Ill. 1999).

The Seventh Circuit also requires an arbitrator premise its decision on a possible interpretation of an agreement or be set aside. *Chicago Typographical*, 935 F.2d at 1505–06 (7th Cir. 1991). In a sister circuit decision which stands for the same, timeliness determinations must derive in some rational way from the collective bargaining agreement. *Wyandot, Inc. v. Local 227, UFCW Union*, 205 F.3d 922, 928 (6th Cir.); *Paper, Allied-Indus. Chem. & Energy Workers, Local Union No. 5-998 v. LWD, Inc.*, 99 Fed. App'x. 683, 684 (6th Cir. 2004); *R.H. Cochran & Assocs., Inc. v. Sheet Metal Workers Int'l Assoc. Local Union No. 33*, 2008 WL 408462 (N.D. Ohio Feb. 12, 2008).

A Seventh Circuit court in *Int'l Union of Operating Eng'rs, Local 139 v. Wingra Stone Co.*, 211 F. Supp. 3d 1187 (W.D. Wisc. 2016) analyzed the timeliness determinations from *Wyandot*, *Paper*, and *R.H. Cochran*. The court in *Wingra Stone* determined it could review a timeliness determination. In its conclusion, the court found the arbitrator's timeliness decision consistent with the terms of the CBA. The court held the arbitrator was authorized to find the parties intended to permit continuing violation grievances and because the grievance was continuing in nature, it was timely. *Id.* at 1194-1195. None of the reasons in *Wingra Stone* for non-disturbance of the arbitrator's determination of timeliness are present here. The first of which was the fact the grievance in *Wingra Stone* was a "continuing violation." *Id.* at 1193-1194. This is not

the case here. The violation alleged in the Union's grievance concerned a "discrete" violation. Moreover, the timeline is undisputed the grievance was untimely filed.

Further, here, the Board disregarded and did not interpret, or show its interpretive reasoning, how the grievance was timely under Art. X, § 1 of the CBA. Per evidence presented, the Union knew of Geiler's subcontracting to a non-Union entity on September 22, 2020 and waited until January 21, 2021—over 120 days after the Union first met with Geiler and over 90 days after the project began to file its grievance. [ECF 34-3; ECF 34-4.] This is outside the time allotted under the CBA. [ECF 34-1 at pp. 12-13.] There is no question the grievance, as shown in Geiler's submitted evidence, was untimely and the Board issued the Award outside of its authority.

## 2. The Fine Exceeded The Board's Authority Under The CBA.

The Board's award of a fine exceeded the terms of the CBA and should be vacated, and the Union's arguments in contradiction miss the mark. The CBA does not provide for the award of punitive damages or fines and there is no evidence the Board's stated "fine" was really a compensatory damage award by another name.

### i. The Award Subjects Geiler To Punitive Damages.

Indiana holds "consistent with their punitive nature, punitive damages are akin to a fine exacted by the government of Indiana to deter and punish wrongdoers." *State v. Doe*, 987 N.E.2d 1066 (quoting *Cheatham v. Pohle*, 789 N.E.2d 467, 473 (Ind. 2003)(emphasis added). Thus, in Indiana, a fine is a punitive damage award. The only damages allowed within the plain language of the CBA and the Board's procedures are **compensatory** in nature. [ECF 34-1 at p. 13; ECF 34-6 at p. 3.] Given the only damages discussed in the CBA are compensatory in nature, it is inappropriate to infer or find the parties granted the Board the authority to issue punitive damages or fines. This is especially true because, in Indiana, punitive damages and fines are not allowed in

6

a breach of contract action without findings of an underlying tort. *See Lancaster v. Avon Prod., Inc.*, No. 2:15-CV-148-WTL-WGH, 2015 WL 4532751, at *2 (S.D. Ind. July 27, 2015).

Outside of the definitional issue, the award is punitive. The Board coined the monetary portion of the Award a "fine." Regardless, the nature of the Award speaks for itself. If Geiler acts in violation of Art. II, § 1, or fails to remain part of the upcoming contract, it must pay six-figures. [ECF 34-5.] The Board does not describe how it came to this number, what facts the number is based on, and there is no evidence to support the amount. The Board is not granting relief for the actions of Geiler pertaining to the grievance, but relief for future as yet committed actions or omissions. The award is a pendulum swinging over Geiler's head, requiring it act in a certain way moving forward. This is the definition of a fine. The parties did not grant the Board power to issue fines, punitive damages, or awards to control future behavior. [ECF 34-1 at p. 13; ECF 34-6 at p. 3.] The Board exceeded its authority in its issuance of a fine, and the Court should vacate the award. *See Bankers Life & Cas. Ins. Co. v. CBRE, Inc.*, 830 F.3d 729, 733 (7th Cir. 2016); *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d at 1256; *United States Soccer Fed'n, Inc.*, 838 F.3d at 832.

