**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| THE GEILER COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 4:22-mc-00001-TWP-KMB |
| | ) |
| INTERNATIONAL ASSOCIATION OF SHEET | ) |
| METAL, AIR, RAIL AND TRANSPORTATION | ) |
| WORKS, | ) |
| LOCAL UNION NO. 24, | ) |
| | ) |
| Defendants. | ) |

**ORDER OVERRULING PLAINTIFFS' OBJECTION, AND**
**ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff's Objection to Magistrate Judge's Report and Recommendation on Plaintiff's Motion to Vacate and Defendants' Motion to Confirm Arbitration Award (Filing No. 42). Plaintiff The Geiler Company ("Geiler") was accused of violating a collective bargaining agreement ("CBA") between itself and Defendants The International Association of Sheet Metal, Air, Rail, and Transportation Workers and Local Union No. 24 (collectively, "the Union"). An arbitrator ruled in favor of the Union and imposed financial penalties on Geiler. Geiler initiated this action asking the Court to vacate the arbitration award for three reasons: (1) the Union's grievance was untimely; (2) the arbitration award violates Indiana's right-to-work law; and (3) the arbitrator-imposed penalties that are not authorized by the CBA. On January 23, 2025, the Magistrate Judge issued a Report and Recommendation (Filing No. 41) that the District Judge deny Geiler's Motion to Vacate the Arbitration Award, (Filing No. 33), and grant the Union's Motion to Enforce the Arbitration Award, (Filing No. 3). For the reasons

discussed below, Geiler's Objection is **overruled** and the Court **adopts** the Magistrate Judges Report and Recommendation confirming the arbitration award.

## I.    BACKGROUND

This background section is not meant to encompass all the facts of this case as that can be found in the Report (Filing No. 41). Instead, the Court recites only those facts necessary to Geiler's Objection.

### A.    Parties to the Dispute

Geiler is a commercial plumbing and HVAC contractor operating in Indiana, Kentucky, and Ohio (Filing No. 34 at 2).  It was a signatory to the CBA with the Union during the relevant time. *Id*. In negotiating the terms of the CBA, Geiler was represented by a multi-employer bargaining unit called the Sheet Metal Contractors Association of Greater Cincinnati, Inc. ("Sheet Metal Contractors Association"), who is not a party to this lawsuit (Filing No. 34-1).

### B.    Relevant CBA Provisions

The relevant provisions of the CBA are found in Articles II, V, X, and XIV.  Article II concerns subcontracting (Filing No. 34-1 at 5). Article II § 1 of the CBA prohibits Geiler from subcontracting work within the scope of the CBA "to any [c]ontractor, [s]ubcontractor or other person or party who fails to agree in writing to comply with the conditions of employment contained herein including, without limitations, those relating to [u]nion [s]ecurity, rates of pay and working conditions, hiring and other matters covered hereby for the duration of the project." *Id*.

Article V addresses union security. *Id*. at 5–6. Article V § 1 obligates Geiler to "require membership in the Union, as a condition of continued employment, of all employees performing any work" within the scope of the CBA. *Id*. at 5. However, Article V § 3 contains a savings clause

2

that states, "[t]he provisions of this Article shall be deemed to be of no force and effect in any state, to the extent to which the making or enforcement of such provision is contrary to law." *Id*. at 6.

Article X addresses the grievance and arbitration process. *Id*. at 13–16. This process is two steps. At step one, Geiler or the Union must submit a grievance, and the two sides must try to resolve the issue between themselves. *Id*. at 13. Article X § 1 states, "[g]rievances must be raised within thirty (30) calendar days following the occurrence giving rise to the [g]rievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of first knowledge of the facts giving rise to the [g]rievance." *Id*. At step two, either side may file a notice of appeal to the Local Joint Adjustment Board ("the LJAB") for an arbitration hearing if direct resolution is unsuccessful. *Id*. at 13–14. Article X § 5 empowers the LJAB "to render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensation." *Id*. at 14. Article X § 8 provides a separate grievance process for disputes involving the negotiation or renewal of the CBA. *Id*. at 15–16. Those disputes are ultimately heard by the Nation Joint Adjustment Board rather than the LJAB. *Id*.

Article XIV addresses the duration of the CBA. Article XIV § 5 provides that Geiler authorizes the Sheet Metal Contractors Association to serve as its Collective Bargaining Representative for all matters related to the CBA "unless this authorization is withdrawn by written notice to the [Sheet Metal Contractors] Association and the Union at least one hundred-fifty (150) days prior to the current expiration dates of the [CBA]." *Id*.