    ii.    **The Award Re-Writes The CBA And Requires Geiler To Act In Opposition To Its NLRA Rights.**

In its Award, the Board articulates a penalty if Geiler is not a part of "the upcoming contract." [ECF 34-5]. In opposition to Geiler's contention this portion of the Award exceeded the Board's authority under the CBA, the Union argues Geiler was not free to repudiate the CBA regardless of the Award. To support this non-sensical argument, the Union points to Art. X, § 8 of the Agreement. However, once again, the Union is wrong.

Article X, § 8 of the CBA only applies to the "Sheet Metal Contractors' Association of Greater Cincinnati, Inc.," not Geiler. Article XIV, § 5 outlines how an individual employer entity, as a member of the Association, can withdraw from the Association (and the CBA) indicating the

7

parties' understanding and intent that individual employing entities can withdraw from the Association and the CBA. As such, the Award inappropriately rewrites the CBA, eliminating Art. XIV, § 5. This defies the Board's duty to accept an agreement as the statement of the parties' rights and obligations and the product of the parties' bargaining, not "dispense [his or her] own brand of industrial justice" and issue its award within the "essence of the agreement." *United States Soccer Fed'n, Inc.*, 838 F.3d at 832; *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597 (1960).

The Award's imposition of a fine for withdrawing from the Association also requires Geiler act in opposition to its NLRA rights. Section 8(f) of the NLRA permits employers and unions in the construction industry to enter into collective bargaining agreements before the union establishes its majority status. *Elec. Workers Loc. 58 Pension Tr. Fund v. Gary's Elec. Serv. Co.*, 227 F.3d 646, 653 (6th Cir. 2000). However, unlike agreements under § 9(a) of the NLRA, which are entered into following the union establishing its majority status, employers may repudiate their relationship after a § 8(f) contract expires and have no duty to bargain over the next agreement. *Id.* As this is an agreement under § 8(f) of the NLRA, Geiler has no obligation to remain part of the Association Bargaining Unit, become a signatory to the next agreement, or enter into bargaining connected to a future agreement. *Elec. Workers Loc. 58 Pension Tr. Fund*, 227 F.3d at 653. Yet, the Award imposes a six-figure "fine" for Geiler exercising this right. [ECF 34-5.] This is in manifest disregard of the law, and the Court must vacate the Award. *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 580-81 (7th Cir. 2001).

**D.      The Award Is In Manifest Disregard Of The Law And Requires Geiler Violate Law.**

As outlined in Geiler's motion, an arbitration award that requires a party to violate the law should be vacated. See *Watts*, 248 F.3d at 580-81 (citing *Eastern Associated Coal Corp. v. United*

*Mine Workers*, 531 U.S. 57 (2000)). The Union does not dispute the Court must vacate awards requiring a party to violate the law. Rather, the Union provides the Court arguments which are misinterpretations and confusion of the law. The issue is simple, the Board's Award requires Geiler to enforce an unlawful union-security clause. As such, it requires Geiler to violate Indiana law.

   1. **Indiana Law Applies To The Work At Issue.**

Indiana law prohibits union-security clauses in collective bargaining agreements covering work performed in Indiana. The Union admits this in is brief. [ECF 35 at pp. 7-8.] Notwithstanding this admission, the Union argues Indiana law is inapplicable because the grievance was not filed in Indiana, the award was not issued in Indiana, and because Geiler is not an Indiana resident. However, the Union misses the point. The most important factor when determining whether a state's right-to-work law applies is where the work is performed. *Oil, Chemical and Atomic Workers v. Mobil Oil Corp.*, 426 U.S. 407, 417-18 (1976). Here, the work in question was undoubtably performed in Indiana. As a result, Indiana law applies.