C.      **Underlying Dispute and Arbitration**

In September 2020, Geiler bid on a project at Sunman-Dearborn Community Schools (the "Sunman-Dearborn Project") in St. Leon, Indiana naming Metal Airways LLC ("Metal Airways")

as a subcontractor for sheet metal work (Filing No. 34 at 3). Metal Airways was not a signatory to the CBA during the time relevant to this dispute. *Id*. at 3–4.

On September 22, 2020, a Union representative met with Geiler's Vice President, Reid Geiler ("Mr. Geiler") concerning the issue of sheet metal subcontracting for the Sunman-Dearborn Project (Filing No. 34-2 at 2. Then, in October 2020, a Union representative sent Mr. Geiler several emails asking which sheet metal subcontractor Geiler was planning to use for the Sunman-Dearborn Project (Filing No. 34-3 at 9). However, these emails did not mention Metal Airways or any other specific subcontractor.

On January 21, 2021, the Union representative sent Mr. Geiler a letter accusing Geiler of violating the CBA by using Metal Airways as a sheet metal subcontractor on the Sunman-Dearborn Project (Filing No. 34-4 at 2). The Union submitted a timely notice of appeal identifying the issue as "Subcontracting or Assignment of Work" and alleged that Geiler was in violation of Article II § 1 (Filing No. 34-2 at 2).  This matter proceeded to the LJAB for arbitration. The LJAB ruled in favor of the Union and imposed a financial penalty on Geiler (Filing No. 34-5). A letter explaining its ruling stated:

> The LJAB determined that all procedural requirements had been met, that the grievance was timely, and was properly before the Board for consideration. Based upon the record and testimony of the parties, the LJAB rendered the following decisions:
>
> The Board finds that Geiler Company violated Article II; Section 1 of the collective bargaining agreement and that Geiler Company has a fine of $250,000, with half payable in thirty days with disbursement of payment as directed by Local No. 24; and half held in abeyance pending no further violation of the subcontracting clause, and that Geiler Company remains a part of the Association Bargaining Unit for the upcoming contract.

*Id*.

**D.**     **Procedural History**

After the LJAB's decision in favor of the Union, Geiler sought judicial review in this Court in January 2022 (Filing No. 1). On October 31, 2022, the Magistrate Judge remanded the case to the LJAB for clarification of its ruling (Filing No. 25 at 4–5). The LJAB clarified its ruling in a letter stating:

> The Board further finds that the union security clause found in Article V, Section 1, and the passing reference to the clause found within Article II, Section 1 are not applicable to the work at issue, and irrelevant for the Board's determination. See Art. V, Sec. III. The issue before the Board explicitly concerned 'subcontracting or assignment of work,' as noted in Local 24's Grievance. The issue was Geiler's subcontracting of sheet metal work to an entity (Metal Airways) that was not signatory [sic] to the Agreement, and union security was not a basis for the decision and award.

(Filing No. 34-8 at 2).

Following the LJAB's clarification, Geiler renewed its Motion to Vacate the Arbitration Award, (Filing No. 33), and the Union filed a Cross-Motion to Confirm the Arbitration Award (Filing No. 35).

## II.      LEGAL STANDARD

A district court may assign dispositive matters to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition, including any findings of fact. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1); *see also Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009). The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to "accept, reject, or modify" the findings and recommendations, and the district court need not accept any portion as binding. Fed. R. Civ. P. 72(b)(1).

After a magistrate judge makes a report and recommendation, either party may object within fourteen days of being served with a copy of the same. Fed. R. Civ. P. 72(b)(2). When a party raises specific objections to findings and recommendations made within the magistrate

judge's report, the district court is required to review those objections *de novo*, determining for itself whether the magistrate judge's decisions as to those issues are supported by substantial evidence or were the result of an error of law. Fed. R. Civ. P. 72(b)(3). If a party fails to object to a magistrate judge's report and recommendation, or objects on some issues and not others, the party waives appellate review of the issues to which the party has not objected. *Johnson* at 739.