Specifically, *Mobil Oil* states, "the place of hiring and the other factors…the employees' place of residence, the locale of personnel records, the place at which payroll checks are written, etc. - are not nearly as central…as the employees' job situs." *Id.* at 418. Where the work is performed "is the very raison d'etre of the relationship." *Id.* Using the site of the work serves two functions. One, using a job situs test reduces the possibility of anomalous extraterritorial applications of any given State's right-to-work laws. *Id.* at 418-419. And two, the job situs test ensures the laws of the State with a continuing and current relationship with these employees govern. *Id.* at 419. The Supreme Court has stated bargaining parties would be left in a state of "uncertainty if they were forced to identify and evaluate all the relevant contacts of a jurisdiction in order to determine the potential validity of a proposed union-security provision." *Id.* The

Union's analysis of *Mobil Oil* contradicts these functions. It would render right-to-work laws toothless and require extraterritorial application of another State's law in Indiana, a contradiction of *Mobil Oil's* reasoning. *Id.* at 418-419. The Supreme Court in *Mobil Oil* intended for the place of the work's performance to dictate which State's law applies, which in this case is Indiana.[3]

### 2. The Union's Grievance Alleged A Violation Of The Union-Security Clause.

While the Union argues it did not allege a violation of the CBA's Union-Security Clause, the evidence, i.e., its own position presented to the Board, indicates otherwise.

Throughout its position, the Union alluded to its concern Geiler violated of Art. II, § 1 through its use of a non-signatory to the CBA, not a general concern over subcontracting. The Union in its January 21, 2021 letter to Geiler, which the Union presented to the Board, states, "[i]t has come to [the Union's] attention that The Geiler Company may be using Metal Airways, LLC to perform work covered by the collective bargaining agreement ("CBA") and **which traditionally has been performed by our members**. . ." [ECF 34-3 at p. 10.] The Union points out to the Board that Metal Airways, LLC is no longer a signatory to the CBA. *Id.* at pp. 12-14. Then, the Union presented the Board with its attempts to have a signatory to the CBA bid for the work at issue and informed the Board of CBA signatories who could have performed the work. *Id.* at pp. 15, 20. Last, the Union presented evidence to the Board that Metal Airways, LLC performed work that no one but journeypersons and apprentice sheet metal workers [union membership terms] could perform under the CBA. *Id.* at p. 17.

Nowhere in its position to the Board does the Union provide evidence Geiler violated any part of the CBA other than subcontracting to an entity who is no longer a signatory to the CBA and

---

[3] The Court in its order remanding the Award back the Board for clarification clearly believes Indiana law applies. [*See generally*, ECF 25.] If the Court believed Indiana law did not apply, it could have held as such and ruled in favor of confirming the Award. The Court did not; thus, it believed Indiana law applies.

who does not employ only union members. [*See generally*, ECF 34-3.] The clarified Award then states Geiler violated the CBA by "subcontracting of sheet metal work to an entity (Metal Airways) that was not a signatory to the Agreement." [ECF 34-8.] The CBA does not require subcontractors to become signatories to the Agreement or that Geiler subcontract only to a "union" employer. What is does require is the subcontractor agree to comply with "the conditions of employment contained herein including, without limitations, those relating to Union Security, rates of pay and working conditions, hiring and other matters covered hereby for the duration of the project." [ECF 34-4 at p. 4.] Here, the only evidence was the subcontractor was not a "union" employer. There is no evidence of any other violation of the CBA. Thus, the question remains, if not union-security, which conditions of Art. II, § 1 did the Board find were violated? The Union fails to present any evidence, only echoing the Board's clarification as its own contention, nor did it present the Board with evidence Geiler violated any other part of Art. II, § 1. [*See,* ECF 34-3; ECF 35.]

It is clear from the evidence available, the CBA clause the Union placed at issue and the clarified Award is based upon is the union-security clause incorporated, without limitation, into Art. II, § 1 and the Board issued the Award because Geiler subcontracted to an employer who did not enforce the union-security provision of the CBA.[4] This is unlawful in Indiana.

3.  **The Award Improperly Enforces The Union-Security Clause In Art. II, § 1.**

Article II, § 1 of the CBA requires Geiler and its subcontractors to "agree in writing to comply with the conditions of employment contained herein including, without limitation, those relating to Union Security…." [ECF 34-1 at p. 4.] The Union argues Art. II, § 1 is a lawful union standards clause. Geiler agrees union standards clauses are lawful, with a notable exception – when

---

[4] The Union contends Art. V, § 3 protects the CBA from being void if the union-security clause in Art. V is found to violate the law. [ECF 35 at pp. 7-8.] Geiler does not argue the entirety of the CBA is void, but the Award is void because it enforced a union-security requirement in Art. II, § 1 in violation of Indiana and federal law. The Board ignored the CBA's savings clauses and unlawfully interpreted and enforced Art. II.

11

they include unenforceable union-security clauses. Including a union-security clause in Art. II, § 1 violates Indiana and federal law. Despite the Union's arguments, the Award improperly enforces the union-security provision of Art. II, § 1 and is, thus, in manifest disregard of the law.