## III.    DISCUSSION

At issue is whether the Court should vacate the arbitration award issued by the LJAB against Geiler and in favor of the Union based on the CBA between the parties. As the Magistrate Judge noted, a court's role in reviewing a labor arbitration award is "very limited." *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567 (1960). "The courts . . . have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *Id*. at 568. "As long as the arbitrator's award 'draws its essence from the [CBA],' and is not merely 'his own brand of industrial justice,' the award is legitimate." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)). "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (quoting *Misco*, 484 U.S. at 39).

The Seventh Circuit has explained federal courts' limited role when tasked with whether to set aside an arbitration award stating,

> The question presented to a federal court asked to set aside an arbitration award is
> not whether the arbitrator or arbitrators erred in interpreting the contract; it is not

whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interesting the contract; it is whether they interpreted the contract.

*United States Soccer Federation, Inc. v. United States National Team Players Association*, 838 F.3d 826, 832 (7th Cir. 2016) (cleaned up). "Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Misco*, 484 U.S. at 38.

However, judicial deference is not unlimited. "[A]n arbitrator is confined to interpretation and application of the [CBA]; he does not sit to dispense his own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). A court may vacate an arbitration award if "the arbitrator ha[s] exceeded the powers delegated to him by the parties." *Dexter Axle Co. v. Int'l Ass'n of Machinists*, 418 F.3d 762, 768 (7th Cir. 2005). Because the arbitrator is typically limited to interpreting the contract, if "there is no possible interpretive route to the award," then a "noncontractual basis can be inferred and the award set aside." *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1505–06 (7th Cir. 1991).

Geiler objects to three conclusions in the Report: (1) that the Union's grievance was timely; (2) that substantive basis for the LJAB's award draws its essence from the CBA and does not violate Indiana law; and (3) that the LJAB imposed penalties authorized by the CBA (Filing No. 42 at 1). In addition, Geiler takes issue with three factual findings in the Report: (1) that Geiler is a signatory to a CBA with the Union; (2) that the bid on the Sunman-Dearborn Project named Metal Airways as a subcontractor for sheet metal work; and (3) that Mr. Geiler declined to meet with the Union representative to discuss this issue. *Id*. at 4–5.

The Court will first address Geiler's factual challenges before turning to the merits of the objections.

A.      **Factual Challenges**

As previously stated, Geiler takes issue with three factual findings in the Report. First, it asserts that it was a signatory to a CBA during the time the Union submitted its grievance, but it is not currently a signatory to a CBA with the Union. *Id*. at 4. In response, the Union argues that this distinction is immaterial as this fact and any conclusions that could be drawn from it were not relevant to the underlying arbitration award (Filing No. 43 at 3). The Court agrees. Whether Geiler would be subject to an award under a CBA today is not relevant to the arbitration award at a time when both parties were undisputedly signatories to the CBA.

Second, the Report found that "[t]he bid named Metal Airways, LLC as a subcontractor for sheet metal work[,]" but Geiler clarified that it did not have a contractual relationship with Metal Airways and instead engaged them through a third-party (Filing No. 42 at 5). The Union argues that this factual challenge was waived as this allegation was only first raised as an issue in Geiler's July 16, 2024, Motion to Vacate Arbitration Award but was never put before the arbitrator (Filing No. 43 at 3 (citing *Shakman v. Democratic Organization of Cook County*, No. 69 C 2145, 2010 WL 3938350, at *4 (N.D. Ill. 2010) (failure to raise an issue during arbitration constitutes a waiver)). The Court need not delve into waiver as the Magistrate Judge's factual finding was based on Geiler's own statement that "Geiler included Metal Airways . . . in its bid as a subcontractor for sheet metal work on the" Sunman-Dearborn Project (Filing No. 34 at 3).

Third, Geiler takes issue with the Report's finding that it "declined to meet with the Union representative to discuss the issue" contending that while the evidence showed that Mr. Geiler emailed a Union representative on October 30, 2020, declining the meet, Mr. Geiler did meet with Union representatives on August 28, 2020, "over this issue." (Filing No. 42 at 5 (citing Filing No.

34-3 at 7)). But Geiler is mistaken in their challenge and citation. By Geiler's own grievance timeline, the meeting in Mr. Geiler's office occurred on September 22, 2020, (Filing No. 34 at 9 (citing Filing No. 34-3 at 8)), which the Magistrate Judge correctly noted in the Report (Filing No. 41 at 3). Accordingly, no factual errors were made in the Report.