### i. The Union Standards Clause Violates Indiana Law.

Indiana law is clear, an agreement requiring an individual become a member of a union, pay dues, fees, assessments or other amounts to a union or third-party is "unlawful and void." Ind. Code § 22-6-6-8 (prohibiting union security as a condition of employment); Ind. Code § 22-6-6-9 ("A contract, agreement, understanding, or practice, written or oral, express or implied, between: (1) a labor organization; (2) an employer; that violates section 8 of this chapter is unlawful and void."). Article II does not exempt its requirements for Right-to-Work states. [ECF 34-1 at p. 4.] Nor does it state the union-security clause in Art. II, § 1 is inapplicable if enforcement of the CBA or the union-security clause violates law. The Union's grievance was based on its belief Geiler violated Article II of the Agreement because it used a "non-union" individuals to perform work. [ECF 34-3; ECF 34-4.] Thus, the entire issue here is whether Geiler and its subcontractors could be forced to abide by an Agreement, in Indiana, which included a union-security clause mandating that all individuals performing specified work are/become union members. As Indiana is a right-to-work state, the answer is "no," and enforcement would require Geiler violate Indiana law.

Further, the Union's contention Indiana's Right-to-Work statute is preempted by federal law is an incomplete statement of law.[5] It is true § 8(a)(3) of the NLRA permits union-security agreements and gives "employers and unions who feel that [union-security] agreements promoted stability by eliminating 'free riders' the right to continue such arrangements.'" S. Rep. No. 105, 80th Cong., 1st Sess., 7 (1947), 1 Leg. Hist. 413. However, this is not the end of the analysis, as

---

[5] If the Court accepted the premise that federal law preempts Indiana's right-to-work statute, it could have confirmed the Award rather than remanding. However, it did not and, thus, ruled in Geiler's favor. [ECF 25.]

other sections allow for exemptions. Namely, Congress, in § 14(b), reflected a decision that "any State or Territory that wishes to may exempt itself from that policy." *Mobil Oil*, 426 U.S. at 416-417. Moreover, § 14(b) allows a State or Territory to ban agreements "requiring membership in a labor organization as a condition of employment." Thus, with respect to those state laws which § 14 (b) permits to be exempted from § 8(a)(3)'s national policy "[t]here is… conflict between state and federal law; but it is a conflict sanctioned by Congress with directions to give the right of way to state laws…." *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963).

Indiana is a state with a law banning union-security clauses as allowed in § 14(b) and exempting it from § 8. Ind. Code § 22-6-6-8[6]; Ind. Code § 22-6-6-9. If Indiana's right-to-work law conflicts with federal law, it is a conflict "sanctioned by Congress." *Schermerhorn*, 375 at 103. In resolving this conflict, the Supreme Court has spoken, Indiana's law is given the right of way. *Id.* Thus, Indiana's right-to-work law is not preempted.

### ii.     The Award Interprets the CBA In a Way That Violates Federal Law.

The crux of the Union's argument is Art. II, § 1 of the CBA is a lawful union standards clause permitted under the NLRA. While Geiler agrees Art. II, § 1 purports to be a union standards clause and union standards clauses are generally lawful in the construction industry under the NLRA, this specific clause is unlawful due to its inclusion of a union security requirement.

Article II, § 1 is a contractual provision limiting Geiler's subcontracting choice. Whether this provision is enforceable "depends on whether the union's motivation stems from primary or secondary objectives." *Integrity Kokosing Pipeline Servs., LLC v. Pipeliners Union 798 United Ass'n*, 2021 U.S. Dist. LEXIS 175327 at *16 (S.D. Ind. September 15, 2021), citing *Moriarty v.*

---

[6]     The Union argues Indiana's right-to-work statute does not apply in the construction industry. [ECF 35 at p. 7.] The Union's citation to Ind. Code § 22-6-6-3 is incomplete. The next words in the statute state, ". . . other than: (1) a law that permits agreement that would require membership in a labor organization . . . as a condition of employment." Ind. Code § 22-6-6-3(2).