**B.**     **Merits of Objections**

The Court will address in turn, Geiler's three objections to the Report and Recommendation: (1) the Union's grievance was timely; (2) the substantive basis for the LJAB's award draws its essence from the CBA and does not violate Indiana law; and (3) the LJAB's monetary award is authorized by the CBA (Filing No. 42 at 1)..

**1.   Timeliness of the Union's Grievance**

The  Magistrate Judge concluded that issues of procedural arbitrability such as timeliness are primarily left to arbitrators but are in fact reviewed by courts under the same deferential standard as other arbitral findings (Filing No. 41 at 9 (citing *BG Group, PLC v. Republic of Argentina*, 572 U.S. 25, 41 (2014) (holding that courts cannot review issue of procedural arbitrability *de novo* and instead "must do so with considerable deference.") (emphasis in original)). Geiler does not object to this conclusion and the Court agrees with the Magistrate Judge.

Rather, Geiler objects to the Magistrate Judge's conclusion that the grievance was timely (Filing No. 42 at 5). Article X § 1 of the CBA requires the parties to submit a grievance "within thirty (30) calendars days of first knowledge of the facts giving rise to the [g]rievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of first knowledge of the facts giving rise to the [g]rievance." (Filing No. 34-1 at 13). Geiler argued that the Union knew that it had selected Metal Airways as the sheet metal subcontractor on the Sunman-Dearborn Project in

September 2020 but waited until January 2021 to submit a grievance (Filing No. 34 at 8–10). The Union responded that the LJAB's finding of timeliness was correct (Filing No. 35 at 3).

The Magistrate Judge concluded that the LJAB's finding that the grievance was timely draws its essence from the CBA and thus, should be affirmed (Filing No. 41 at 10). Specifically, a Union representative sent several emails in October 2020 to Mr. Geiler asking which subcontractor Geiler planned to use for the Sunman-Dearborn Project's sheet metal work to which Mr. Geiler did not respond to most of them and declined to meet with the representative. The Court agrees that these facts support a finding that the Union did not know which company had been selected as Geiler's sheet metal subcontractor for the Sunman-Dearborn Project in September 2020. *Id*. The Magistrate Judge noted that although a different arbitration panel perhaps could have been persuaded by other factors, a court's role in reviewing an arbitration award is very limited, and it will not reweigh conflicting evidence that was before the LJAB at the time it rendered its decision. *Id*. at 11 (citing *Major League Baseball Players Ass'n*, 532 U.S. at 509 ("When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's improvident, even silly factfinding does not provide a basis for a reviewing court to refuse to enforce the award.") (internal quotation marks and citation omitted)).

Geiler objects to this conclusion arguing that the Union presented evidence that it met with Mr. Geiler on September 22, 2020, "concerning the issue," and sent seven emails to Geiler trying to discuss the occurrence which gave rise to the grievance (Filing No. 42 at 6). Geiler also asserts that the grievance itself states that the Union tried to resolve the grievance from September 22, 2020, to January 13, 2021, and that the Union cannot try to resolve a grievance if it does not know about the occurrence which gave rise to it. *Id*. Geiler asserts that based on these meetings and

communications, the occurrence which gave rise to the grievance was ascertainable before December 20, 2020, making the grievance untimely. *Id*.

In response, the Union argues that the Magistrate Judge correctly concluded that the LJAB's finding of timeliness drew its essence from the CBA because the Magistrate Judge was only required to find that the arbitrator interpreted the CBA (Filing No. 43). The Union further asserts that the Magistrate Judge correctly refused to reweigh the factual and legal conclusions made by the LJAB and because there was a possible interpretive route for a finding that the Union submitted its grievance within 30 days of learning about the issue underlying the dispute, the finding was properly sustained. *Id*. The Court agrees.

The Court's role in reviewing the LJAB's determination of timeliness is very limited, and the Court will not reweigh evidence that was before the LJAB, *see Major League Baseball Players Ass'n*, 532 U.S. at 509, which is essentially what Geiler asks the Court to do. Geiler may disagree, and another arbitration panel may have agreed with them. Another panel may have been persuaded by facts such as the Union representative's meeting with Mr. Geiler in September 2020 about an issue relating to sheet metal subcontracting for the Sunman-Dearborn Project. However, the LJAB did not, and there is no basis for the Court to vacate the award because the LJAB was persuaded by some evidence over others.