*Svc*, 55 F. Supp. 2d 876, 881 (N.D. Ill. 1999); *National Woodwork Manuf. Assoc. v. NLRB*, 386 U.S. 612, 644-645 (1967); *NLRB v. Chauffeurs, Teamsters, Warehousemen & Helpers Local 525*, 773 F.2d 921, 924 (7th Cir. 1985)). Generally, "agreements which limit the employer…to subcontracting with businesses that recognize the union or have a union contract violate § 158(e)" of the NLRA. *Chauffers*, 773 F.2d at 924 (quoting *Building Material and Dump Truck Drivers, Teamsters Local Union No. 36 v. NLRB*, 669 F.2d 759, 764, 215 U.S. App. D.C. 373 (D.C. Cir. 1981). Clauses which focus on the union affiliation of a subcontractor's employees are union signatory clauses and are "presumptively invalid" and cannot form the basis for the Award. *Id.*

Article II, § 1 requires Geiler subcontract with entities who agree to the conditions of employment in the CBA, "including, without limitations, those relating to Union Security…" [ECF 34-1 at p. 4.] The Board interpreted this clause to include a requirement the subcontractor be a signatory to the CBA and employ union labor. [ECF 34-5; ECF 34-8.] Thus, Art. II, § 1 is not a lawful union standards clause, but was interpreted to enforce an impermissible union signatory clause. Article II, § 1 focuses on the union affiliation of subcontractor's employees and limits Geiler to subcontracting with only businesses recognizing the Union and employ union workers. Thus, Art. II, § 1 is invalid and violates § 158(e) of the NLRA. *Chauffers*, 773 F.2d at 924.

The Board unequivocally states, "union security was not a basis for the decision and award." [ECF 34-8 at p. 2.] Geiler asks, then what was the basis for the Award? The only violation which either the Union or the Board has presented to the Court is Geiler's use of a non-signatory to the CBA (*See*, ECF 34-3; ECF 34-5; ECF 34-8) to perform work governed by it, which only violates the union-security provision of Art. II, § 1. [ECF 34-1 at p. 4.] There is no evidence Metal Airways, LLC did not agree in writing to all other conditions of employment outlined in the CBA. The Union based its grievance on its belief Geiler violated Art. II, § 1 because it used a "non-

14

union" subcontractor (ECF 34-2; ECF 34-3) and presented no evidence at the arbitration, and presents none here, that Geiler violated any provision of the CBA other than union security. The Union and the Board fail to articulate the provision of Art. II, § 1 which Geiler violated.

Article II, § 1 requires Geiler subcontract only entities who agree to the conditions of employment in the CBA, "including, without limitations, those relating to Union Security…" [ECF 34-1 at p. 4.] The Board interpreted this clause to include a requirement that the subcontractor be a signatory to the CBA and that it employ union labor. [ECF 34-4; ECF 34-8.] Thus, it is clear, Art. II, § 1 is not a lawful union standards clause, but an impermissible union signatory clause. Article II, § 1 focuses on the union affiliation of subcontractor's employees and limits Geiler to subcontracting with only businesses recognizing the Union and employing union workers. Thus, Art. II, § 1 is invalid and violates § 158(e) of the NLRA. *Chauffers*, 773 F.2d at 924.

The Union contends Art. V, § 3's savings clause eliminates the union-security clause from Art. V and Art. II, § 1. This fails to save the Award. Either union security played no role, which removes the sole basis on which the Union alleged, and the Board found, Geiler violated the CBA, or the Board unlawfully enforced the eliminated union-security clause in Art. II, § 1 and failed to interpret Art. V, § 3. Either way, the result is the same, the Board failed to interpret the CBA's unambiguous language, dispensed its own brand of industrial justice, and the Court must vacate the Award. *Steelworkers*, 363 U.S. at 597; *Amax Coal Co. v. United Mine Workers of Am.*, 92 F.3d 571, 575 (7th Cir. 1996); *United States Soccer Fed'n, Inc.*, 838 F. 3d at 832.

### III. CONCLUSION

Geiler requests the Court grant its Motion and vacate the Board's improper and unlawful Award.

Respectfully submitted,

LITTLER MENDELSON, P.C.

/s/ Ryan J. Sterling
Brooke E. Niedecken (OH #0079142)
41 South High Street, Suite 3250
Columbus, OH 43215
Telephone: 614.463.4201
Facsimile: 614.221.3301
E-mail: bneidecken@littler.com

Ryan J. Sterling (#34212-49)
111 Monument Circle, Suite 702
Indianapolis, IN 46204
Telephone: 317.287.3600
Facsimile: 317.636.0712
Email: rsterling@littler.com

*Attorneys for Plaintiff The Geiler Company*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 23rd day of September 2024, the foregoing *Plaintiff's Reply in Support of its Renewed Motion to Vacate and Response in Opposition to Defendant's Renewed Motion to Confirm* has been filed via the Court's electronic filing system. Notice of filing will be performed by the Court's electronic filing system, and parties may access the document through the Court's electronic filing system.

/s/ Ryan J. Sterling