Moreover, the LJAB was persuaded by evidence which showed that the Union sent several emails in October 2020 asking Geiler which subcontractor it planned on using for the Sunman-Dearborn Project's sheet metal work, but Mr. Geiler did not respond to most of these emails and ultimately declined to meet to discuss this issue. Upon de novo review, the Court concludes that LJAB's finding that the Union did not know which company had been selected as Geiler's sheet

11

metal subcontractor was not one in which there is no possible interpretive route, as Geiler argues, and its objection to the Report on this ground is **overruled**.

### 2. The LJAB's Award

Geiler objects to the conclusion that the LJAB's determination which found Geiler in violation of the CBA by using Metal Airways as a subcontractor in the Sunman-Dearborn Project bid should be upheld (Filing No. 42 at 7). Specifically, Geiler objects to the Magistrate Judge's "interpretation of the CBA's savings clause as nullifying the union security clause as referred in Art. II, § 1." *Id*. Geiler further objects to the conclusion that the award is lawful even if the savings clause does not nullify the union security language. *Id*.

The Magistrate Judge concluded that the LJAB's clarification made clear that the union security language in Article V § 1, which requires membership in the Union as a condition of continued employment, was not the basis for the LJAB's determination (Filing No. 41 at 13). The Magistrate Judge reached this conclusion because the LJAB's letter not only stated this, but also referenced the savings clause of Article V § 3, *id*., which states that the provisions of Article V "shall be deemed to be of no force and effect in any state, to the extent to which the making or enforcement of such provision is contrary to law." (Filing No. 34-1 at 6). The Magistrate Judge found that the LJAB's reference to the savings clause shows that it understood that union security could not be the basis for a ruling against Geiler (Filing No. 41 at 14).

Geiler argues that the language in Article II § 1 which applies to "conditions of employment contained herein including, without limitations, those relating to [u]nion [s]ecurity[,]" violates Indiana's right-to-work law because the Article V § 3 savings clause applies only to Article V (Filing No. 42 at 7). It contends that the term "without limitations" in Article II § 1 causes Article

12

II to require the union security provided for in Article V even though Article V expressly nullifies such provision in states such as Indiana. *Id*. Geiler then argues that even if the savings clause did not render Article II unlawful, the award would still be unlawful because the Union's grievance was that non-Union members performed the work at issue and any award premised on such a finding would nonetheless violate Indiana's right-to-work laws. *Id*. at 8.

As the Magistrate Judge noted, such arguments are unlikely to survive even a *de novo* review let alone the highly deferential review for arbitration decisions applicable here. While Geiler contends that the words "without limitations" in Article II § 1 means that subcontractors must agree to hire only Union workers and that there are no exceptions to that requirement in states where such requirements are unlawful, Article V § 3's savings clause expressly states the opposite. Geiler's argument goes against basic principles of interpretation. *See Medical Protective Company of Fort Wayne, Indiana v. American International Specialty Lines Insurance Company*, 911 F.3d 438, 447 (7th Cir. 2018) (citing *U.S. Bank Tr. N.A. for LSF9 Master Participation Tr. V. Spurgeon*, 99 N.E.3d 671, 675 (Ind. Ct. App. 2018)) ("[C]ontracts are to be interpreted to harmonize all provisions and not render any words meaningless."); *see also Franciscan Alliance Inc. v. Metzman*, 192 N.E.3d 957, 963 (Ind. Ct. App. 2022) (holding that courts "must examine the plain language of the contract, read it in context, and, whenever possible, construe it to render every word, phrase, and term meaningful, unambiguous, and harmonious with the whole").

Moreover, Geiler's argument that the Union's grievance arose from its frustration that non-Union members employed by Metal Airways were completing the sheet metal work which could have been performed by its members is not persuasive. The notice of appeal clearly put the issue of impermissible subcontracting before the LJAB evidenced by the notice listing "Subcontracting

or Assignment of Work" as the issue and presenting evidence that Metal Airways was not a signatory to the CBA (Filing No. 34-2 at 2, Filing No. 34-3 at 14–15).

Geiler acknowledges that it could have provided Metal Airways written agreement to be bound by the CBA's labor standards to the LJAB, but it did not do so because it is not Geiler's burden to prove it did not breach its CBA obligations (Filing No. 42 at 10). Geiler thus argues that the LJAB disregarded this, and union security is the true basis for the arbitration award. *Id*. However, Geiler is asking the Court to reweigh the evidence placed before the LJAB, which the Court is not allowed to do. The Union presented evidence that Metal Airways was not a signatory to the CBA, and it is uncontested that Geiler named Metal Airways as a subcontractor in their bid for the Sunman-Dearborn Project (Filing No. 34-3 at 15). Thus, it was plausible for the LJAB to find that Geiler violated the CBA by subcontracting sheet metal work to a company that had not agreed in writing to follow the CBA's labor standards. Accordingly, Geiler's objection on this ground is **overruled**.

### 3. **The LJAB's Monetary Award**

Finally, Geiler objects to the Magistrate Judge's conclusion that the LJAB's monetary award is lawful. This objection presents three challenges: (a) the financial award is punitive and neither the CBA nor Indiana law authorizes such an award; (b) the CBA does not give the LJAB the authority to suspend half the award on the condition that Geiler remain in the Sheet Metal Contractors Association; and (c) the suspension of half the award violates Section 8(f) of the NLRA. The Court will address each in turn.

### a. **The Monetary Award under the CBA**

The Magistrate Judge concluded that whether the monetary award is classified as a penalty—as Geiler argues—or not, the broad language of the CBA authorizes such an award

14

(Filing No. 41 at 17). The Magistrate Judge found that the CBA does not expressly prohibit punitive financial awards. Article X § 5 includes broad language empowering the LJAB "to render such decisions and grant such relief to either party *as they deem necessary and proper*." *Id*. at 18 (emphasis in original) (citing *Charles O. Finley & Co., Inc. v. Kuhn*, 569 F.2d 527, 534–35 (7th Cir. 1978) (arbitration case holding that an agreement authorizing Commissioner to take steps as he deems "necessary and proper" conferred broad power)). Accordingly, the Magistrate concluded that, given the Court's extremely limited and deferential role in reviewing arbitration decisions, the LJAB's monetary award was authorized by the CBA.

The Magistrate Judge was not persuaded by Geiler's arguments that Indiana law does not permit punitive damages in breach of contract disputes were unpersuasive because the CBA does not include a choice of law provision. And Geiler did not explain why this aspect of Indiana law would restrict the LJAB's authority to grant such relief given the broad wording of Article X § 5. *Id*. The Magistrate Judge found that Geiler's argument that the LJAB needed to provide a written analysis explaining how it arrived at the figure of $250,000 for its monetary award was unpersuasive, because arbitrators are not required to provide written analyses supporting their findings. *Id*. at 19 (citing *Ameren Illinois Co. v. Int'l Brotherhood of Electrical Workers*, 906 F.3d 612, 618–19 (7th Cir. 2018) ("[a]rbitrators are normally not required to write any opinion at all, and it is worth reiterating that a court's review of an arbitral award does not proceed under the same principles that would apply if it were reviewing a decision of the Social Security Administration or a bankruptcy court")).

Geiler argues that the LJAB's monetary award is clearly a punitive award, that Indiana law applies because the work was performed in Indiana, and Indiana law does not allow for punitive damages for a breach of contract claim (Filing No. 42 at 12 (citing *Lancaster v. Avon Prod., Inc.*,

No. 2:15-cv-148, 2015 WL 4532751, at *2 (S.D. Ind. July 27, 2015) ("the Indiana Supreme Court has consistently stated the general rule that punitive damages are not allowed in a breach of contract action.") (internal quotation marks and citation omitted)).

In response, the Union argues the Magistrate Judge was correct to conclude that the CBA's broad language allowed for this type of award, and the LJAB's finding that such an award was necessary and proper was determined from a possible interpretation of the CBA. Accordingly, the Magistrate Judge appropriately deferred to the LJAB (Filing No. 43 at 7). The Union contends that Geiler's arguments that the award bears no relation to the evidence and the award was clearly based on the violation of the union security clause rather than the subcontracting clause are incorrect. The Court agrees.

As the Magistrate Judge found, nothing in the CBA prohibits the award of punitive damages. Article X § 5 of the CBA contains broad language empowering the LJAB to "render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensation." (Filing No. 34-1 at 14). Consequently, the CBA authorizes the financial penalty, and the only remaining question is whether, as Geiler argues, Indiana's general rule that breach of contract claims cannot result in punitive damages, precludes the LJAB's award. The Court finds that it does not.

Indiana law does not allow for punitive damages in a breach of contract claim. *See Miller Brewing Co v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 981 (Ind. 1993) (The Indiana Supreme Court has "consistently stated the general rule that punitive damages are not allowed in a breach of contract action."). However, Geiler fails to explain why this aspect of Indiana law thwarts the LJAB's explicit authority to render such decisions and grant such relief as they deem necessary and proper, including awards of damages or other compensation. Geiler does not cite to

16

any authority holding that an arbitrator is bound by the same rules as a court when awarding damages pursuant to a broad delegation of authority to do so. Accordingly, Geiler's objection on these grounds are **overruled**.

       b.   **Suspension of Half the Award**

Next, Geiler objects to the Magistrate Judge's conclusion that the LJAB did not exceed its authority under Article XIV § 5 by suspending half of the financial award on the condition that Geiler remain in the Sheet Metal Contractors Association for negotiating the next renewal of the CBA. *Id*. The Magistrate Judge stated that "[i]f the LJAB had mandated the acceptance of the next agreement under the penalty of fine and permitted the Union to use that suspended fine to strong-arm Geiler to bend to its will in any renewal negotiations, then the LJAB may have exceed its authority under the CBA." *Id*. However, the Magistrate Judge concluded that did not happen in this case; the LJAB merely required Geiler to allow Sheet Metal Contractors Association to act as its representative for the next round of contract negotiations with the Union to avoid paying half the award.

The Magistrate Judge found that the LJAB did not exceed its authority under Article X § 8 by suspending half of the financial award contingent upon Geiler remaining in the Sheet Metal Contractors Association for the upcoming renewal of the CBA. *Id*. at 20. The Magistrate Judge further concluded that Article X § 8 provides for the National Joint Adjustment Board to serve as arbitrator for any disputes arising out of the failure of the parties to negotiate a renewal of the CBA and thus, if Geiler chooses to remain in the Sheet Metal Contractors Association for the next contract renewal, such disputes would still proceed to the National Joint Adjustment Board for arbitration rather than the LJAB. *Id*.

Geiler objects to the Magistrate Judge's conclusion that the CBA allows for the LJAB to suspend half the monetary award contingent upon Geiler remaining in the Sheet Metal Contractors Association for the next round of contractual negotiations. *Id*. at 13. Geiler argues this requirement strips it of its contractual rights under the CBA which allows Geiler to withdraw from the Sheet Metal Contractors Association "by written notice to the [Sheet Metal Contractors] Association and the Union at least one hundred-fifty (150) days prior to the current expiration dates of the [CBA]." *Id*. (quoting Filing No. 41 at 19). Geiler argues the Magistrate Judge misunderstood its position concerning Article X § 8, because it does not contend that the LJAB exceeded its authority under Article X § 8. Rather, it contends that the LJAB exercised authority exclusively provided to the National Joint Adjustment Board and the LJAB has no authority to issue an award concerning future negotiations. *Id*. at 14.

The Magistrate Judge concluded that suspension of half the monetary fine on the condition that Geiler remain in the Sheet Metal Contractors Association for the next round of contractual negotiations does not exceed the LJAB's authority nor does it infringe upon the authority of the National Joint Adjustment Board. The Court agrees. Article X § 8 states that "any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this [CBA]" shall be submitted to the National Joint Adjustment Board (Filing No. 34-1 at 14). As the Union points out, the CBA authorizes the National Joint Adjustment Board to impose remedial orders under certain circumstances but does not restrict the LJAB's authority (Filing No. 43 at 8). The LJAB's award merely requires Geiler to negotiate to avoid paying half the award but does not direct how any disputes during such negotiations shall proceed. Indeed, nothing in the LJAB's award requires Geiler to accept unfavorable terms nor does the award even require Geiler to renew the CBA at

all. Instead, it simply conditions the suspension of payment of half the award on the ground that Geiler remain in the Sheet Metal Contractors Association for the negotiation of the next renewal.

Whether the Court would have issued such an award is not at issue as the Court's review of the arbitration award is extremely limited. *See United States Soccer Federation*, 838 F.3d at 832. This Court merely looks to whether the LJAB interpreted the contract. *Id*. The Court finds that it did and therefore, the LJAB did not commit manifest disregard of the law. Accordingly, Geiler's objection on this ground is **overruled**.

### c. Section 8(f) of the NLRA

Finally, Geiler objects to the Magistrate Judges conclusion that its Section 8(f) rights were not violated by the LJAB"s award. Section 8(f) of the NLRA exempts from illegality construction industry pre-hire agreements—a contract agreed to by a union and an employee before the workers to be covered by the contract have been hired or before the union has attained majority status among the firm's employees—making the CBA legal in the context of this case. *See J.W. Peters, Inc. v. Bridge, Structural and Reinforcing Iron Workers, Local Union 1, AFL-CIO*, 398 F.3d 967, 969 n.1 (7th Cir. 2005).

The Magistrate Judge found that Geiler did not show that the LJAB violated Section 8(f) of the NLRA by obligating it to remain in the Sheet Metal Contractors Association for the next round of contract negotiations. *Id*. The Court agrees that none of the cases Geiler cited stand for the proposition that an arbitrator acts in a manifest disregard of Section 8(f) of the NLRA by requiring a party to participate in negotiations of future contract renewals to avoid paying a suspended portion of a financial award. *Id*. at 21. As noted by the Magistrate Judge, the Sixth Circuit case Geiler cites to, *Elec. Workers Local 58 Pension Trust Fund v. Gary's Elec. Service Co.*, 277 F.3d 646 (6th Cir. 2000), merely holds that that an automatic renewal clause in a CBA

19

does not violate Section 8(f) of the NLRA (Filing No. 41 at 20 (citing *Elec. Workers*, 277 F.3d at 653 ("an automatic renewal clause between the parties to an § 8(f) agreement will be given effect and operates to bind the parties to a continuation of the agreement."))).

Geiler objects and argues that because the CBA provides it the right to withdraw from the Sheet Metal Contractors Association upon sufficient notice, the suspension of half the amount of the monetary award on the condition that Geiler remain in the bargaining unit violates its Section 8(f) rights (Filing No. 42 at 42). Geiler contends that the Magistrate Judge's analysis of *Elec. Workers* is incomplete because the CBA does not contain an automatic renewal clause and thus, requiring Geiler's membership in the Sheet Metal Contractors Association through imposition of a $125,000 fine violates its Section 8(f) rights. *Id*. at 15.

While Geiler contends that "[e]ither party is free to repudiate the collective bargaining relationship once a § 8(f) contract expires by its terms[,]" *id*. at 14 (quoting *Elec. Workers*, 227 F.3d at 653), and that it is no longer allowed to withdraw from the Sheet Metal Contractors Association, that conclusion is incorrect. As the Union points out, Geiler always had the opportunity to repudiate the relationship once the CBA expired. If the Court holds, as Geiler argues—that the suspension of half the award against them is in manifest disregard of the law— then the entirety of the award will be automatically levied on Geiler. This is an outcome that is already possible if Geiler decides to withdraw from the Sheet Metal Contractors Association. The suspension of half the award merely functions as an incentive for Geiler to remain in renewal negotiations.

Further, the Court does not see how the Sixth Circuit's general statement that a party can repudiate a  Section 8(f) contract once the contract expires can be extrapolated into the proposition that an arbitrator acts in a manifest disregard of Section 8(f) of the NLRA, by requiring a party to

participate in negotiations of future contract renewals to avoid paying a suspended portion of a financial award. Geiler fails to provide an explanation on this point beyond merely citing to *Elec. Workers* and claiming that the parties are free to repudiate the relationship. Accordingly, Geiler's objection is **overruled** on this ground.

## IV.   CONCLUSION

Given the Court's very limited role in reviewing the LJAB's award, the Court finds the review was timely, the award is lawful, and LJAB did not exceed its authority under Article X § 5 by issuing the financial award against Geiler and did not exceed its authority under Article X §§ 5, 8, or Section 8(f) of the NLRA by suspending half the financial award on the condition that Geiler remain in the Sheet Metal Contractors Association for the next CBA renewal negotiations. For the reasons discussed in this Order, Geiler's Objections (Filing No. 42) are **OVERRULED**. The Court **ADOPTS** the Magistrate Judge's Report and Recommendation (Filing No. 41). Geiler's Motion to Vacate the Arbitration Award (Filing No. 33) is therefore **DENIED**, and the Union's Motion to Confirm the Arbitration Award (Filing No. 35) is **GRANTED**.

Final judgment shall issue separately.

**SO ORDERED**.

Date:   5/5/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Ryan Hymore
Mangano Law Offices CO., LPA
rkhymore@bmanganolaw.com

Brooke E. Niedecken
Littler Mendelson
BNiedecken@littler.com

Peter T. Tschanz
LITTLER MENDELSON, P.C. (Indianapolis)
ptschanz@littler.com